CLOSED JGG

U.S. District Court
Middle District of Florida (Orlando)

CIVIL DOCKET FOR CASE #: 01-CV-788

West American Ins. v. Boca Radiology Assoc, et al        Filed: 06/29/01
Assigned to: Judge Anne C. Conway        Jury demand: Plaintiff
Demand: $0,000        Nature of Suit:  110
Lead Docket: None        Jurisdiction: Diversity
Dkt# in other court: None

Cause: 28:2201 Declaratory Judgment (Insurance)

**01-8772**

WEST AMERICAN INSURANCE         W. Lane Neilson
COMPANY, a foreign corporation  [COR LD NTC]
     plaintiff                  Neilson and Associates
                                1332 W. Colonial Dr.       **CIV - GOLD**
                                P.O. Box 547638
                                Orlando, FL 32854-7638
                                407/843-6514

                                                          **MAGISTRATE JUDGE**
     v.                                                         **SIMONTON**

BOCA RADIOLOGY ASSOCIATES,      Steven G. Schwartz
INC.                            [COR LD NTC]
     defendant                  Mattlin & McClosky
                                2300 Glades Rd.
                                Suite 400, East Tower
                                Boca Raton, FL 33431
                                USA
                                561/368-9200

SUSAN GROSSMAYER, indiviually   Kelley Badger Gelb
and as personal representative  [COR LD NTC]
of the estate of Thomas         Krupnick, Campbell, Malone,
Grossmayer, deceased and as     Roselli, Buser & Slama
parent and natural guardian of  700 SE Third Ave.
Justin Grossmayer, minor and    Courthouse Law Plaza, Suite 100
Seth Grossmayer, minor          Ft. Lauderdale, FL 33316
     defendant                  USA
                                305/763-8181

DONALD WYCKOFF, M.D.
     defendant

I certify the foregoing to be a true
and correct copy of the original.
SHERYL L. LOESCH, Clerk
United States District Court
Middle District of Florida

By: _____
        Deputy Clerk



Proceedings include all events.
6:01cv788 West American Ins. v. Boca Radiology Assoc, et al        CLOSED
                                                                      JGG

| | | |
|---|---|---|
| 6/29/01 | 1 | COMPLAINT for Declaratory Relief filed; jury demand. Filing fee $ 150.00 Receipt # 5274 (lak) [Entry date 07/02/01] |
| 6/29/01 | -- | MAGISTRATE JUDGE CASE ASSIGNMENT   Magistrate assigned: James G. Glazebrook (lak) [Entry date 07/02/01] |
| 7/10/01 | -- | SUMMONSES issued for Boca Radiology Assoc, Susan Grossmayer, Donald Wyckoff (lak) |
| 7/10/01 | 2 | RELATED CASES ORDER and NOTICE of designation under Local Rule 3.05 - TRACK 2. Response due in 11 days. (ctc) (lak) |
| 7/10/01 | 3 | INTERESTED PERSONS ORDER For Civil Cases. Response due in 11 days.  ctc (lak) |
| 7/23/01 | 4 | CERTIFICATE of Interested Persons by West American Ins. and Corporate Disclosure Statement Re: [3-1] order (lak) [Entry date 07/24/01] |
| 7/23/01 | 5 | NOTICE (related) by West American Ins.  of pendency of other actions re: order of compliance to local rule 1.04c - CLOO-2310AE in the Fifteenth Circuit (lak) [Entry date 07/24/01] |
| 7/23/01 | 6 | CERTIFICATE OF SERVICE of [3-1] order, [2-1] track 2 notice by West American Ins. (lak) [Entry date 07/24/01] |
| 7/23/01 | 7 | NOTICE of Service by West American Ins. of Interested Persons Order (lak) [Entry date 07/24/01] |
| 7/30/01 | 8 | NOTICE (related) by Susan Grossmayer  of pendency of other actions re: order of compliance to local rule 1.04c - CLOO-2310AE in Palm Beach County Circuit Court (lak) |
| 7/30/01 | 9 | CERTIFICATE of Interested Persons by Susan Grossmayer and Corporate Disclosure Statement (lak) |
| 7/30/01 | 10 | ANSWER to [1-1] complaint by Susan Grossmayer (lak) |
| 8/2/01 | 11 | ORDER TO SHOW cause why case should not be transferred to the Southern District of Florida.  Response due on 8/15/01 for Donald Wyckoff, for Susan Grossmayer, for Boca Radiology Assoc, for West American Ins. ( Signed by Judge Anne C. Conway ) ctc (lak) |
| 8/3/01 | 12 | NOTICE of filing the proof of service on Defendant Boca Radiology Associates by West American Ins. (rdo) |
| 8/3/01 | 13 | RETURN of service executed as to Boca Radiology Assoc on 7/16/01; Answer due on 8/6/01 (rdo) |
| 8/3/01 | 14 | NOTICE of filing the return of service affidavit on Defendant Susan Grossmayer, individually and on behalf of Justin Grossmayer and Seth Grossmayer by West American Ins. |

Proceedings include all events.
6:01cv788 West American Ins. v. Boca Radiology Assoc, et al       CLOSED
                                                                     JGG
                      (rdo)

| | | |
|---|---|---|
| 8/3/01 | 15 | RETURN of service executed as to Susan Grossmayer on 7/18/01; Answer due on 8/7/01 (rdo) |
| 8/6/01 | 16 | ANSWER and Affirmative Defenses to [1-1] complaint by Boca Radiology Assoc (lak) |
| 8/7/01 | 17 | INTERESTED PERSONS ORDER For Civilc Cases. Response due in 11 days from Boca Radiology Associates, Inc. ctc (lak) |
| 8/10/01 | 18 | RESPONSE to show cause order filed by plaintiff West American Ins. (lak) |
| 8/21/01 | 19 | ORDER: This case is transferred to the Southern District of Florida, West Palm Beach Division. (Signed by Judge Anne C. Conway) ctc (lak) [Entry date 08/22/01] |
| 8/21/01 | -- | Interdistrict Transfer to the Southern District of Floirda, West Palm Beach Division. (lak) [Entry date 08/22/01] |
| 8/22/01 | 20 | All file records for 6:01-cv-788-orl-22JGG shipped to West Palm Beach Division 8/22/01. UPS way bill # 1Z5741180310096490 (lak) |

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
George C. Young U.S. Courthouse
and Federal Building
Office of the Clerk
80 North Hughey Avenue
Orlando, Florida 32801
407-835-4200
www.flmd.uscourts.gov



Sheryl L. Loesch
Clerk

Laura Barsamian
Orlando Division Manager

August 22, 2001

**01-8772**

WEST AMERICAN INSURANCE COMPANY,

**CIV - GOLD**

Plaintiff,

-vs-

Case No.  6:01-cv-788-Orl-22JGG

**BOCA RADIOLOGY ASSOCIATES, INC.; SUSAN
GROSSMAYER; and DONALD WYCKOFF, M.D.,**

MAGISTRATE JUDGE
SIMONTON

Defendants.

FILED by _____ D.C.

AUG 2 3 2001

CLERK U.S. DIST. CT.
S.D. OF FLA. · W.P.B.

## TRANSMITTAL OF RECORD TO ANOTHER DISTRICT

The above-referenced case has been transferred to your District pursuant to an Order signed by United States District Judge Anne C. Conway on August 21, 2001.

Enclosed is the entire record, transfer order, a certified copy of the docket sheet, and an extra copy of this letter.  It is requested that you date stamp the copy, complete the portion below, and return it in the envelope provided.

SHERYL L. LOESCH, CLERK

By:     Lee Anna Klele, Deputy Clerk

Receipt of the documents described above is hereby acknowledged.

New Case Number: _____

Date of Receipt: _____

By: _____

SCANNED

20



## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**WEST AMERICAN INSURANCE**
**COMPANY, a foreign corporation,**
       **Plaintiff,**

**v.**                      **Case No.: 6:01-cv-788-Orl-22JGG**

**BOCA RADIOLOGY ASSOCIATES,**
**INC., SUSAN GROSSMAYER, individually**
**and as Personal Representative of THE**
**ESTATE OF THOMAS GROSSMAYER,**
**Deceased and as Parent and Natural Guardian**
**of JUSTIN GROSSMAYER, a minor and**
**SETH GROSSMAYER, a minor, and DONALD**
**WYCKOFF, M.D.**

       **Defendants.**
_____/

### PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

Plaintiff, WEST AMERICAN INSURANCE COMPANY, a corporation, filed this

action in the Middle District of Florida since the Plaintiff herein and one of the Defendants

herein are corporations who may sue or be sued in any district in Florida.

However, to avoid a Motion to Transfer from the individual Defendants, and to

SCANNED

18

comply with this court's request that this action be heard by the Southern District, the Plaintiff hereby agrees to the transfer of this lawsuit to the United States District Court for the Southern District of Florida.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was furnished by U.S. Mail to **STEVEN G. SCHWARTZ, ESQ.**, Attorney for Boca Radiology, Schwartz & Horwitz, 3301 N. Boca Raton Blvd., Suite 200, Boca Raton, Fl 33431 and **SCOTT S. LIBERMAN, ESQ.**, Attorney for Susan Grossmayer, et al, Krupnick, Campbell, Malone, Roselli, Buser, Slama, Hancock, McNelis, Liberman & McKee, P.A., 700 Southeast Third Avenue, Courthouse Law Plaza, Suite 100, Fort Lauderdale, FL 33316, on this 9nd day of August, 2001.

W. LANE NEILSON
Fla. Bar No. 211753
**NEILSON AND ASSOCIATES**
1332 West Colonial Drive
P.O. Box 547638
Orlando, Florida 32854-7638
(407) 843-6514
(407) 843-0427 (Fax)
Attorneys for Plaintiff, West American
Insurance Company

FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA   01 AUG -7 PM 1:53
ORLANDO DIVISION

CLERK...
MIDDLE DISTRICT COURT
DISTRICT OF FLORIDA
ORLANDO, FLORIDA

**WEST AMERICAN INSURANCE
COMPANY,**

                     **Plaintiff,**

v.                                                    **Case No.  6:01-cv-788-Orl-22JGG**

**BOCA RADIOLOGY ASSOCIATES, INC.;
SUSAN GROSSMAYER; and DONALD
WYCKOFF, M.D.,**

                     **Defendants.**

_____

### INTERESTED PERSONS ORDER
### FOR CIVIL CASES

This Court makes an active effort to screen every case in order to identify parties and

interested corporations in which any assigned judge may be a shareholder, as well as for other

matters that might require consideration of recusal.  It is therefore

**ORDERED** that, within **eleven** days[1] from the date of this order (or from the date of

subsequent first appearance[2] in this action), **BOCA RADIOLOGY ASSOCIATES, INC., shall**

**file and serve** a CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE

STATEMENT in the following form:

_____

[1]Intermediate Saturdays, Sundays, and specified legal holidays are **in**cluded in the computation of periods of eleven days or more.  *See* Fed.R.Civ.P. 6(a); Local Rule 4.20.  If this order was served by mail, add three days to the prescribed period.  Fed.R.Civ.P. 6(e); Local Rule 4.20(a)(2).  Service by facsimile constitutes a method of hand delivery for the purpose of computing the time within which any response is required.  Local Rule 1.07(c).

[2]Every pleading or paper filed constitutes a general appearance of the party unless otherwise specified.  Local Rule 2.03 (a).

SCANNED                                                    17

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

I hereby disclose the following pursuant to this Court's interested persons order:

1.)    the name of each person, attorney, association of persons, firm, law firm, partnership, and corporation that has or may have an interest in the outcome of this action — including subsidiaries, conglomerates, affiliates, parent corporations, publicly-traded companies that own 10% or more of a party's stock, and all other identifiable legal entities related to *any* party in the case.

        [insert list]

2.)    the name of every other entity whose publicly-traded stock, equity, or debt may be substantially affected by the outcome of the proceedings:

        [insert list]

3.)    the name of every other entity which is likely to be an active participant in the proceedings, including the debtor and members of the creditors' committee (or twenty largest unsecured creditors) in bankruptcy cases:

        [insert list]

4.)    the name of each victim (individual or corporate) of civil and criminal conduct alleged to be wrongful, including every person who may be entitled to restitution:

        [insert list]

I hereby certify that, except as disclosed above, I am unaware of any actual or potential conflict of interest involving the district judge and magistrate judge assigned to this case, and will immediately notify the Court in writing on learning of any such conflict.

[Date]

                              _____
                              [Counsel of Record or *Pro Se* Party]
                              [Address and Telephone]

[Certificate of Service]

-2-

It is **FURTHER ORDERED** that no party may seek discovery from any source before filing and serving a CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT. A motion, memorandum, response, or other paper — including emergency motion — may be denied or stricken unless the filing party has previously filed and served its CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT.

**FURTHER ORDERED** that each party has a continuing obligation to file and serve an amended CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT within eleven days of 1) discovering any ground for amendment, including notice of case reassignment to a different judicial officer; or 2) discovering any ground for recusal or disqualification of a judicial officer. A party should not routinely list an assigned district judge or magistrate judge as an "interested person" absent some non-judicial interest.

**FURTHER ORDERED** that, in order to assist the Court in determining when a conflict of interest may exist, particularly when ruling on matters formally assigned to another judge, each party shall use the full caption of the case — including the names of all parties and intervenors — on all motions, memoranda, papers, and proposed orders submitted to the Clerk. *See* Fed.R.Civ.P. 10(a); Local Rule 1.05(b) ("*et al.*" discouraged).

*Counsel shall file an original and one copy of the Certificate of Interested Persons and Corporate Disclosure Statement.*

| | |
|---|---|
| _____ANNE C. CONWAY_____ | _____JOHN ANTOON II_____ |
| Anne C. Conway | John Antoon II |
| United States District Judge | United States District Judge |

_____ GREGORY A. PRESNELL _____
Gregory A. Presnell
United States District Judge


_____ GEORGE C. YOUNG _____                    _____ G. KENDALL SHARP _____
George C. Young                                         G. Kendall Sharp
Senior United States District Judge          Senior United States District Judge


_____ DAVID A. BAKER _____                    _____ JAMES G. GLAZEBROOK _____
David A. Baker                                        James G. Glazebrook
United States Magistrate Judge                United States Magistrate Judge


_____ KARLA R. SPAULDING _____
Karla R. Spaulding
United States Magistrate Judge


July 10, 2001


Copies to:      All Counsel of Record
                All *Pro Se* Parties

-4-

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

WEST AMERICAN INSURANCE )
COMPANY, a foreign corporation, )
                              )
      **Plaintiff,** )
                              )
v. )  **Case No.: 6:01-CV-788-ORL-22-JGG**
                              )
BOCA RADIOLOGY ASSOCIATES, )
INC., SUSAN GROSSMAYER, individually )
and as Personal Representative of THE )
ESTATE OF THOMAS GROSSMAYER, )
Deceased and as Parent and Natural Guardian )
of JUSTIN GROSSMAYER, a minor and )
SETH GROSSMAYER, a minor, and DONALD )
WYCKOFF, M.D. )
                              )
      **Defendants.** )
_____ )

## ANSWER OF BOCA RADIOLOGY

Defendant, BOCA RADIOLOGY ASSOCIATES, by and through undersigned

counsel, for its Answer to the Complaint filed herein states as follows:

    1.      The allegations contained in paragraph 1 are such as to require no answer.

    2.      This defendant is not advised of the validity of the allegations contained in

paragraph 2 and has reason to believe that there is not complete diversity of citizenship.

Moreover, the venue for this action is improper and should be transferred to the Southern

District of Florida, West Palm Beach Division where the underlying wrongful death

action which is the subject of this coverage dispute is pending and where all interested

parties and witnesses reside.

SCANNED



3.      Defendant is not advised of the allegations contained in paragraph 3 and accordingly neither admits or denies same.   The subject coverage was procured in Florida, issued for coverage in Florida insuring a Florida company and for a policy of insurance whose performance was contemplated in Florida.

4.      Admitted.

5.      Upon information and belief admitted.

6.      Upon information and belief admitted.

7.      Upon information and belief admitted.

8.      This defendant admits that Dr. Donald Wyckoff was licensed to practice medicine in Florida and Palm Beach County.

9.      Upon information and belief admitted.

10.     The allegations contained in paragraph 10 are such as to require no answer.

11.     The allegations contained in paragraph 11 are such as to require no answer.

12.     The Fourth Amended Complaint allegations speak for themselves.

13.     The Fourth Amended Complaint allegations speak for themselves.

14.     Denied.

15.     Denied.

16.     Denied.

17.     Denied.

18.     The allegations contained in paragraph 18 are such as to require no answer.

## Affirmative Defenses

First.  West American insured Boca Radiology for all liability or damages as is alleged in the Fourth Amended Complaint earlier filed by the Grossmayer Estate and as such West American is obligated to defend and provide coverage for the Grossmayer lawsuit.

Second.  Plaintiff insurer failed to conduct a timely or reasonable investigation into the nature and circumstances of the subject claim and as such any argument that its policy excludes coverage for this loss has been waived or the company is otherwise estopped to make such claims.

Third.  Defendant reserves the right to supplement these affirmative defenses as discovery continues in this cause.

WHEREFORE, Defendant BOCA RADIOLOGY ASSOCIATES, INC. having fully answered the Complaint for Declaratory Relief herein prays that same be dismissed with prejudice and that Defendant be awarded its costs herein.  Further, Defendant prays for entry of an appropriate Order that this action be transferred to the Southern District of Florida, West Palm Beach Division as the proper of venue for this action, there being no contact with the Middle District other than the location of plaintiff's attorneys.

BOCA RADIOLOGY ASSOCIATES, Inc.
By _____
Steven G. Schwartz, of Counsel
Florida Bar No. 911474
Schwartz & Horwitz, P.A.
3301 NW Boca Raton Blvd., Suite 200
Boca Raton, Florida 33431
Telephone:  (561) 395-4747
Facsimile:  (561) 395-7050
Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this Answer was mailed, postage prepaid to

W. Lane Neilson, Esq., Neilson and Associates, P. O. Box 547638, Orlando, Florida,

32854-7638, counsel for plaintiff West American and Scott S. Liberman, Esq., Krupnick,

Campbell, Malone, Roselli, Buser, Slama, Hancock, McNelis, Liberman & McKee, P.A.,

700 Southeast Third Avenue, Courthouse Law Plaza, Suite 100, Ft. Lauderdale, Florida,

33316, counsel for Grossmayer estate this __3__ day of __Aug__ 2001.



Steven G. Schwartz, Esquire

# LANG DETECTIVE AGENCY

**Phone: (954) 523-2513**

**200 S.E. Sixth Street, Suite 304 · Fort Lauderdale, FL 33301**

7=20=01

| CASE NO. | 6 01 CV 788 ORL 22 JGG |
| COURT | DISTRICT/MIDDLE/ORLANDO |
| HRG. DATE | |

WEST AMERICAN INSURANCE
COMPANY.

## LANG DETECTIVE AGENCY
### RETURN OF SERVICE
### AFFIDAVIT

VS.

BOCA RADIOLOGY ASSOCIATES INC.,

**TYPE OF WRIT**

Summons   Complaint

TO SUSAN GROSSMAYER, individually and as Personal Representative of the Estate of THOMAS GROSSMAYER, deceased and as PARENT and NATURAL GUARDIAN of JUSTINE SETH GROSSMAYER

RECEIVED THIS WRIT ON 7-12-01 @ 1pm

AND ON 7-18-01 at 1400 M., I SERVED IT ON THE WITHIN

NAMED SUSAN GROSSMAYER IN BROWARD

COUNTY, FLORIDA

_____ **INDIVIDUAL SERVICE:** By serving upon the within named (Defendant/Witness) a true copy of this writ with the date and hours of service endorsed thereon by me and a copy of the Plaintiff's complaint, petition or initial pleading.

X **SUBSTITUTE SERVICE:** By serving a true copy of this writ with the date and hour of service endorsed thereon by me and a copy of Plaintiff's initial pleading as furnished by the Plaintiff, at the within named (Defendant's Witness) usual place of abode with any person residing the age of 15 years or older to wit: _see comments_ _____
_____ , or to _____ spouse of defendant, at _____
_____ , or to _____ manager of defendant business _____
_____ and informing such person of their contents pursuant to:  ☐ F.S. 48.031. _____
☐ F.S. 48.031 (2)(a)    ☐ F.S. 48.031 (2)(b).

_____ **CORPORATE SERVICE:** By serving a true copy of this writ and a copy of Plaintiff's initial pleading to _____
_____ as _____ of said corporation in the absence of any superior officer as defined in F.S. 48.081, or by serving _____
_____ as an employee of defendant corporation in compliance with F.S. 48.081 (3) or by serving _____ as a registered agent in compliance with F.S. 48.091.

_____ **PARTNERSHIP SERVICE:** By serving _____ , partner, or to _____
_____ a designated employee or person in charge of partnership.

_____ **POSTED:** _____ **COMMERCIAL,** _____ **RESIDENTIAL, 1st Attempt** _____ AM/PM **2nd Attempt** _____ AM/PM

_____ **NO SERVICE:** For the reason that after diligent search and inquiry failed to find said _____
_____ in _____ , County, Florida

**COMMENTS:** Accepted by Attorney SCOTT LIIBERMAN, ESQUIRE @ 700 SE 3rd Ave Suite 100   Fort Lauderdale, Fl  33316

**ATTORNEY:**

W. LANE NEILSON ESQUIRE

| | **FEES FOR SERVICE** | $ _____ |

Witness Fee _____

The foregoing instrument was acknowledged before me this 19 day of July, 2001 by _____ , who is

name and title

personally known to me or who has produced _____ (type of ID), as identification and who _____ take an oath.

did or did not

NOTARY PUBLIC OR PUBLIC OFFICER AND TITLE OR RANK

| TOTAL | |
| PAID | |
| BALANCE | |

BY: CHRIS YEOMAN

OFFICIAL NOTARY SEAL
HILDA SMITH
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC794194
MY COMMISSION EXP. DEC. 1, 2002

Appointment No.: 762

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WEST AMERICAN INSURANCE
COMPANY, a foreign corporation,**
        **Plaintiff,**

**v.**                               **Case No.: 6:01-CV-788-Orl-22-JGG**

**BOCA RADIOLOGY ASSOCIATES,
INC., SUSAN GROSSMAYER, individually
and as Personal Representative of THE
ESTATE OF THOMAS GROSSMAYER,
Deceased and as Parent and Natural Guardian
of JUSTIN GROSSMAYER, a minor and
SETH GROSSMAYER, a minor, and DONALD
WYCKOFF, M.D.**

                     **Defendants.**

RE'CD _____ 7-12-01
SERVED Scott Liberman
DATE 7-18 : O/TIME 240pm
PS CHAIS Yeoman
(Printed Name Here)

CERTIFIED IN THE CIRCUIT COURT OF
_12_ JUDICIAL CIRCUIT CERT. #262

**THE STATE OF FLORIDA**

**TO EACH SHERIFF OF THE STATE:**

       **YOU ARE HEREBY COMMANDED** to serve this Summons and a copy of the
Complaint or Petition in the above-styled cause upon the following Defendant:

       SUSAN GROSSMAYER, individually and as Personal Representative
       Of the Estate of THOMAS GROSSMAYER, Deceased and as Parent
       And Natural Guardian of JUSTIN GROSSMAYER, a minor and SETH
       GROSSMAYER, a minor

       **c/o SCOTT S. LIBERMAN, ESQUIRE**
       Krupnick, Campbell, Malone, Roselli,Buser,
       Slama, Hancock, McNelis, Liberman & McKee, P.A.
       700 Southeast Third Avenue
       Courthouse Law Plaza, Suite 100
       Fort Lauderdale, FL 33316

**LANG DETECTIVE AGENCY**

       The Defendant is hereby required to serve written defenses to said Complaint or
Petition on Plaintiff's Attorney, at the following address:

#040-3649

W. LANE NEILSON
**NEILSON AND ASSOCIATES**
P. O. Box 547638
Orlando, FL   32854-7638
(407) 843-6514
(407) 843-0427 (Fax)

within twenty (20) days after service of this Summons upon the Defendant, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on Plaintiff's Attorney or immediately thereafter.  If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

WITNESS my hand and the seal of said Court on this _10_ day of July, 2001.

**SHERYL L. LOESCH**

CLERK OF THE COURT

By _____

As Deputy Clerk

(COURT SEAL)

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**WEST AMERICAN INSURANCE
COMPANY, a foreign corporation,**
       **Plaintiff,**

**v.**                           Case No.: **6:01-cv-788-Orl-22JGG**

**BOCA RADIOLOGY ASSOCIATES,
INC., SUSAN GROSSMAYER, individually
and as Personal Representative of THE
ESTATE OF THOMAS GROSSMAYER,
Deceased and as Parent and Natural Guardian
of JUSTIN GROSSMAYER, a minor and
SETH GROSSMAYER, a minor, and DONALD
WYCKOFF, M.D.**

       **Defendants.**
_____/

## PLAINTIFF'S NOTICE OF FILING THE RETURN OF SERVICE AFFIDAVIT ON DEFENDANT SUSAN GROSSMAYER, INDIVIDUALLY AND ON BEHALF OF JUSTIN GROSSMAYER AND SETH GROSSMAYER

Plaintiff, WEST AMERICAN INSURANCE COMPANY, hereby gives Notice of Filing of the Affidavit of Service on Defendant, SUSAN GROSSMAYER, individually and as Personal Representative of THE ESTATE OF THOMAS GROSSMAYER, Deceased and as Parent and Natural Guardian of JUSTIN GROSSMAYER, a minor and SETH GROSSMAYER, a minor.

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was furnished by U.S. Mail to **STEVEN G. SCHWARTZ, ESQ.**, Attorney for Boca Radiology, Schwartz & Horwitz, 3301 N. Boca Raton Blvd., Suite 200, Boca Raton, Fl 33431 and **SCOTT S. LIBERMAN, ESQ.**, Attorney for Susan Grossmayer, et al, Krupnick, Campbell, Malone, Roselli, Buser, Slama, Hancock, McNelis, Liberman & McKee, P.A., 700 Southeast Third Avenue, Courthouse Law Plaza, Suite 100, Fort Lauderdale, FL 33316, on this 2nd day of August, 2001.

W. LANE NEILSON
Fla. Bar No. 211753
**NEILSON AND ASSOCIATES**
1332 West Colonial Drive
P.O. Box 547638
Orlando, Florida 32854-7638
(407) 843-6514
(407) 843-0427 (Fax)
Attorneys for Plaintiff, West American
Insurance Company

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | 7/16/01  4:10PM | 1590 NW 10 AVE, #202  Boca Raton, FL |

SERVED ON (PRINT NAME)

Boca Radiology Associates, INC.

MANNER OF SERVICE

CORP. TO: DENISE EAGLESTON
OFFICE MANAGER

SERVED BY (PRINT NAME)

Floyd Peterson

TITLE

PbchCo, GPS. # 293

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___7/16/01___
              DATE

SIGNATURE OF SERVER  *Floyd Peterson*

___200 SE 6ST FT LAUD, FL___
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in per-

son, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

13

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**WEST AMERICAN INSURANCE**
**COMPANY, a foreign corporation,**
            **Plaintiff,**

v.                                          **Case No.: 6:01-CV-788-Orl-22-JGG**

**BOCA RADIOLOGY ASSOCIATES,**
**INC., SUSAN GROSSMAYER, individually**
**and as Personal Representative of THE**
**ESTATE OF THOMAS GROSSMAYER,**
**Deceased and as Parent and Natural Guardian**
**of JUSTIN GROSSMAYER, a minor and**
**SETH GROSSMAYER, a minor, and DONALD**
**WYCKOFF, M.D.**

            **Defendants.**
_____/

**THE STATE OF FLORIDA**

**TO EACH SHERIFF OF THE STATE:**

        **YOU ARE HEREBY COMMANDED** to serve this Summons and a copy of the
Complaint or Petition in the above-styled cause upon the following Defendant:

        BOCA RADIOLOGY ASSOCIATES, INC.
        1590 NW 10ᵗʰ Avenue, Suite ~~301 & 304~~ #202
        Boca Raton, FL 33432

        The Defendant is hereby required to serve written defenses to said Complaint or
Petition on Plaintiff's Attorney, at the following address:

        W. LANE NEILSON
        **NEILSON AND ASSOCIATES**
        P. O. Box 547638
        Orlando, FL 32854-7638
        (407) 843-6514
        (407) 843-0427 (Fax)

                                    #040-3649

within twenty (20) days after service of this Summons upon the Defendant, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on Plaintiff's Attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

WITNESS my hand and the seal of said Court on this __10__ day of July, 2001.

CLERK OF THE COURT    SHERYL L. LOESCH

By _____

As Deputy Clerk

(COURT SEAL)

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**WEST AMERICAN INSURANCE
COMPANY, a foreign corporation,**
        **Plaintiff,**

**v.**                           **Case No.: 6:01-cv-788-Orl-22JGG** 

**BOCA RADIOLOGY ASSOCIATES,
INC., SUSAN GROSSMAYER, individually
and as Personal Representative of THE
ESTATE OF THOMAS GROSSMAYER,
Deceased and as Parent and Natural Guardian
of JUSTIN GROSSMAYER, a minor and
SETH GROSSMAYER, a minor, and DONALD
WYCKOFF, M.D.**

        **Defendants.**
_____/

## PLAINTIFF'S NOTICE OF FILING THE PROOF OF SERVICE ON DEFENDANT BOCA RADIOLOGY ASSOCIATES, INC.

Plaintiff, WEST AMERICAN INSURANCE COMPANY, hereby gives Notice of

Filing of the Proof of Service on Defendant, Boca Radiology Associates, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was furnished by U.S. Mail to **STEVEN
G. SCHWARTZ, ESQ.**, Attorney for Boca Radiology, Schwartz & Horwitz, 3301 N. Boca
Raton Blvd., Suite 200, Boca Raton, Fl 33431 and **SCOTT S. LIBERMAN, ESQ.**,
Attorney for Susan Grossmayer, et al, Krupnick, Campbell, Malone, Roselli, Buser, Slama,



Hancock, McNelis, Liberman & McKee, P.A., 700 Southeast Third Avenue, Courthouse Law Plaza, Suite 100, Fort Lauderdale, FL 33316, on this 2nd day of August, 2001.


W. LANE NEILSON
Fla. Bar No.  211753
**NEILSON AND ASSOCIATES**
1332 West Colonial Drive
P.O. Box 547638
Orlando, Florida  32854-7638
(407) 843-6514
(407) 843-0427 (Fax)
Attorneys for Plaintiff, West American Insurance Company

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

WEST AMERICAN INSURANCE
COMPANY,

         **Plaintiff,**

-vs-                                        **Case No.  6:01-cv-788-Orl-22JGG**

BOCA RADIOLOGY ASSOCIATES, INC.;
SUSAN GROSSMAYER; and DONALD
WYCKOFF, M.D.,

         **Defendants.**
_____

## ORDER TO SHOW CAUSE

    28 U.S.C. § 1391(a) provides, in pertinent part, that:

> [a] civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .

Plaintiff West American Insurance Co. ("Plaintiff") is an Ohio corporation, with its principal place of business in Ohio. *See* Doc. No. 1. Defendants Boca Radiology Associates, et al., are all citizens of the State of Florida, and residents of Palm Beach County. *Id.* None of the events giving rise to Plaintiff's cause of action appear to have any nexus with the Middle District of Florida. Additionally, a related suit, Case No. CL 00-2310 AE, involving all of the named Defendants in the instant lawsuit, is currently pending before the Circuit Court of the Fifteenth Judicial Circuit in Palm Beach County. *Id.* Therefore, it appears that venue is improper in this District.

Accordingly, it is ORDERED as follows:

1.  Within eleven (11) days of the date of this Order, Plaintiff and Defendants are hereby ORDERED to show cause why the case should not be transferred to the United States District Court for the Southern District of Florida.

**DONE** and **ORDERED** in Orlando, Florida this _____ day of August, 2001.

_____
ANNE C. CONWAY
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

-2-

AO 72A
(Rev.8/82)

Date Printed: 08/02/2001


Notice sent to:



___   W. Lane Neilson, Esq.
Neilson and Associates
1332 W. Colonial Dr.
P.O. Box 547638
Orlando, FL  32854-7638

___   Kelley Badger Gelb, Esq.
Krupnick, Campbell, Malone, Roselli, Buser & Slama
700 SE Third Ave.
Courthouse Law Plaza, Suite 100
Ft. Lauderdale, FL  33316

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ORLANDO
ORLANDO DIVISION

WEST AMERICAN INSURANCE COMPANY,
a foreign corporation,

                    Plaintiff,                    CASE NO. 6:01-CV-788-Orl-22-JGG

vs.

BOCA RADIOLOGY ASSOCIATES, INC.,
SUSAN GROSSMAYER, individually
and as Personal Representative of the
THE ESTATE OF THOMAS
GROSSMAYER, Deceased, and as
Parent and Natural Guardian of
JUSTIN GROSSMAYER, a minor,
And SETH GROSSMAYER, a minor,
And DONALD WYCKOFF, M.D.,

                    Defendants.
_____/

## ANSWER

      Defendant, SUSAN GROSSMAYER, individually and as Personal Representative of THE ESTATE OF THOMAS GROSSMAYER, Deceased, and as Parent and Natural Guardian of JUSTIN GROSSMAYER, a minor, and SETH GROSSMAYER, a minor, by and through her undersigned counsel, files this her Answer to the Complaint for Declaratory Relief filed herein and states:

      1.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the averment, so denied.

      2.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the averment, so denied.

3.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the averment, so denied.

4.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the averment, so denied.

5.      Admitted.

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the averment, so denied.

10.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the averment, so denied.

11.     Admitted.

12.     Admitted.

13.     Admitted.

14.     Defendant denies that the policy excludes coverage but is without knowledge or information sufficient to form a belief as to the truth of the averment as to what language the policy contains.

15.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the averment, so denied.

16.     Denied.

17.     Denied.

18.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the averment, so denied.

WE HEREBY CERTIFY that the foregoing was furnished by U.S. mail this 27 day of JULY , 2001 to:  STEVEN G. SCHWARTZ, ESQ., Attorney for Boca Radiology, Mattlin & McClosky, 2300 Glades Road, Suite 400, East Tower, Boca Raton, FL 33431; DENNIS M. O'HARA, ESQ., Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A., Attorneys for Donald Wyckoff, M.D., 1 East Broward Boulevard, South Trust Tower, Suite 500, Fort Lauderdale, FL 33302 and W. LANE NEILSON, ESQ., Neilson and Associates, Attorneys for Plaintiff, West American Insurance Company, 1332 West Colonial Drive, P.O. Box 547638, Orlando, FL 32854-7638.

KRUPNICK, CAMPBELL, MALONE, ROSELLI,
BUSER, SLAMA HANCOCK,
McNELIS, LIBERMAN & McKEE, P.A.
Attorney for Defendants
700 Southeast Third Avenue
Courthouse Law Plaza, Suite 100
Fort Lauderdale, Florida  33316
(954) 763-8181


BY:  _____
     KELLEY GELB, ESQUIRE
     Florida Bar No.:  492132

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**Case No.: 6:01-CV-788-Orl-22JGG**

WEST AMERICAN INSURANCE
COMPANY, a foreign corporation,
      Plaintiff,

v.

BOCA RADIOLOGY ASSOCIATES,
INC., SUSAN GROSSMAYER, individually
and as Personal Representative of THE
ESTATE OF THOMAS GROSSMAYER,
Deceased and as Parent and Natural Guardian
of JUSTIN GROSSMAYER, a minor and
SETH GROSSMAYER, a minor, and DONALD
WYCKOFF, M.D.

      Defendants.

_____/

### PLAINTIFF'S NOTICE OF SERVICE OF
### INTERESTED PERSONS ORDER FOR CIVIL CASES

    **NOTICE IS HEREBY** given that a copy of the Interested Persons Order for Civil Cases
has been furnished by U.S. Mail delivery to: **STEVEN G. SCHWARTZ, ESQ.,** Attorney for Boca
Radiology, Mattlin & McClosky, 2300 Glades Road, Suite 400, East Tower, Boca Rotan, FL 33431
and **SCOTT S. LIBERMAN, ESQ.,** Attorney for Susan Grossmayer, et al., Krupnick, Campbell,
Malone, Roselli, Buser, Slama, Hancock, McNelis, Liberman & McKee, P.A., 700 Southeast Third
Avenue, Courthouse Law Plaza, Suite 100, Fort Lauderdale, FL 33316, on this 20th day of July,
2001.

              W. LANE NEILSON
              Fla. Bar No. 211753
              **NEILSON AND ASSOCIATES**
              1332 West Colonial Drive
              P.O. Box 547638
              Orlando, Florida 32854-7638
              (407) 843-6514
              (407) 843-0427 (Fax)
              Attorneys for Plaintiff, West American
              Insurance Company

KRUPNICK, CAMPBELL, MALONE, ROSELLI,
 BUSER, SLAMA, HANCOCK, McNELIS
 LIBERMAN & McKEE, P.A.
Counsel for Defendants, Grossmayer
700 Southeast Third Avenue
Courthouse Law Plaza, Suite 100
Fort Lauderdale, Florida  33316
(954)763-8181


BY: _____
     KELLEY B. GELB, ESQUIRE
     Florida Bar No.:  492132

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

Case No.: 6:01-CV-788-Orl-22JGG

WEST AMERICAN INSURANCE
COMPANY, a foreign corporation,
      Plaintiff,

v.

BOCA RADIOLOGY ASSOCIATES,
INC., SUSAN GROSSMAYER, individually
and as Personal Representative of THE
ESTATE OF THOMAS GROSSMAYER,
Deceased and as Parent and Natural Guardian
of JUSTIN GROSSMAYER, a minor and
SETH GROSSMAYER, a minor, and DONALD
WYCKOFF, M.D.

      Defendants.
_____/

## PLAINTIFF'S NOTICE OF SERVICE OF RELATED
## CASE ORDER AND TRACT TWO NOTICE

    **NOTICE IS HEREBY** given that a copy of the Related Case Order and Track Two Notice
has been furnished by U.S. Mail delivery to: **STEVEN G. SCHWARTZ, ESQ.,** Attorney for Boca
Radiology, Mattlin & McClosky, 2300 Glades Road, Suite 400, East Tower, Boca Rotan, FL 33431
and **SCOTT S. LIBERMAN, ESQ.,** Attorney for Susan Grossmayer, et al., Krupnick, Campbell,
Malone, Roselli, Buser, Slama, Hancock, McNelis, Liberman & McKee, P.A., 700 Southeast Third
Avenue, Courthouse Law Plaza, Suite 100, Fort Lauderdale, FL 33316, on this 20th day of July,
2001.

            W. LANE NEILSON
            Fla. Bar No.  211753
            **NEILSON AND ASSOCIATES**
            1332 West Colonial Drive
            P.O. Box 547638
            Orlando, Florida  32854-7638
            (407) 843-6514
            (407) 843-0427 (Fax)
            Attorneys for Plaintiff, West American
            Insurance Company



# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WEST AMERICAN INSURANCE**
**COMPANY, a foreign corporation,**
      **Plaintiff,**

**v.**                   **Case No.: 6:01-cv-788-Orl-22JGG**

**BOCA RADIOLOGY ASSOCIATES,**
**INC., SUSAN GROSSMAYER, individually**
**and as Personal Representative of THE**
**ESTATE OF THOMAS GROSSMAYER,**
**Deceased and as Parent and Natural Guardian**
**of JUSTIN GROSSMAYER, a minor and**
**SETH GROSSMAYER, a minor, and DONALD**
**WYCKOFF, M.D.**

      **Defendants.**
_____/

### PLAINTIFF'S NOTICE OF PENDENCY OF OTHER ACTIONS

In accordance with Local Rule 1.04(c), I certify that the instant action:

__✔__ **IS**      related to pending or closed civil or criminal case(s) previously filed in this Court, or any other Federal or State court, or administrative agency, as indicated below:



          Susan Grossmayer, individually and as Personal Representative of the Estate of Thomas Grossmayer,  Deceased and as Parent and Natural Guardian of Justin  Grossmayer, a minor and Seth Grossmayer, a minor, and  Donald Wyckoff, M.D. V. Donald Wycoff, et al., Case Number CL00-2310AE, in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida.

_____ **IS NOT**      related to any pending or closed civil or criminal case filed with this Court, or any other Federal or State court, or administrative agency.



I further certify that I will serve a copy of this NOTICE OF PENDENCY OF OTHER ACTIONS upon each party no later than eleven days after appearance of the party.

Dated: July 20, 2001

*[signature]*

for W. Lane Neilson, Esquire
Fla. Bar No. 211753
**NEILSON AND ASSOCIATES**
1332 West Colonial Drive
P.O. Box 547638
(407) 843-6514
(407) 843-0427 (Fax)
Attorneys for Plaintiff, West American
Insurance Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was furnished by U.S. Mail to **STEVEN G. SCHWARTZ, ESQ.,** Attorney for Boca Radiology, Mattlin & McClosky, 2300 Glades Road, Suite 400, East Tower, Boca Rotan, FL 33431 and **SCOTT S. LIBERMAN, ESQ.,** Attorney for Susan Grossmayer, et al, Krupnick, Campbell, Malone, Roselli, Buser, Slama, Hancock, McNelis, Liberman & McKee, P.A., 700 Southeast Third Avenue, Courthouse Law Plaza, Suite 100, Fort Lauderdale, FL 33316, on this 20th day of July, 2001.

*[signature]*

for W. LANE NEILSON
Fla. Bar No. 211753
**NEILSON AND ASSOCIATES**
1332 West Colonial Drive
P.O. Box 547638
Orlando, Florida 32854-7638
(407) 843-6514
(407) 843-0427 (Fax)
Attorneys for Plaintiff, West American
Insurance Company

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No.: 6:01-CV-788-Orl-22-JGG

WEST AMERICAN INSURANCE
COMPANY, a foreign corporation,
            Plaintiff,

v.

BOCA RADIOLOGY ASSOCIATES,
INC., SUSAN GROSSMAYER, individually
and as Personal Representative of THE
ESTATE OF THOMAS GROSSMAYER,
Deceased and as Parent and Natural Guardian
of JUSTIN GROSSMAYER, a minor and
SETH GROSSMAYER, a minor, and DONALD
WYCKOFF, M.D.

            Defendants.
_____/

<u>PLAINTIFF'S CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT</u>

        I hereby disclose the following pursuant to this Court's interested persons order:



1.)     The name of each person, attorney, association of persons, firm, law firm, partnership, and
corporation that has or may have an interest in the outcome of this action-including subsidiaries,
conglomerates, affiliates, parent corporations, publicly-traded companies that own 10% or more of
a party's stock, and all other identifiable legal entities related to *any* party in the case:

        West American Insurance Company
        Ohio Casualty Group
        Neilson & Associates - Attorneys for West American
        W. Lane Neilson, Esquire

4

Boca Radiology Associates, Inc.
Mattlin & McClosky- Attorneys for Boca Radiology
Steven G. Schwartz, Esquire

Susan Grossmayer, Individually
And as Personal Representative of the
Estate of Thomas Grossmayer,
Deceased and as Parent and Natural Guardian
Of Justin Grossmayer, a Minor and
Seth Grossmayer, a Minor

Krupnick, Campbell, Malone, Roselli, Buser, Slama,
Hancock, McNelis, Liberman & McKee, P.A.- Attorneys for Grossmayer
Scott S. Liberman, Esquire

Donald Wyckoff, M.D.
Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A.- Attorneys for Donald
Wyckoff
Dennis M. O'Hara, Esquire

2.)   the name of every other entity whose publicly-traded stock, equity, or debt may be
substantially affected by the outcome of the proceedings:

      None

3.)   the name of every other entity which is likely to be an active participant in the proceedings,
including debtor and members of the creditor's committee (or twenty largest unsecured creditors)
in bankruptcy cases:

      None

4.)   the name of each victim (individual or corporate) of civil and criminal conduct alleged to be
wrongful, including every person who may be entitled to restitution:

      Not applicable. West American Insurance Company does not allege wrongful conduct. This
      action is brought by West American Insurance Company seeking declaratory judgement.

I hereby certify that, except as disclosed above, I am unaware of any actual or potential conflict of interest involving the district judge and magistrate judge assigned to this case, and will immediately notify the Court in writing on learning of any such conflict.

July 20, 2001
Date

W. LANE NEILSON
Fla. Bar No.  211753
**NEILSON AND ASSOCIATES**
1332 West Colonial Drive
P.O. Box 547638
(407) 843-6514
(407) 843-0427 (Fax)
Attorneys for Plaintiff, West
American Insurance Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was furnished by U.S. Mail to **STEVEN G. SCHWARTZ, ESQ.**, Attorney for Boca Radiology, Mattlin & McClosky, 2300 Glades Road, Suite 400, East Tower, Boca Rotan, FL 33431 and **SCOTT S. LIBERMAN, ESQ.**, Attorney for Susan Grossmayer, et al, Krupnick, Campbell, Malone, Roselli, Buser, Slama, Hancock, McNelis, Liberman & McKee, P.A., 700 Southeast Third Avenue, Courthouse Law Plaza, Suite 100, Fort Lauderdale, FL 33316, on this 20th day of July, 2001.

W. LANE NEILSON
Fla. Bar No.  211753
**NEILSON AND ASSOCIATES**
1332 West Colonial Drive
P.O. Box 547638
Orlando, Florida  32854-7638
(407) 843-6514
(407) 843-0427 (Fax)
Attorneys for Plaintiff, West American
Insurance Company



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WEST AMERICAN INSURANCE
COMPANY,

                    **Plaintiff,**

v.

                                          **Case No.  6:01-cv-788-Orl-22JGG**

BOCA RADIOLOGY ASSOCIATES, INC.;
SUSAN GROSSMAYER; and DONALD
WYCKOFF, M.D.,

                    **Defendants.**

---

## INTERESTED PERSONS ORDER
## FOR CIVIL CASES

This Court makes an active effort to screen every case in order to identify parties and interested corporations in which any assigned judge may be a shareholder, as well as for other matters that might require consideration of recusal.  It is therefore

**ORDERED** that, within **eleven** days[1] from the date of this order (or from the date of subsequent first appearance[2] in this action), each party, *pro se* party, governmental party, intervenor, non-party movant, and Rule 69 garnishee **shall file and serve** a CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT in the following form:

---

[1]Intermediate Saturdays, Sundays, and specified legal holidays are *in*cluded in the computation of periods of eleven days or more.  *See* Fed.R.Civ.P. 6(a).  Local Rule 4.20.  If this order was served by mail, add three days to the prescribed period.  Fed.R.Civ.P. 6(e); Local Rule 4.20(a)(2).  Service by facsimile constitutes a method of hand delivery for the purpose of computing the time within which any response is required.  Local Rule 1.07(c).

[2]Every pleading or paper filed constitutes a general appearance of the party unless otherwise specified.  Local Rule 2.03 (a).



# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**WEST AMERICAN INSURANCE COMPANY,**

**Plaintiff,**

v.

**Case No.  6:01-cv-788-Orl-22JGG**

**BOCA RADIOLOGY ASSOCIATES, INC.;
SUSAN GROSSMAYER; and DONALD
WYCKOFF, M.D.,**

**Defendants.**

---

## RELATED CASE ORDER
## AND TRACK TWO NOTICE

It is hereby **ORDERED** that, no later than eleven days from the date of this Order, counsel and any *pro se* party shall comply with Local Rule 1.04(c), and shall file and serve a certification as to whether the instant action should be designated as a similar or successive case pursuant to Local Rule 1.04(a) or (b).  The parties shall utilize the attached form NOTICE OF PENDENCY OF OTHER ACTIONS.  It is

**FURTHER ORDERED** that, in accordance with Local Rule 3.05, this action is designated a **Track Two** case.  All parties must comply with the requirements established in Local Rule 3.05 for Track Two cases.  Counsel and any unrepresented party shall meet within sixty days after service of the complaint upon any defendant for the purpose of preparing and filing a Case Management Report. The parties shall utilize the **attached** Case Management Report form.  Unless otherwise ordered by the Court, a party may not seek discovery from any source before the meeting.  Fed. R. Civ. P. 26 (d); Local Rule 3.05(c)(2)(B).  *Plaintiff is responsible for serving a copy of this notice and order*



*with attachments upon each party no later than eleven days after appearance of the party.*

July 10, 2001

| | |
|---|---|
| PATRICIA C. FAWSETT | ANNE C. CONWAY |
| Patricia C. Fawsett | Anne C. Conway |
| United States District Judge | United States District Judge |

| | |
|---|---|
| JOHN ANTOON II | GREGORY A. PRESNELL |
| John Antoon II | Gregory A. Presnell |
| United States District Judge | United States District Judge |

| | |
|---|---|
| GEORGE C. YOUNG | G. KENDALL SHARP |
| George C. Young | G. Kendall Sharp |
| Senior United States District Judge | Senior United States District Judge |

| | |
|---|---|
| DAVID A. BAKER | JAMES G. GLAZEBROOK |
| David A. Baker | James G. Glazebrook |
| United States Magistrate Judge | United States Magistrate Judge |

| |
|---|
| KARLA R. SPAULDING |
| Karla R. Spaulding |
| United States Magistrate Judge |

Attachments:   Notice of Pendency of Other Actions [mandatory form]
Case Management Report [mandatory form]
Magistrate Judge Consent / Letter to Counsel
Magistrate Judge Consent Form / Entire Case
Magistrate Judge Consent / Specified Motions
Public Notice Regarding Local Rules
Public Notice Regarding PACER
Orlando Division Telephone List

Copies to:   All Counsel of Record
All *Pro Se* Parties

-2-

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

I hereby disclose the following pursuant to this Court's interested persons order:

1.)  the name of each person, attorney, association of persons, firm, law firm, partnership, and corporation that has or may have an interest in the outcome of this action — including subsidiaries, conglomerates, affiliates, parent corporations, publicly-traded companies that own 10% or more of a party's stock, and all other identifiable legal entities related to *any* party in the case:

[insert list]

2.)  the name of every other entity whose publicly-traded stock, equity, or debt may be substantially affected by the outcome of the proceedings:

[insert list]

3.)  the name of every other entity which is likely to be an active participant in the proceedings, including the debtor and members of the creditors' committee (or twenty largest unsecured creditors) in bankruptcy cases:

[insert list]

4.)  the name of each victim (individual or corporate) of civil and criminal conduct alleged to be wrongful, including every person who may be entitled to restitution:

[insert list]

I hereby certify that, except as disclosed above, I am unaware of any actual or potential conflict of interest involving the district judge and magistrate judge assigned to this case, and will immediately notify the Court in writing on learning of any such conflict.

[Date]

_____
[Counsel of Record or *Pro Se* Party]
[Address and Telephone]

-2-

It is **FURTHER ORDERED** that no party may seek discovery from any source before filing and serving a CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT. A motion, memorandum, response, or other paper — including emergency motion — may be denied or stricken unless the filing party has previously filed and served its CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT.

**FURTHER ORDERED** that each party has a continuing obligation to file and serve an amended CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT within eleven days of 1) discovering any ground for amendment, including notice of case reassignment to a different judicial officer; or 2) discovering any ground for recusal or disqualification of a judicial officer. A party should not routinely list an assigned district judge or magistrate judge as an "interested person" absent some non-judicial interest.

**FURTHER ORDERED** that, in order to assist the Court in determining when a conflict of interest may exist, particularly when ruling on matters formally assigned to another judge, each party shall use the full caption of the case — including the names of all parties and intervenors — on all motions, memoranda, papers, and proposed orders submitted to the Clerk. *See* Fed.R.Civ.P. 10(a); Local Rule 1.05(b) ("*et al.*" discouraged).

*Counsel shall file an original and one copy of the Certificate of Interested Persons Order.*

| | |
|---|---|
| _____ANNE C. CONWAY_____ | _____JOHN ANTOON II_____ |
| Anne C. Conway | John Antoon II |
| United States District Judge | United States District Judge |

-3-

_____GREGORY A. PRESNELL_____
Gregory A. Presnell
United States District Judge


_____GEORGE C. YOUNG_____         _____G. KENDALL SHARP_____
George C. Young                   G. Kendall Sharp
Senior United States District Judge   Senior United States District Judge


_____DAVID A. BAKER_____          _____JAMES G. GLAZEBROOK_____
David A. Baker                    James G. Glazebrook
United States Magistrate Judge    United States Magistrate Judge


_____KARLA R. SPAULDING_____
Karla R. Spaulding
United States Magistrate Judge


August 7, 2001


Copies to:     All Counsel of Record
               All *Pro Se* Parties

-4-

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No. 6:01-CV-788-Orl-22-JGG

WEST AMERICAN INSURANCE COMPANY,
A foreign corporation,

      Plaintiff,

v.

BOCA RADIOLOGY ASSOCIATES, INC.,
SUSAN GROSSMAYER, individually and as
Personal Representative of THE ESTATE OF
THOMAS GROSSMAYER, Deceased and as
Parent and Guardian of JUSTIN GROSSMAYER,
a minor and SETH GROSSMAYER, a minor,
and DONALD WYCHOFF, M.D.

      Defendants.
_____/

## DEFENDANT, GROSSMAYERS' NOTICE OF PENDENCY OF OTHER ACTIONS

In accordance with Local Rule 1.04(c), I certify that the instant action:

_____ ✓ _____ IS      related to pending or closed civil or criminal case(s) previously filed in this Court, or nay other Federal or State court, or administrative agency as indicated below:

<u>Susan Grossmayer, individually and as Personal Representative of the Estate of Thomas Grossmayer, Deceased and as Parent and Natural Guardian of Justin Grossmayer, a minor and Seth Grossmayer, a minor vs. Donald Wyckoff, M.D., et al. , Case No. CL00-2310 AE, in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida.</u>



_____ IS NOT   related to any pending or closed civil or criminal case filed with this Court, or any other Federal or State court, or administrative agency.

We certify that I will serve a copy of this NOTICE OF PENDENCY OF OTHER ACTIONS upon each party no later than eleven days after appearance of the party.

DATED: July _27_., 2001

KRUPNICK, CAMPBELL, MALONE, ROSELLI,
 BUSER, SLAMA, HANCOCK, McNELIS
 LIBERMAN & McKEE, P.A.
Counsel for Defendants, Grossmayer
700 Southeast Third Avenue
Courthouse Law Plaza, Suite 100
Fort Lauderdale, Florida  33316
(954)763-8181


BY:_____
 KELLEY B. GELB, ESQUIRE
 Florida Bar No.:  492132

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the foregoing was furnished by U.S. mail this _27_ day of _July_____, 2001 to:  STEVEN G. SCHWARTZ, ESQ., Attorney for Boca Radiology, Mattlin & McClosky, 2300 Glades Road, Suite 400, East Tower, Boca Raton, FL 33431; DENNIS M. O'HARA, ESQ., Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A., Attorneys for Donald Wyckoff, M.D., 1 East Broward Boulevard, South Trust Tower, Suite 500, Fort Lauderdale, FL 33302, and W. LANE NEILSON, ESQ., Neilson and Associates, Attorneys for Plaintiff, West American Insurance Company, 1332 West Colonial Drive, P.O. Box 547638, Orlando, FL 32854-7638.

KRUPNICK, CAMPBELL, MALONE, ROSELLI,
 BUSER, SLAMA, HANCOCK, McNELIS
 LIBERMAN & McKEE, P.A.
Counsel for Defendants, Grossmayer
700 Southeast Third Avenue
Courthouse Law Plaza, Suite 100
Fort Lauderdale, Florida  33316
(954)763-8181


BY:_____
    KELLEY B. GELB, ESQUIRE
    Florida Bar No.:  492132

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No. 6:01-CV-788-Orl-22-JGG

WEST AMERICAN INSURANCE COMPANY,
A foreign corporation,

      Plaintiff,

v.

BOCA RADIOLOGY ASSOCIATES, INC.,
SUSAN GROSSMAYER, individually and as
Personal Representative of THE ESTATE OF
THOMAS GROSSMAYER, Deceased and as
Parent and Guardian of JUSTIN GROSSMAYER,
a minor and SETH GROSSMAYER, a minor,
and DONALD WYCKOFF, M.D.

      Defendants.
_____/

## DEFENDANT, GROSSMAYERS' CERTIFICATE OF
## INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

  1)  The name of each person, attorney, association of persons, firm, law firm, partnership and corporation that has or may have an interest in the outcome of this action-including subsidiaries, conglomerates, affiliates, parent corporations, publicly – traded companies that own 10% or more of a party's stock, and all other identifiable legal entities to any party in this case:

      Susan Grossmayer, Individually
      Susan Grossmayer, as Personal Representative of the
        Estate of Thomas Grossmayer, Deceased
      Susan Grossmayer, as Parent and Natural Guardian of
        Justin Grossmayer, a Minor and Seth Grossmayer, a Minor

      Scott S. Liberman, Esquire
      Krupnick, Campbell, Malone, Roselli, Buser, Slama
        Hancock, McNelis, Liberman & McKee, P.A., Attorneys for Grossmayer

Boca Radiology Associates, Inc.
Mattlin & McClosky, Attorneys for Boca Radiology Associates
Steven G. Schwartz, Esquire

Donald Wyckoff, M.D.
Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A.,
  Attorneys for Defendant, Donald Wyckoff
Dennis M. O'Hara, Esquire

West American Insurance Company
Ohio Casualty Group
Neilson & Associates – Attorneys for West American
W. Lane Neilson, Esquire


2)     The name of every other entity whose publicly-traded stock, equity or debt may be substantially affected by the outcome of the proceedings:

       NONE

3)     The name of every other entity which is likely to be an active participant in the proceedings, including debtor and members of the creditor's committee (or twenty largest unsecured creditors) in bankruptcy cases:

       NONE

4)     The name of each victim (individual or corporate) of civil and criminal conduct alleged to be wrongful, including every person who may be entitled to restitution:

       Not applicable.  West American Insurance Company does not allege wrongful conduct.  This action is brought by West American Insurance Company seeking declaratory judgment.

We hereby certify that, except as disclosed above, we are unaware of any actual or potential conflict of interest involving the district judge and magistrate judge assigned to this case, and will immediately notify the court in writing upon learning of any such conflict.

Dated: July 27 , 2001

KRUPNICK, CAMPBELL, MALONE, ROSELLI,
 BUSER, SLAMA, HANCOCK, McNELIS
 LIBERMAN & McKEE, P.A.
Counsel for Defendants, Grossmayer
700 Southeast Third Avenue
Courthouse Law Plaza, Suite 100
Fort Lauderdale, Florida  33316
(954)763-8181


BY: _Kelley_____
KELLEY B. GELB, ESQUIRE
Florida Bar No.:  492132

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the foregoing was furnished by U.S. mail this 27th day of JULY_____, 2001 to:  STEVEN G. SCHWARTZ, ESQ., Attorney for Boca Radiology, Mattlin & McClosky, 2300 Glades Road, Suite 400, East Tower, Boca Raton, FL 33431; DENNIS M. O'HARA, ESQ., Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A., Attorneys for Donald Wyckoff, M.D., 1 East Broward Boulevard, South Trust Tower, Suite 500, Fort Lauderdale, FL 33302; DENNIS M. O'HARA, ESQ., Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A., Attorneys for Donald Wyckoff, M.D., 1 East Broward Boulevard, South Trust Tower, Suite 500, Fort Lauderdale, FL 33302 and W. LANE NEILSON, ESQ., Neilson and Associates, Attorneys for Plaintiff, West American Insurance Company, 1332 West Colonial Drive, P.O. Box 547638, Orlando, FL 32854-7638.



## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**WEST AMERICAN INSURANCE
COMPANY, a foreign corporation,**
        **Plaintiff,**

**v.**
                           Case No.: _6:01- CV-788-CRL-22JW_

**BOCA RADIOLOGY ASSOCIATES,
INC., SUSAN GROSSMAYER, individually
and as Personal Representative of THE
ESTATE OF THOMAS GROSSMAYER,
Deceased and as Parent and Natural Guardian
of JUSTIN GROSSMAYER, a minor and
SETH GROSSMAYER, a minor, and DONALD
WYCKOFF, M.D.**

        **Defendants.**
_____/

## WEST AMERICAN INSURANCE COMPANY'S
## COMPLAINT FOR DECLARATORY RELIEF
## AND DEMAND FOR JURY TRIAL

      Plaintiff, WEST AMERICAN INSURANCE COMPANY (hereinafter

referred to as "WEST AMERICAN"), by and through its undersigned attorneys,

brings this action against the Defendants, BOCA RADIOLOGY ASSOCIATES,

INC. (hereinafter referred to as "BOCA RADIOLOGY"), SUSAN GROSSMAYER,

individually and as Personal Representative of THE ESTATE OF THOMAS

GROSSMAYER, Deceased and as Parent and Natural Guardian of JUSTIN

1



GROSSMAYER, a minor and SETH GROSSMAYER, a minor, (hereinafter collectively referred to as "GROSSMAYERS"), and DONALD WYCKOFF, M.D., and alleges as follows:

## Jurisdiction

1.     This is an action for Declaratory Judgment pursuant to 28 U.S.C. §2201 and Rule 57 of the Federal Rules of Civil Procedure.

2.     This Court has jurisdiction pursuant to 28 U.S.C. §1332 based on diversity of citizenship of the parties; and the amount in controversy exceeds $75,000.00, exclusive of attorneys' fees, interest and court costs.

## The Parties

3.     At all times material hereto, including the date of all medical treatments referred to in this pleading, the date of the filing of this action, the date the insurance policy referred to in this pleading was first sought and at all times thereafter, WEST AMERICAN was and is a foreign corporation, incorporated in the state of Ohio, with its Ohio mailing address and principal place of business currently being 9450 Seward Road, Fairfield, Ohio 45014, and its principal place of business being in the State of Ohio at all times as stated above. WEST AMERICAN is and was at all times stated above a citizen of Ohio, was not and is not a citizen of Florida, did not, does not, and never has had its principal place of business in Florida, and WEST AMERICAN was

2

not, is not, and never has been incorporated in Florida, but is authorized to do business in Florida.

4. At all times material hereto, including the date of all medical treatments referred to in this pleading, the date the insurance policy referred to in this pleading was first sought, and at all times material thereafter, BOCA RADIOLOGY was a Florida citizen, was incorporated in Florida, and was authorized to do business in the State of Florida. At all material times, including the date of all medical treatments referred to in this pleading, the date that the insurance policy referred to in this pleading was first sought, and at all material times thereafter, BOCA RADIOLOGY's principal office and place of doing business was at 1590 NW 10th Ave #301 & 304, Boca Raton, Florida 33432. BOCA RADIOLOGY's principal place of business never has been in Ohio and it has never been incorporated in Ohio.

5. At all times material hereto, the Defendant, SUSAN GROSSMAYER, is the duly appointed, qualified and acting Personal Representative of THE ESTATE OF THOMAS GROSSMAYER, Deceased.

6. At all times material hereto, the Defendant, SUSAN GROSSMAYER, was and is the natural parent and guardian of JUSTIN GROSSMAYER and SETH GROSSMAYER.

7. At all material times hereto, Defendants, SUSAN GROSSMAYER,

3

JUSTIN GROSSMAYER, and SETH GROSSMAYER, were and are citizens of the State of Florida and residents of Palm Beach County, Florida.

8.    At all material times hereto, Defendant, DONALD WYCKOFF, M.D., was and is a resident of Palm Beach County, Florida, and was duly licensed to practice medicine in the State of Florida and was practicing medicine in Palm Beach County, Florida.

9.    At all material times hereto, no Defendant named in this action was or is a citizen or resident of the State of Ohio, or did business in the State of Ohio.

### Policy

10.    WEST AMERICAN policy number BKW 9850483084 was issued to BOCA RADIOLOGY in Florida, and is a "Commercial General  Liability" policy that includes a "Services Furnished by Health Care Providers" endorsement.  The policy period when that policy was issued was April 24, 1997 to April 24, 1998.  A true copy of that policy is attached as Exhibit "A".

### The Claims/Lawsuits

11.    The GROSSMAYERS filed a lawsuit against DONALD WYCKOFF, M.D., BOCA RADIOLOGY ASSOCIATES, INC., DAVID SCHWARTZWALD, M.D., DAVID SCHWARTZWALD, M.D., P.A., JEFFREY L. STEIN, M.D., JEFFREY L. STEIN, M.D., P.A.,MARVIN L. STEIN, M.D., MARVIN L. STEIN,

4

M.D., P.A., LEE M. KATIMS, M.D., IMAGING CONSULTANTS OF SOUTH FLORIDA d/b/a IMAGING CONSULTANTS OF WEST BOCA, LEE M. KATIMS, M.D., P.A., TENANT HEALTH SYSTEM HOSPITAL, INC. d/b/a WEST BOCA MEDICAL CENTER, RICHARD D. MARTELLO, M.D., RICHARD D. MARTELLO, M.D., P.A., RICHARD BEERMAN, M.D. and RICHARD BEERMAN, M.D., P.A., in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida, Case No. CL 00-2310 AE. A true copy of the Fourth Amended Complaint from that lawsuit is attached as Exhibit "B".

12.     Count II of that Fourth Amended Complaint alleges that BOCA RADIOLOGY negligently hired and retained Dr. Wyckoff, that BOCA RADIOLOGY is responsible for the negligent hiring, retention and supervision of its employees, agents or apparent agents acting within the course and scope of their employment or agency, that the negligent acts or omissions by and through BOCA RADIOLOGY's agents, apparent agents, representatives, and/or employees fell below the prevailing professional duty of care, and that BOCA RADIOLOGY's agents, representatives, and/or employees' acts or omissions resulted in Thomas Grossmayer's death.

13.     Count III of that Fourth Amended Complaint alleges that BOCA RADIOLOGY, by and through its employees, agents, apparent agents, and/or

5

representatives, had a duty to provide for the safety of its customers through appropriate policies and procedures implemented and performed by its staff, that at the time of the incident complained of BOCA RADIOLOGY had or should have had an established protocol and/or policy, procedure and regulations to be followed by the staff, employees, or agents for the purpose of providing for the safety of customers commensurate with the professional standard of care within the industry, and that BOCA RADIOLOGY breached its duty to Thomas Grossmayer by: (1) failing to properly supervise its employees, agents, and/or technicians to assure that all policies were implemented and followed; (2) failing to have implemented policies and procedures for the purposes of quality assurance and quality control regarding the interpretation of diagnostic films; and/or (3) by failing to have other radiologists perform random reviews of radiological interpretations to evaluate the accuracy and appropriateness of radiological studies and their interpretation.

### Exclusions Precluding Coverage

14.    The WEST AMERICAN policy issued to BOCA RADIOLOGY contains an endorsement that specifically excludes coverage for the claim of the GROSSMAYERS.  Under Endorsement CG 22 44 10 93 titled "EXCLUSION - SERVICES FURNISHED BY HEALTH CARE PROVIDERS", the WEST AMERICAN policy states in pertinent part as follows:

6

With respect to any operation shown in the Schedule, this insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of:

1.    The rendering or failure to render:

    a.    Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction, or the related furnishing of food or beverages;

    b.    Any health or therapeutic service, treatment, advise or instruction; or

    c.    Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming.

2.    The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or

3.    The handling or treatment of dead bodies, including autopsies, organ donation or other procedures.

15.    The following definitions apply to the above-cited policy language:

3.    "Bodily Injury"

    a.    Means Bodily Injury, sickness or disease sustained by a person, and includes mental anguish resulting from any of these; and

    b.    Except for mental anguish,

7

includes death resulting from the foregoing (Item a. above) at any time.

16.     The above-cited language in the WEST AMERICAN policy that was issued to BOCA RADIOLOGY excludes from coverage those acts that constitute medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction claimed by the GROSSMAYERS against BOCA RADIOLOGY, including the hiring, retention and supervision of BOCA RADIOLOGY staff, and the establishment of protocol and/or policy, procedure and regulations to be followed by the staff for the purpose of providing for the safety of customers.

## The Dispute

17.     Pursuant to the above-mentioned policy language, WEST AMERICAN provides no coverage for and no duty to defend BOCA RADIOLOGY from the allegations of the above-mentioned Fourth Amended Complaint because the policy excludes coverage for the claims alleged by the GROSSMAYERS against BOCA RADIOLOGY.

18.     There exists between WEST AMERICAN and each of the above-named Defendants in this action, an actual controversy with regard to their respective rights and duties under the above-mentioned policy of insurance, and the existence or non-existence of those rights being in doubt between the parties.   More

8

specifically, BOCA RADIOLOGY disagrees with WEST AMERICAN's position regarding the absence of coverage under the policy.

**WHEREFORE**, WEST AMERICAN respectfully requests that this Honorable Court determine the parties' respective rights and duties under the above-mentioned policy of insurance, and that this Court declare that there is no coverage and no duty to defend BOCA RADIOLOGY under the WEST AMERICAN policy, for the claims alleged by the GROSSMAYERS in the Fourth Amended Complaint, and grant WEST AMERICAN such other and further relief as this court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

WEST AMERICAN demands trial by jury on all issues so triable in this action.

W. LANE NEILSON
Fla. Bar No.  211753
**NEILSON AND ASSOCIATES**
1332 West Colonial Drive
P.O. Box 547638
Orlando, Florida  32854-7638
(407) 843-6514
(407) 843-0427 (Fax)
Attorneys for Plaintiff, West American
Insurance Company

9

Case 0:03-cv-62063-JIC   Document 1-6   Entered on FLSD Docket 08/14/2003   Page 60 of 199

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BELOW          POLICY NUMBER
- [ ] THE OHIO CASUALTY INSURANCE COMPANY
- [ ] AMERICAN FIRE AND CASUALTY COMPANY
- [X] WEST AMERICAN INSURANCE COMPANY

| COMMERCIAL | PACKAGE | POLICY |
| OCCURRENCE | | |

# The Ohio Casualty Group of Insurance Companies
### 136 North Third Street, Hamilton, Ohio 45025

**POLICY DECLARATI**

| NAMED INSURED & MAILING ADDRESS | AGENT'S NAME & ADDRESS 0740  09  03  20 |
|---|---|
| BOCA RADIOLOGY ASSOCIATES, INC. & ADDA MEDICAL BILLING & CONSULTING SERVICES, INC & DR GERALD SCHMIDT 1590 NW 10TH AVE #301 & 304 BOCA RATON FL 33432 | TELEPHONE: (407) 276-5221 PLASTRIDGE AGENCY INC THOMAS E LYNCH PO DRAWER 730 DELRAY BEACH FL 33447-0730 |

**PREVIOUS POLICY NO.** BKW 50 48 30 84

**INSURED IS** CORPORATION          **INSURED'S BUSINESS** PHYSICIAN'S OFFICE

**POLICY PERIOD:** THIS POLICY IS IN FORCE FROM 04/24/97 TO 04/24/98 AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy

THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, AND THE COMMERCIAL PROPERTY AND COMMERCIAL LIABILITY COVERAGE PARTS (WHICH CONSIST OF COVERAGE FORMS AND OTHER APPLICABLE FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART OF THEM) COMPLETE THIS POLICY. THIS POLICY MAY ALSO CONTAIN OTHER COVERAGE PARTS.

POLICY DECLARATIONS SCHEDULES - TABLE OF CONTENTS

| PAGE | TITLE |
|---|---|
| 2 | COMMERCIAL LIABILITY LIMITS OF INSURANCE |
| 2 | EXPLANATION OF CHARGES |
| 2 | FORMS AND ENDORSEMENTS |
| 3 | COMMERCIAL PROPERTY DECLARATIONS |
| 5 | COMMERCIAL LIABILITY DECLARATIONS |

SEE THE COMMERCIAL PROPERTY DECLARATIONS SCHEDULE FOR MORTGAGE HOLDER INFORMATION

THIS POLICY WILL BE AUDITED AT EXPIRATION

TOTAL PROVISIONAL CHARGES: . . . . . . . . . (T.O.P.) $3,089.20

**CERTIFIED**
THIS IS A TRUE AND CERTIFIED COPY OF THE ORIGINAL POLICY WITH THE FOLLOWING EXCEPTIONS:_____

SIGNATURE _Steven H. Hall_
TITLE _Comm. Underwriting Mgr._
DATE _5/3/01_

PLAINTIFF'S
EXHIBIT
_A_

N07          CONTINUED ON PAGE 2

Issue Date 03/07/97 At ORLANDO, FLORIDA          By _____

Case 9:01-cv-08871 Document 2 Entered on FLSD Docket 08/24/2001 Page 61 of 199

# The Ohio Casualty Group

136 North Third Street, Hamilton, Ohio 45025

of Insurance Companies    POLICY DECLARATIONS

| | |
|---|---|
| **NAME OF COMPANY** | WEST AMERICAN INSURANCE COMPANY |
| **NAMED INSURED** | BOCA RADIOLOGY ASSOCIATES, INC. & **POLICY NO.** BKW (98) 50 48 30 84 |

| INTERNAL USE | |
|---|---|

PROPERTY DECLARATIONS SCHEDULE

INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES AND FOR WHICH A LIMIT OF INSURANCE IS SHOWN. OPTIONAL COVERAGES APPLY ONLY WHEN ENTRIES ARE MADE IN THIS SCHEDULE.

**L:3**

PREMISES/LOCATION:    NUMBER 1
1590 N.W. 10TH AVENUE #301 & #304
BOCA RATON, FL 33432

LIMITS AND COVERAGES PROVIDED THIS PREMISES:

**BLD:1**
**CC:6**

DESCRIPTION:    BUILDING NUMBER 1
CONSTRUCTION:    FIRE RESISTIVE
PROTECTION CLASS: 03
DEDUCTIBLE: WIND & HAIL: 2.0 %

MORTGAGE HOLDER(S):
NONE

**CSP:702**
**I/C:20099**

OCCUPANCY:
MEDICAL OFFICES

**I:642  1**

LIMIT OF INSURANCE..... $350,000 AT 100% COINSURANCE
COVERAGE.............. YOUR BUSINESS PERSONAL PROPERTY
  OPTIONAL COVERAGES... REPLACEMENT COST
              INCLUDING STOCK
DEDUCTIBLE............ PER CP7131
              WIND & HAIL - SEE ABOVE
COVERED CAUSES OF LOSS. SPECIAL FORM
              INCLUDING THEFT
ANNUAL PREMIUM........................    $573.00
FLORIDA SURCHARGE......................         .57

**I:643  1**

LIMIT OF INSURANCE..... $120,000
COVERAGE.............. BUSINESS INCOME OTHER THAN
              "RENTAL VALUE"
              (AND EXTRA EXPENSE)
  OPTIONAL COVERAGES... MONTHLY LIMIT OF INDEMNITY 1/3
COVERED CAUSES OF LOSS. SPECIAL FORM
              INCLUDING THEFT
ANNUAL PREMIUM........................    $231.00
FLORIDA SURCHARGE......................         .23

**TRANS:0001**

CONTINUED ON PAGE 4

Case 9:01-cv-08871-DTKH Document 2 Entered on FLSD Docket 08/24/2001 Page 62 of 199

**NAME OF COMPANY** WEST  AMERICAN  INSURANCE  COMPANY

**NAMED INSURED** BOCA  RADIOLOGY  ASSOCIATES,  INC.  &    **POLICY NO.** BKW  (98)  50  48  30  84

| INTERNAL USE | |
|---|---|

PROPERTY  DECLARATIONS  SCHEDULE  -  (CONTINUED)

L:4

PREMISES/LOCATION:   NUMBER  2
  10251  W.  SAMPLE  RD,  SUITE  A,B,C
  CORAL  SPRINGS,  FL  33065

LIMITS  AND  COVERAGES  PROVIDED  THIS  PREMISES:

BLD:2
CC:4

DESCRIPTION:   BUILDING  NUMBER  1
  CONSTRUCTION:   MASONRY  NON-COMBUSTIBLE
  PROTECTION  CLASS:  04
  DEDUCTIBLE:  WIND  &  HAIL:  2.0  %

MORTGAGE  HOLDER(S):
  NONE

CSP:702

OCCUPANCY:
  ACCOUNTING/BOOKKEEPING  OFFICE
  RATED  AS:

I/C:20099

MEDICAL  OFFICES

I:642  2

  LIMIT  OF  INSURANCE.....  $145,000  AT  100%  COINSURANCE
  COVERAGE..............  YOUR  BUSINESS  PERSONAL  PROPERTY
    OPTIONAL  COVERAGES...  REPLACEMENT  COST
      INCLUDING  STOCK
  DEDUCTIBLE............  PER  CP7131
    WIND  &  HAIL  -  SEE  ABOVE
  COVERED  CAUSES  OF  LOSS.  SPECIAL  FORM
    INCLUDING  THEFT
  ANNUAL  PREMIUM.........................  $404.00
  FLORIDA  SURCHARGE......................  .40

- - - - - - - - - - - - - - - - - - - - - - - - -

PROPERTY  SCHEDULE  TOTALS  -  ANNUAL

  PREMIUM................................  $  1,208.00
  FLORIDA  SURCHARGE......................  1.20
  TOTAL..................................  1,209.20

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

TRANS:0001

CONTINUED  ON  PAGE  5

**The Ohio Casualty Group**
136 North Third Street, Hamilton, Ohio 45025

of Insurance Companies POLICY DECLARATIONS

**NAME OF COMPANY** WEST AMERICAN INSURANCE COMPANY

**NAMED INSURED** BOCA RADIOLOGY ASSOCIATES, INC. & **POLICY NO.** BKW (98) 50 48 30 84

| INTERNAL USE | COMMERCIAL LIABILITY DECLARATIONS SCHEDULE |
|---|---|

LOCATIONS

COVERED LOCATION(S):

L:3
    1. 1590 N.W. 10TH AVENUE #301 & #304
       BOCA RATON, FL 33432

L:4
    2. 10251 W. SAMPLE RD, SUITE A,B,C
       CORAL SPRINGS, FL 33065

- - - - - - - - - - - - - - - - - - - - - - - -

HAZARDS        ANNUAL PREMIUM

ST:09    STATE : FLORIDA

NI:1    INSURED: BOCA RADIOLOGY ASSOCIATES, INC. &
           ADDA MEDICAL BILLING & CONSULTING
           SERVICES, INC & DR GERALD SCHMIDT

I/C:20016    CLASSIFICATION CODE: 66561
        MEDICAL OFFICES
        INCLUDING PRODUCTS AND / OR COMPLETED OPERATIONS.

EU:1   PREMIUM BASIS:
L:3     3,000 SQUARE FEET OF AREA
       RATES PER 1,000

      PREMISE/OPERATIONS
        RATE:               312.794       $938.00

EU:2   PREMIUM BASIS:
L:4     3,000 SQUARE FEET OF AREA
       RATES PER 1,000

      PREMISE/OPERATIONS
        RATE:               312.794       $938.00

- - - - - - - - - - - - - - - - - - - - - - - -
LIABILITY SCHEDULE TOTALS - ANNUAL     ===========
   TOTAL PROVISIONAL PREMIUM:. . . . . . . . . . . $1,876.00

     * * * * * * * * * * * * * * * * * * * * * *

TRANS:0001                END OF DECLARATIONS

Case 9:01-md-01334-??? Document ?? Entered on FLSD Docket 08/24/2001   Page 64 of 199

**NAME OF COMPANY** WEST  AMERICAN  INSURANCE  COMPANY

**NAMED INSURED** BOCA  RADIOLOGY  ASSOCIATES,   INC. &   **POLICY NO.** BKW  (98)  50 48 30 84

INTERNAL USE

COMMERCIAL   LIABILITY   LIMITS   OF  INSURANCE

| | |
|---|---|
| GENERAL  AGGREGATE  LIMIT | $2,000,000 |
| (OTHER  THAN  PRODUCTS-COMPLETED   OPERATIONS) | |
| PRODUCTS-COMPLETED   OPERATIONS  AGGREGATE  LIMIT | $2,000,000 |
| PERSONAL  AND  ADVERTISING  INJURY  LIMIT | $1,000,000 |
| EACH  OCCURRENCE  LIMIT | $1,000,000 |
| FIRE  DAMAGE  LIMIT  (ANY  ONE  FIRE) | $50,000 |
| MEDICAL  EXPENSE  LIMIT  (ANY  ONE  PERSON) | $5,000 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

EXPLANATION   OF  CHARGES

R E C A P    O F    S C H E D U L E    T O T A L S

| | |
|---|---|
| PROPERTY  SCHEDULE  TOTALS  - ANNUAL | $1,209.20 |
| LIABILITY  SCHEDULE  TOTALS  - ANNUAL | $1,876.00 |
| FL.  DEPT.  OF  REVENUE  SURCHARGE  - ANNUAL | $4.00 |
| TOTAL  PROVISIONAL  CHARGES | $3,089.20 |
| INCLUDES: | |
| FLORIDA  SURCHARGE | $1.20 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

SCHEDULE   OF  FORMS  AND  ENDORSEMENTS

FORMS/ENDORSEMENTS   APPLICABLE   TO  THIS  POLICY  AT  TIME  OF  ISSUE

| | | | |
|---|---|---|---|
| CG00010196 | CG02200792 | CG20281185 | CG21471093 |
| CG22441093 | CG83300496 | CP00100695 | CP00300695 |
| CP00900788 | CP01250695 | CP03210695 | CP10300695 |
| CP12180695 | CP71050186 | CP71310695 | IL00171185 |
| IL00211194 | IL01750993 | IL02550794 | OC70350693 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

TRANS:0001

CONTINUED   ON  PAGE   3

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# The Ohio Casualty Group of Insurance Companies
136 North Third Street, Hamilton, Ohio 45025

COMMERCIAL   PACKAGE   POLICY   CHANGE   ENDORSEMENT

| COMPANY | POLICY NUMBER |
|---|---|
| WEST AMERICAN INSURANCE COMPANY | BKW (98) 50 48 30 84 |

| NAMED INSURED & MAILING ADDRESS | AGENT'S NAME & ADDRESS   1580 09 03 20 |
|---|---|
| BOCA RADIOLOGY ASSOCIATES, INC. & ADDA MEDICAL BILLING & CONSULTING SERVICES, INC. 1590 NW 10TH AVE, STE 301 BOCA RATON FL 33486 1323 | TELEPHONE: (561) 276-5221 PLASTRIDGE AGENCY INC THOMAS E LYNCH PO DRAWER 730 DELRAY BEACH FL 33447-0730 |

| POLICY TERM | 04/24/97 TO 04/24/98 |
|---|---|
| TRANSACTION 4 (04/30/98) | TRANSACTION EFFECTIVE: 02/26/98 |

PURPOSE OF ENDORSEMENT:
   ADDING LOCATION AT 1590 NW 10TH AVE #202 FOR
   PROPERTY AND LIABILITY COVERAGE
   ADDING FIRST SOUTHERN BANK AS MORTGAGEE FOR
   ABOVE AND SHOWING SAME AS LOSS PAYEE ATTACHED

POLICY DECLARATIONS SCHEDULES CHANGED BY THIS TRANSACTION

  PAGE     TITLE

    2     EXPLANATION OF CHARGES
    3     COMMERCIAL PROPERTY DECLARATIONS
    8     COMMERCIAL LIABILITY DECLARATIONS

SEE THE COMMERCIAL PROPERTY DECLARATIONS SCHEDULE FOR
BUILDING CODE EFFECTIVENESS GRADING DETAIL

BUILDING CODE EFFECTIVENESS GRADING PREMIUM ADJUSTMENT
FOR THIS TRANSACTION . . . .               $0.00

P R O V I S I O N A L   C H A R G E S
   REVISED TOTAL: . . . . . . . . . . . . $3,854.84
   PREVIOUS TOTAL: . . . . . . . . . . . . $3,547.74
   ADDITIONAL: . . . . . . . . . . . .(T.O.P.P.)  $307.10

     N07              CONTINUED ON PAGE 2

ACCOUNT NAME: BOCA RADIOLOGY ASSOC


Case 9:01-cv-08158-... Document 2 Entered on FLSD Docket 08/24/2001 Page 66 of 199

The Ohio Casualty Group
136 North Third Street, Hamilton, Ohio 45025
of insurance companies
POLICY DECLARATIONS

| | |
|---|---|
| **NAME OF COMPANY** WEST AMERICAN INSURANCE COMPANY | |
| **NAMED INSURED** BOCA RADIOLOGY ASSOCIATES, INC. & | **POLICY NO.** BKW (98) 50 48 30 84 |

**INTERNAL USE**

UPDATED EXPLANATION OF CHARGES

R E C A P   O F   S C H E D U L E   T O T A L S

PROPERTY SCHEDULE TOTALS - ANNUAL                    $2,309.30

LIABILITY SCHEDULE TOTALS - ANNUAL                    $3,203.00

FL. DEPT. OF REVENUE SURCHARGE - ANNUAL                    $4.00

UPDATED POLICY SCHEDULE(S) TOTAL - ANNUAL          $5,516.30

EXPLANATION OF ENDORSEMENT CHARGE DEVELOPMENT

UPDATED POLICY SCHEDULE(S) TOTAL - ANNUAL          $5,516.30
PREVIOUS POLICY SCHEDULE(S) TOTAL - ANNUAL          $3,547.74

DIFFERENCE - ANNUAL                                  $1,968.56
ENDORSEMENT TERM FACTOR                                    .156

ENDORSEMENT CHARGE                                      $307.10
  INCLUDES:
    FLORIDA SURCHARGE                          $.09
PREVIOUS PROVISIONAL CHARGES                          $3,547.74

REVISED PROVISIONAL CHARGES                          $3,854.84
  INCLUDES:
    FLORIDA SURCHARGE                        $1.83
    FL. DEPT. OF REVENUE SURCHARGE           $4.00

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

TRANS:0004                    CONTINUED ON PAGE    3

Case 9:01-cv-08987-JIC Document 3 Entered on FLSD Docket 08/24/2001 Page 67 of 199

**NAME OF COMPANY** WEST AMERICAN INSURANCE COMPANY

**NAMED INSURED** BOCA RADIOLOGY ASSOCIATES, INC.    **POLICY NO.** BKW (98) 50 48 30 84

**INTERNAL USE**

PROPERTY DECLARATIONS SCHEDULE

UPDATED COVERAGES - EFFECTIVE FROM 02/26/98 TO 04/24/98

INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES AND FOR WHICH A LIMIT OF INSURANCE IS SHOWN. OPTIONAL COVERAGES APPLY ONLY WHEN ENTRIES ARE MADE IN THIS SCHEDULE.

L:3

PREMISES/LOCATION: NUMBER 1
  1590 N.W. 10TH AVENUE #301-304
  BOCA RATON, FL 33486 1313

LIMITS AND COVERAGES PROVIDED THIS PREMISES:

BLD:1
CC:6

DESCRIPTION: BUILDING NUMBER 1
  CONSTRUCTION: FIRE RESISTIVE
  PROTECTION CLASS: 03
  DEDUCTIBLE: WIND & HAIL: 2.0 %

MORTGAGE HOLDER(S):
  NONE

CSP:702
I/C:20099

OCCUPANCY:
MEDICAL OFFICES

I:642 1

LIMIT OF INSURANCE..... $350,000 AT 100% COINSURANCE
COVERAGE............... YOUR BUSINESS PERSONAL PROPERTY
  OPTIONAL COVERAGES... REPLACEMENT COST
    INCLUDING STOCK
DEDUCTIBLE............ PER CP7131
    WIND & HAIL - SEE ABOVE
COVERED CAUSES OF LOSS. SPECIAL FORM
    INCLUDING THEFT
ANNUAL PREMIUM........................ $573.00
FLORIDA SURCHARGE..................... .57

RANGE OF PREMIUM THAT POLICY COULD HAVE BEEN ADJUSTED PER BUILDING CODE EFFECTIVENESS GRADING:
  FROM $0.00 TO $0.00

TRANS:0004

CONTINUED ON PAGE 4

Case 9:01-cv-08877 Document 2 Entered on FLSD Docket 08/24/2001 Page 68 of 199

**The Ohio Casualty Group**
136 North Third Street, Hamilton, Ohio 45025

of Insurance Companies    POLICY   DECLARATIONS

| | |
|---|---|
| **NAME OF COMPANY** | WEST   AMERICAN   INSURANCE   COMPANY |
| **NAMED INSURED** | BOCA   RADIOLOGY   ASSOCIATES,   INC.  &    **POLICY NO.** BKW  (98)  50  48  30  84 |

| INTERNAL USE | |
|---|---|

PROPERTY   DECLARATIONS   SCHEDULE   -  (CONTINUED)

**I:643  1**

```
LIMIT  OF  INSURANCE.....   $120,000
COVERAGE..............      BUSINESS   INCOME   OTHER   THAN
                           "RENTAL   VALUE"
                           (AND  EXTRA   EXPENSE)
    OPTIONAL   COVERAGES...  MONTHLY   LIMIT   OF  INDEMNITY   1/3
COVERED   CAUSES   OF  LOSS.  SPECIAL   FORM
                                INCLUDING   THEFT
ANNUAL   PREMIUM........................   $231.00
FLORIDA   SURCHARGE.....................       .23
```

**L:4**

```
PREMISES/LOCATION:   NUMBER   2
  10251   W.  SAMPLE   RD,  SUITE   A
CORAL   SPRINGS,   FL  33065  3939

LIMITS  AND  COVERAGES  PROVIDED  THIS  PREMISES:
```

**BLD:2**
**CC:4**

```
DESCRIPTION:   BUILDING   NUMBER   1
   CONSTRUCTION:   MASONRY   NON-COMBUSTIBLE
PROTECTION   CLASS:  04
DEDUCTIBLE:   WIND  &  HAIL:  2.0  %

MORTGAGE   HOLDER(S):
   NONE
```

**CSP:702**

```
OCCUPANCY:
ACCOUNTING/BOOKKEEPING   OFFICE
RATED   AS:
```

**I/C:20099**

```
MEDICAL   OFFICES
```

**I:642  2**

```
LIMIT  OF  INSURANCE.....   $235,000  AT  100%  COINSURANCE
COVERAGE..............      YOUR  BUSINESS   PERSONAL   PROPERTY
    OPTIONAL   COVERAGES...  REPLACEMENT   COST
                               INCLUDING   STOCK
DEDUCTIBLE............      PER  CP7131
                           WIND  &  HAIL  -  SEE  ABOVE
COVERED   CAUSES   OF  LOSS.  SPECIAL   FORM
                                INCLUDING   THEFT
ANNUAL   PREMIUM........................   $581.00
FLORIDA   SURCHARGE.....................       .58
```

```
RANGE   OF  PREMIUM   THAT  POLICY   COULD  HAVE  BEEN  ADJUSTED
PER  BUILDING   CODE  EFFECTIVENESS   GRADING:
   FROM        $0.00  TO        $0.00
```

**TRANS:0004**

CONTINUED   ON  PAGE    5

The Ohio Casualty Group
136 North Third Street, Hamilton, Ohio 45025
of Insurance Companies

POLICY DECLARATIONS

| | |
|---|---|
| **NAME OF COMPANY** | WEST AMERICAN INSURANCE COMPANY |
| **NAMED INSURED** | BOCA RADIOLOGY ASSOCIATES, INC. & |
| **POLICY NO.** | BKW (98) 50 48 30 84 |

| INTERNAL USE | |
|---|---|
| | PROPERTY DECLARATIONS SCHEDULE - (CONTINUED) |
| L:5 | PREMISES/LOCATION: NUMBER 3<br>10251 W. SAMPLE RD, SUITE B<br>CORAL SPRINGS, FL 33065 3939<br><br>LIMITS AND COVERAGES PROVIDED THIS PREMISES: |
| BLD:3<br>CC:4 | DESCRIPTION: BUILDING NUMBER 1<br>CONSTRUCTION: MASONRY NON-COMBUSTIBLE<br>PROTECTION CLASS: 04<br>DEDUCTIBLE: WIND & HAIL: 2.0 %<br><br>MORTGAGE HOLDER(S):<br>NONE |
| CSP:702<br>I/C:20099 | OCCUPANCY:<br>MEDICAL OFFICES |
| I:642 3 | LIMIT OF INSURANCE..... $30,000 AT 100% COINSURANCE<br>COVERAGE.............. YOUR BUSINESS PERSONAL PROPERTY<br>OPTIONAL COVERAGES... REPLACEMENT COST<br>INCLUDING STOCK<br>DEDUCTIBLE............ PER CP7131<br>WIND & HAIL - SEE ABOVE<br>COVERED CAUSES OF LOSS. SPECIAL FORM<br>INCLUDING THEFT<br>ANNUAL PREMIUM....................... $179.00<br>FLORIDA SURCHARGE..................... .18<br><br>RANGE OF PREMIUM THAT POLICY COULD HAVE BEEN ADJUSTED<br>PER BUILDING CODE EFFECTIVENESS GRADING:<br>FROM $0.00 TO $0.00 |
| L:6 | PREMISES/LOCATION: NUMBER 4<br>10251 W. SAMPLE RD, SUITE C<br>CORAL SPRINGS, FL 33065 3939<br><br>LIMITS AND COVERAGES PROVIDED THIS PREMISES: |
| TRANS:0004 | CONTINUED ON PAGE 6 |

CONTINUED ON PAGE 6

**The Ohio Casualty Group** of Insurance Companies
136 North Third Street, Hamilton, Ohio 45025

POLICY DECLARATIONS

**NAME OF COMPANY** WEST AMERICAN INSURANCE COMPANY

**NAMED INSURED** BOCA RADIOLOGY ASSOCIATES, INC. & **POLICY NO.** BKW (98) 50 48 30 84

**INTERNAL USE**

PROPERTY DECLARATIONS SCHEDULE - (CONTINUED)

BLD:4
CC:4

DESCRIPTION: BUILDING NUMBER 1
    CONSTRUCTION: MASONRY NON-COMBUSTIBLE
    PROTECTION CLASS: 04
    DEDUCTIBLE: WIND & HAIL: 2.0 %

MORTGAGE HOLDER(S):
    NONE

CSP:702
I/C:20099

OCCUPANCY:
MEDICAL OFFICES

I:642 4

    LIMIT OF INSURANCE..... $30,000 AT 100% COINSURANCE
    COVERAGE.............. YOUR BUSINESS PERSONAL PROPERTY
      OPTIONAL COVERAGES... REPLACEMENT COST
                           INCLUDING STOCK
    DEDUCTIBLE............ PER CP7131
                           WIND & HAIL - SEE ABOVE
    COVERED CAUSES OF LOSS. SPECIAL FORM
                           INCLUDING THEFT
    ANNUAL PREMIUM......................... $179.00
    FLORIDA SURCHARGE...................... .18

RANGE OF PREMIUM THAT POLICY COULD HAVE BEEN ADJUSTED
PER BUILDING CODE EFFECTIVENESS GRADING:
    FROM     $0.00 TO     $0.00

L:7

PREMISES/LOCATION: NUMBER 5
    1590 NW 10TH AVE #202
    BOCA RATON, FL 33486 1313

LIMITS AND COVERAGES PROVIDED THIS PREMISES:

BLD:5
CC:6

DESCRIPTION: BUILDING NUMBER 1
    CONSTRUCTION: FIRE RESISTIVE
    PROTECTION CLASS: 03
    DEDUCTIBLE: WIND & HAIL: 2.0 %

MRT:1

MORTGAGE HOLDER(S):
    FIRST SOUTHERN BANK
    9955 GLADES RD
    BOCA RATON FL 33434

CSP:702
I/C:20099

OCCUPANCY:
MEDICAL OFFICES

TRANS:0004

CONTINUED ON PAGE 7

Case 9:01-cv-08987-DMM   Document 2   Entered on FLSD Docket 08/24/2001   Page 71 of 199

**The Ohio Casualty Group** of Insurance Companies
136 North Third Street, Hamilton, Ohio 45025

POLICY DECLARATIONS

| | |
|---|---|
| **NAME OF COMPANY** | WEST AMERICAN INSURANCE COMPANY |
| **NAMED INSURED** | BOCA RADIOLOGY ASSOCIATES, INC. & |
| **POLICY NO.** | BKW (98) 50 48 30 84 |

**INTERNAL USE**

PROPERTY DECLARATIONS SCHEDULE - (CONTINUED)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PROPERTY SCHEDULE TOTALS - ANNUAL

```
PREMIUM.................................    $  1,743.00
FLORIDA  SURCHARGE......................           1.74
TOTAL..................................        1,744.74
```

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TRANS:0003

CONTINUED ON PAGE 7

Case 9:01-cv-08987-DMM Document 2 Entered on FLSD Docket 08/24/2001 Page 72 of 199

**NAME OF COMPANY** WEST AMERICAN INSURANCE COMPANY

**NAMED INSURED** BOCA RADIOLOGY ASSOCIATES, INC. & **POLICY NO.** BKW (98) 50 48 30 84

| INTERNAL USE | |
|---|---|

COMMERCIAL LIABILITY DECLARATIONS SCHEDULE

LOCATIONS

COVERED LOCATION(S):

L:3
1. 1590 N.W. 10TH AVENUE #301-304
   BOCA RATON, FL 33486 1313

L:4
2. 10251 W. SAMPLE RD, SUITE A
   CORAL SPRINGS, FL 33065 3939

L:5
3. 10251 W. SAMPLE RD, SUITE B
   CORAL SPRINGS, FL 33065 3939

L:6
4. 10251 W. SAMPLE RD, SUITE C
   CORAL SPRINGS, FL 33065 3939

- - - - - - - - - - - - - - - - - - - - - - -

HAZARDS                                    ANNUAL PREMIUM

ST:09
STATE : FLORIDA

NI:1
INSURED: BOCA RADIOLOGY ASSOCIATES, INC. &
ADDA MEDICAL BILLING & CONSULTING
SERVICES, INC.

I/C:42614
CLASSIFICATION CODE: 61224
BUILDING OR PREMISES - OFFICE - PREMISES
PRIMARILY OCCUPIED BY EMPLOYEES OF THE INSURED -
FOR PROFIT
INCLUDING PRODUCTS AND / OR COMPLETED OPERATIONS.

EU:2
L:4
PREMIUM BASIS:
1,000 SQUARE FEET OF AREA
RATES PER 1,000

PREMISE/OPERATIONS
RATE:                          234.556          $235.00

I/C:20016
CLASSIFICATION CODE: 66561
MEDICAL OFFICES
INCLUDING PRODUCTS AND / OR COMPLETED OPERATIONS.

EU:1
L:3
PREMIUM BASIS:
3,000 SQUARE FEET OF AREA
RATES PER 1,000

PREMISE/OPERATIONS
RATE:                          312.794          $938.00

TRANS:0003
CONTINUED ON PAGE 8

**The Ohio Casualty Group** of Insurance Companies   POLICY DECLARATIONS
136 North Third Street, Hamilton, Ohio 45025

| | |
|---|---|
| **NAME OF COMPANY** | WEST AMERICAN INSURANCE COMPANY |
| **NAMED INSURED** BOCA RADIOLOGY ASSOCIATES, INC. & | **POLICY NO.** BKW (98) 50 48 30 84 |

**INTERNAL USE**

COMMERCIAL LIABILITY DECLARATIONS SCHEDULE - (CONTINUED)

HAZARDS - (CONTINUED)          ANNUAL PREMIUM

EU:3
L:5

PREMIUM BASIS:
1,000 SQUARE FEET OF AREA
RATES PER 1,000

PREMISE/OPERATIONS
RATE:                          312.794            $313.00

EU:4
L:6

PREMIUM BASIS:
1,000 SQUARE FEET OF AREA
RATES PER 1,000

PREMISE/OPERATIONS
RATE:                          312.794            $313.00

- - - - - - - - - - - - - - - - - - - - - - - -
LIABILITY SCHEDULE TOTALS - ANNUAL          ===========
TOTAL PROVISIONAL PREMIUM:. . . . . . . . . . .   $1,799.00

* * * * * * * * * * * * * * * * * * * *

TRANS:0003                    END OF DECLARATIONS

POLICY NUMBER: BKW(98) 50483084   COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization:** LASALLE   NATIONAL   LEASING

502  WASHINGTON   AVENUE
TOWSON,   MD   21204

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person(s) or organization(s), subject to the following additional exclusions:

This insurance does not apply:

1.  To any "occurrence" which takes place after the equipment lease expires;

2.  To "bodily injury" or "property damage" arising out of the sole negligence of the person or organization shown in the Schedule.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**The Ohio Casualty Group** of Insurance Companies
136 North Third Street, Hamilton, Ohio 45025

COMMERCIAL     PACKAGE     POLICY     CHANGE     ENDORSEMENT

| COMPANY | POLICY NUMBER |
|---|---|
| WEST AMERICAN INSURANCE COMPANY | BKW (98) 50 48 30 84 |

| NAMED INSURED & MAILING ADDRESS | AGENT'S NAME & ADDRESS     0740   09   03   20? |
|---|---|
| BOCA RADIOLOGY ASSOCIATES, INC. & ADDA MEDICAL BILLING & CONSULTING SERVICES, INC & DR GERALD SCHMIDT 1590 NW 10TH AVE #301 & 304 BOCA RATON FL 33432 | TELEPHONE: (407) 276-5221 PLASTRIDGE AGENCY INC THOMAS E LYNCH PO DRAWER 730 DELRAY BEACH          FL 33447-0730 |

| TRANSACTION   2   (04/11/97) | POLICY TERM     04/24/97   TO   04/24/98 |
|---|---|
| | TRANSACTION EFFECTIVE          04/24/97 |

PURPOSE   OF   ENDORSEMENT:
ADDING   LASALLE   NATIONAL   LEASING   AS   LOSS   PAYEE   AND
FOR   AMENDMENT   OF   CANCELLATION   PROVISIONS   PER   THE
CP12180695   AND   CG80610188   ATTACHED.


POLICY   DECLARATIONS   SCHEDULES   CHANGED   BY   THIS   TRANSACTION

PAGE       TITLE

   2     FORMS   AND   ENDORSEMENTS



NO   CHARGE   FOR   THIS   ENDORSEMENT

.


          N07                         CONTINUED   ON   PAGE   2

ACCOUNT   NAME:   BOCA   RADIOLOGY   ASSOC

Case 9:01-cv-08571-KSG   Document 2   Entered on FLSD Docket 09/05/2001   Page 76 of 199

**NAME OF COMPANY** WEST AMERICAN INSURANCE COMPANY

**NAMED INSURED** BOCA RADIOLOGY ASSOCIATES, INC. &    **POLICY NO.** BKW (98) 50 48 30 84

| INTERNAL USE |
| --- |

SCHEDULE OF FORMS AND ENDORSEMENTS

FORMS/ENDORSEMENTS     APPLICABLE     TO THIS POLICY

```
CG00010196      CG02200792      CG20281185      CG21471093
CG22441093      *CG80610188     CG83300496      CP00100695
CP00300695      CP00900788      CP01250695      CP03210695
CP10300695      CP12180695      CP71050186      CP71310695
IL00171185      IL00211194      IL01750993      IL02550794
OC70350693
*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

TRANS:0002                          END OF DECLARATIONS

BKW(98)50483084

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF CANCELLATION
# PROVISIONS OR COVERAGE CHANGE

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    CONTRACTORS GENERAL LIABILITY COVERAGE PART

In the event of cancellation or material change that reduces or restricts the insurance afforded by this Coverage Part, we agree to mail prior written notice of cancellation or material change to:

### SCHEDULE

1. **Name:**     LASALLE  NATIONAL  LEASING  CORP.

2. **Address:**  502  WASHINGTON  AVENUE
                 TOWSON,  MD 21204

3. **Number of days advance notice:**  30

CG 80 61 01 88      Includes copyrighted material of Insurance Services Office, with its permission.

POLICY NUMBER: BKW(98)50483084

COMMERCIAL PROPERTY
CP 12 18 06 95

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS' RISK COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT–OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

## SCHEDULE

| Prem. No. | Bldg. No. | Description of Property | Loss Payee (Name & Address) | Provisions Applicable | | |
|---|---|---|---|---|---|---|
| | | | | Loss Payable | Lender's Loss Payable | Contract Of Sale |
| 1 | 1 | Y.B.P.P. | LASALLE  NATIONAL  LEASING  CORP. | X | | |
| | | | 502  WASHINGTON  AVENUE TOWSON,  MD 21204 | | | |

**A.** When this endorsement is attached to the STANDARD PROPERTY POLICY CP 00 99 the term Coverage Part in this endorsement is replaced by the term Policy.

The following is added to the LOSS PAYMENT Loss Condition, as indicated in the Declarations or by an "X" in the Schedule:

**B.** **LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

POLICY NUMBER: BKW(98)50483084                    COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization:**  LB CREDIT   CORPORATION
101 CALIFORNIA   STREET
SAN FRANCISCO,   CA 94111-5883


(APPLIES   TO LOC   #2)

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement)

WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person(s) or organization(s), subject to the following additional exclusions:

This insurance does not apply:

1. To any "occurrence" which takes place after the equipment lease expires;

2. To "bodily injury" or "property damage" arising out of the sole negligence of the person or organization shown in the Schedule.

POLICY NUMBER: BKW(98)50483084                                    COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - SERVICES FURNISHED BY HEALTH CARE PROVIDERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

## SCHEDULE

**Description of Operations:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to Paragraph 2., Exclusions of COVERAGE A −− BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I −− Coverages) and paragraph 2., Exclusions of COVERAGE B −− PERSONAL AND ADVERTISING INJURY LIABILITY (Section I −− Coverages):

With respect to any operation shown in the Schedule, this insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of:

1. The rendering or failure to render:

   a. Medical, surgical, dental, x−ray or nursing service, treatment, advice or instruction, or the related furnishing of food or beverages;

   b. Any health or therapeutic service, treatment, advice or instruction; or

   c. Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming.

2. The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or

3. The handling or treatment of dead bodies, including autopsies, organ donation or other procedures.

POLICY NUMBER: BKW(98)50483084

COMMERCIAL PROPERTY
CP 12 18 06 95

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

> BUILDING AND PERSONAL PROPERTY COVERAGE FORM
> BUILDERS' RISK COVERAGE FORM
> CONDOMINIUM ASSOCIATION COVERAGE FORM
> CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
> STANDARD PROPERTY POLICY

## SCHEDULE

| Prem. No. | Bldg. No. | Description of Property | Loss Payee (Name & Address) | Loss Payable | Lender's Loss Payable | Contract Of Sale |
|---|---|---|---|---|---|---|
| 1 | 1 | Y.B.P.P. | FIRST SOUTHERN BANK ITS SUCCESSORS AND/OR ASSIGNS 9955 GLADES ROAD BOCA RATON, FL 33434 | X | | |

**A.** When this endorsement is attached to the STANDARD PROPERTY POLICY CP 00 99 the term Coverage Part in this endorsement is replaced by the term Policy.

The following is added to the LOSS PAYMENT Loss Condition, as indicated in the Declarations or by an "X" in the Schedule:

**B. LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.



POLICY NUMBER: BKW(98)50483084

COMMERCIAL PROPERTY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LARGE DEDUCTIBLE ENDORSEMENT
## ($1,000 MINIMUM)

This endorsement modifies insurance provided under the following:

BUILDERS' RISK COVERAGE FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
TOBACCO SALES WAREHOUSES COVERAGE FORM

### SCHEDULE

**Deductible Amount**          $ 1,000.

1. The scheduled Deductible Amount applies to all covered causes of loss except Earthquake.

2. The scheduled Deductible Amount applies separately to each occurrence covered by the policy.

3. We will apply the scheduled Deductible Amount to each loss after we have made all other adjustments. If there is any recovery or salvage on a loss covered by this policy, we will apply the amount of the recovery or salvage to the amount of the loss paid by us. If the amount of the recovery or salvage is more than the amount of the loss paid by us, you will receive the excess amount.

4. The scheduled Deductible Amount in this endorsement applies solely at your risk. The Deductible Amount must not be covered by another policy of insurance unless we agree in an endorsement to this policy.

**The Ohio Casualty Group**
136 North Third Street, Hamilton, Ohio 45025

of Insurance Companies   POLICY   DECLARATIONS

| | |
|---|---|
| **NAME OF COMPANY** | WEST AMERICAN INSURANCE COMPANY |
| **NAMED INSURED** | BOCA RADIOLOGY ASSOCIATES, INC. & |
| **POLICY NO.** | BKW (98) 50 48 30 84 |

**INTERNAL USE**

I:642 5

PROPERTY DECLARATIONS SCHEDULE  - (CONTINUED)

```
            LIMIT  OF  INSURANCE.....   $350,000  AT  100%  COINSURANCE
            COVERAGE...............    YOUR  BUSINESS  PERSONAL  PROPERTY
              OPTIONAL  COVERAGES...   REPLACEMENT  COST
                                        INCLUDING  STOCK
            DEDUCTIBLE............     PER  CP7131
                                       WIND  &  HAIL  -  SEE  ABOVE
            COVERED  CAUSES  OF  LOSS.  SPECIAL  FORM
                                        INCLUDING  THEFT
            ANNUAL  PREMIUM.........................   $564.00
            FLORIDA  SURCHARGE......................       .56
```

```
      RANGE  OF  PREMIUM  THAT  POLICY  COULD  HAVE  BEEN  ADJUSTED
      PER  BUILDING  CODE  EFFECTIVENESS  GRADING:
          FROM       $0.00  TO       $0.00
```

- - - - - - - - - - - - - - - - - - - - - - -

PROPERTY  SCHEDULE  TOTALS  - ANNUAL

```
            PREMIUM..............................   $  2,307.00
            FLORIDA  SURCHARGE....................         2.30
            TOTAL................................      2,309.30
```

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TRANS:0004

CONTINUED  ON  PAGE   8

**The Ohio Casualty Group**
136 North Third Street, Hamilton, Ohio 45025
of Insurance Companies
POLICY DECLARATIONS

| | |
|---|---|
| **NAME OF COMPANY** | WEST AMERICAN INSURANCE COMPANY |
| **NAMED INSURED** | BOCA RADIOLOGY ASSOCIATES, INC. & **POLICY NO.** BKW (98) 50 48 30 84 |

| INTERNAL USE | COMMERCIAL LIABILITY DECLARATIONS SCHEDULE |
|---|---|
| | LOCATIONS |
| | COVERED LOCATION(S): |
| L:3 | 1. 1590 N.W. 10TH AVENUE #301-304<br>BOCA RATON, FL 33486 1313 |
| L:4 | 2. 10251 W. SAMPLE RD, SUITE A<br>CORAL SPRINGS, FL 33065 3939 |
| L:5 | 3. 10251 W. SAMPLE RD, SUITE B<br>CORAL SPRINGS, FL 33065 3939 |
| L:6 | 4. 10251 W. SAMPLE RD, SUITE C<br>CORAL SPRINGS, FL 33065 3939 |
| L:7 | 5. 1590 NW 10TH AVE #202<br>BOCA RATON, FL 33486 1313 |

- - - - - - - - - - - - - - - - - - - - - - - - - - -

| INTERNAL USE | HAZARDS | ANNUAL PREMIUM |
|---|---|---|
| ST:09 | STATE : FLORIDA | |
| NI:1 | INSURED: BOCA RADIOLOGY ASSOCIATES, INC. &<br>ADDA MEDICAL BILLING & CONSULTING<br>SERVICES, INC. | |
| I/C:42614 | CLASSIFICATION CODE: 61224<br>BUILDING OR PREMISES - OFFICE - PREMISES<br>PRIMARILY OCCUPIED BY EMPLOYEES OF THE INSURED -<br>FOR PROFIT<br>INCLUDING PRODUCTS AND / OR COMPLETED OPERATIONS. | |
| EU:2<br>L:4 | PREMIUM BASIS:<br>1,000 SQUARE FEET OF AREA<br>RATES PER 1,000 | |
| | PREMISE/OPERATIONS<br>RATE: 234.556 | $235.00 |
| I/C:20016 | CLASSIFICATION CODE: 66561<br>MEDICAL OFFICES<br>INCLUDING PRODUCTS AND / OR COMPLETED OPERATIONS. | |
| EU:1<br>L:3 | PREMIUM BASIS:<br>3,000 SQUARE FEET OF AREA<br>RATES PER 1,000 | |
| TRANS:0004 | CONTINUED ON PAGE 9 | |

CONTINUED ON PAGE 9

**The Ohio Casualty Group** of Insurance Companies POLICY DECLARATIONS

136 North Third Street, Hamilton, Ohio 45025

| | |
|---|---|
| **NAME OF COMPANY** | WEST AMERICAN INSURANCE COMPANY |
| **NAMED INSURED** | BOCA RADIOLOGY ASSOCIATES, INC. & **POLICY NO.** BKW (98) 50 48 30 84 |

| INTERNAL USE | COMMERCIAL LIABILITY DECLARATIONS SCHEDULE - (CONTINUED) |
|---|---|

HAZARDS - (CONTINUED)      ANNUAL   PREMIUM

|  |  | RATE | PREMIUM |
|---|---|---|---|
|  | PREMISE/OPERATIONS RATE: | 312.794 | $938.00 |
| EU:3 L:5 | PREMIUM BASIS: 1,000 SQUARE FEET OF AREA RATES PER 1,000 | | |
|  | PREMISE/OPERATIONS RATE: | 312.794 | $313.00 |
| EU:4 L:6 | PREMIUM BASIS: 1,000 SQUARE FEET OF AREA RATES PER 1,000 | | |
|  | PREMISE/OPERATIONS RATE: | 312.794 | $313.00 |
| EU:5 L:7 | PREMIUM BASIS: 4,489 SQUARE FEET OF AREA RATES PER 1,000 | | |
|  | PREMISE/OPERATIONS RATE: | 312.794 | $1,404.00 |

- - - - - - - - - - - - - - - - - - - -

LIABILITY  SCHEDULE  TOTALS - ANNUAL      ===========
     TOTAL  PROVISIONAL  PREMIUM:. . . . . . . . . . .    $3,203.00

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

TRANS:0004                    END  OF  DECLARATIONS

POLICY NUMBER: BKW(98)50483084

COMMERCIAL PROPERTY
CP 12 18 06 95

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS' RISK COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

## SCHEDULE

| Prem. No. | Bldg. No. | Description of Property | Loss Payee (Name & Address) | Provisions Applicable | | |
|---|---|---|---|---|---|---|
| | | | | Loss Payable | Lender's Loss Payable | Contract Of Sale |
| 1 | 1 | Y.B.P.P. | FIRST SOUTHERN BANK | X | | |
| 5 | 1 | Y.B.P.P. | ITS SUCCESSORS AND/OR | | ASSIGNS | |
| | | | 9955 GLADES ROAD | | | |
| | | | BOCA RATON, FL 33434 | | | |

**A.** When this endorsement is attached to the STANDARD PROPERTY POLICY CP 00 99 the term Coverage Part in this endorsement is replaced by the term Policy.

The following is added to the LOSS PAYMENT Loss Condition, as indicated in the Declarations or by an "X" in the Schedule:

**B. LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**The Ohio Casualty Group** of Insurance Companies
136 North Third Street, Hamilton, Ohio 45025

COMMERCIAL    PACKAGE    POLICY    CHANGE    ENDORSEMEN

| COMPANY | POLICY NUMBER | | | | |
|---|---|---|---|---|---|
| WEST AMERICAN INSURANCE COMPANY | BKW | (98) | 50 | 48 30 | 84 |

| NAMED INSURED & MAILING ADDRESS | AGENT'S NAME & ADDRESS | 0740 | 09 | 03 | 20! |
|---|---|---|---|---|---|
| BOCA RADIOLOGY ASSOCIATES, INC. & | TELEPHONE: (407) 276-5221 | | | | |
| 1590 NW 10TH AVE, STE 301 | PLASTRIDGE AGENCY INC | | | | |
| BOCA RATON FL | THOMAS E LYNCH | | | | |
| 33486 1323 | PO DRAWER 730 | | | | |
| | DELRAY BEACH          FL 33447-0730 | | | | |

| SEE SCHEDULE OF NAMED INSURED(S) | POLICY TERM | 04/24/97 | TO | 04/24/98 |
|---|---|---|---|---|
| TRANSACTION 3 (05/12/97) | TRANSACTION EFFECTIVE | | 04/24/97 | |

```
PURPOSE OF ENDORSEMENT:
   AMENDING  INSUREDS  NAME & MAILING  ADDRESS  AS SHOWN.
   AMENDING  LOCATIONS  1 & 2 ADDRESSES  AND ADDING
   LOCATIONS  3 & 4 PER UPDATED  SCHEDULES  ATTACHED.
   ALSO AMENDING  LIMITS  FOR LOCATIONS  1 & 2 AS SHOWN.
   DELETING  LB CREDIT  CORP. AS ADDITONAL  INSURED.
   DELETING  LASALLE  NATIONAL  LEASING  CORP. AS LOSS
   PAYEE  AND ADDING  LASALLE  NATIONAL  LEASING  CORP. AS
   ADDITIONAL  INSURED  PER FORM CG20281185  ATTACHED.


POLICY  DECLARATIONS  SCHEDULES  CHANGED  BY THIS  TRANSACTION

   PAGE      TITLE

      2     NAMED  INSURED(S)
      2     EXPLANATION  OF CHARGES
      3     COMMERCIAL  PROPERTY  DECLARATIONS
      7     COMMERCIAL  LIABILITY  DECLARATIONS




P R O V I S I O N A L   C H A R G E S
   REVISED  TOTAL:    . . . . . . . . . . . .   $3,547.74
   PREVIOUS  TOTAL:   . . . . . . . . . . . .   $3,089.20
   ADDITIONAL:        . . . . . . . . . . . .(T.O.P.P.)    $458.54
```

                N07                         CONTINUED   ON PAGE  2

ACCOUNT  NAME:  BOCA  RADIOLOGY  ASSOC

Case 9:01-cv-08973-DGG Document 2 Entered on FLSD Docket 08/24/2001 Page 88 of 199

**NAME OF COMPANY** WEST AMERICAN INSURANCE COMPANY

**NAMED INSURED** BOCA RADIOLOGY ASSOCIATES, INC. & **POLICY NO.** BKW (98) 50 48 30 84

| INTERNAL USE | |
|---|---|
| | SCHEDULE OF NAMED INSURED(S) |

```
                    SCHEDULE   OF  NAMED   INSURED(S)

          UPDATED  - EFFECTIVE   FROM  04/24/97   TO  04/24/98

              FIRST  NAMED   INSURED:
NI:1               BOCA  RADIOLOGY   ASSOCIATES,   INC. &
                   ADDA  MEDICAL   BILLING  & CONSULTING
                   SERVICES,   INC.
                   INSURED  IS:  CORPORATION

  *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

                    UPDATED   EXPLANATION   OF  CHARGES

    R E C A P    O F   S C H E D U L E    T O T A L S

       PROPERTY   SCHEDULE   TOTALS  - ANNUAL              $1,744.74

       LIABILITY   SCHEDULE   TOTALS  - ANNUAL             $1,799.00

       FL.  DEPT.  OF REVENUE   SURCHARGE  - ANNUAL            $4.00

       UPDATED   POLICY   SCHEDULE(S)   TOTAL  - ANNUAL    $3,547.74

    EXPLANATION   OF ENDORSEMENT   CHARGE  DEVELOPMENT

       UPDATED   POLICY   SCHEDULE(S)   TOTAL  - ANNUAL    $3,547.74
       PREVIOUS   POLICY   SCHEDULE(S)   TOTAL  - ANNUAL   $3,089.20

       DIFFERENCE  - ANNUAL                                 $458.54
       ENDORSEMENT   TERM  FACTOR                             1.000

       ENDORSEMENT   CHARGE                                  $458.54
         INCLUDES:
           FLORIDA   SURCHARGE                      $.54
       PREVIOUS   PROVISIONAL   CHARGES                    $3,089.20

       REVISED   PROVISIONAL   CHARGES                     $3,547.74
         INCLUDES:
           FLORIDA   SURCHARGE                    $1.74
           FL.  DEPT.  OF REVENUE  SURCHARGE      $4.00

         *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

TRANS:0003

CONTINUED ON PAGE 3

**The Ohio Casualty Group**
of Insurance Companies
136 North Third Street, Hamilton, Ohio 45025

POLICY DECLARATIONS

| | |
|---|---|
| **NAME OF COMPANY** | WEST AMERICAN INSURANCE COMPANY |
| **NAMED INSURED** | BOCA RADIOLOGY ASSOCIATES, INC. & **POLICY NO.** BKW (98) 50 48 30 84 |

**INTERNAL USE**

PROPERTY DECLARATIONS SCHEDULE

UPDATED COVERAGES - EFFECTIVE FROM 04/24/97 TO 04/24/98

INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES AND FOR WHICH A LIMIT OF INSURANCE IS SHOWN. OPTIONAL COVERAGES APPLY ONLY WHEN ENTRIES ARE MADE IN THIS SCHEDULE.

L:3

PREMISES/LOCATION: NUMBER 1
1590 N.W. 10TH AVENUE #301-304
BOCA RATON, FL 33486 1313

LIMITS AND COVERAGES PROVIDED THIS PREMISES:

BLD:1
CC:6

DESCRIPTION: BUILDING NUMBER 1
CONSTRUCTION: FIRE RESISTIVE
PROTECTION CLASS: 03
DEDUCTIBLE: WIND & HAIL: 2.0 %

MORTGAGE HOLDER(S):
NONE

CSP:702
I/C:20099

OCCUPANCY:
MEDICAL OFFICES

I:642 1

| | |
|---|---|
| LIMIT OF INSURANCE..... | $350,000 AT 100% COINSURANCE |
| COVERAGE.............. | YOUR BUSINESS PERSONAL PROPERTY |
| OPTIONAL COVERAGES... | REPLACEMENT COST |
| | INCLUDING STOCK |
| DEDUCTIBLE............ | PER CP7131 |
| | WIND & HAIL - SEE ABOVE |
| COVERED CAUSES OF LOSS. | SPECIAL FORM |
| | INCLUDING THEFT |
| ANNUAL PREMIUM........................ | $573.00 |
| FLORIDA SURCHARGE..................... | .57 |

I:643 1

| | |
|---|---|
| LIMIT OF INSURANCE..... | $120,000 |
| COVERAGE.............. | BUSINESS INCOME OTHER THAN |
| | "RENTAL VALUE" |
| | (AND EXTRA EXPENSE) |
| OPTIONAL COVERAGES... | MONTHLY LIMIT OF INDEMNITY 1/3 |
| COVERED CAUSES OF LOSS. | SPECIAL FORM |
| | INCLUDING THEFT |
| ANNUAL PREMIUM........................ | $231.00 |
| FLORIDA SURCHARGE..................... | .23 |

TRANS:0003

CONTINUED ON PAGE 4

Case 9:01-cv-08987-xxxx Document Entered on FLSD Docket 08/24/2001 Page 90 of 199

**NAME OF COMPANY** WEST  AMERICAN  INSURANCE  COMPANY

**NAMED INSURED** BOCA  RADIOLOGY  ASSOCIATES,  INC. &   **POLICY NO.** BKW  (98)  50 48 30 84

| INTERNAL USE | |
|---|---|

PROPERTY   DECLARATIONS   SCHEDULE  - (CONTINUED)

L:4

PREMISES/LOCATION:   NUMBER  2
10251  W. SAMPLE  RD, SUITE  A
CORAL  SPRINGS,  FL  33065  3939

LIMITS  AND  COVERAGES   PROVIDED   THIS  PREMISES:

BLD:2
CC:4

DESCRIPTION:  BUILDING  NUMBER  1
CONSTRUCTION:  MASONRY  NON-COMBUSTIBLE
PROTECTION  CLASS:  04
DEDUCTIBLE:  WIND & HAIL:  2.0 %

MORTGAGE  HOLDER(S):
NONE

CSP:702

OCCUPANCY:
ACCOUNTING/BOOKKEEPING    OFFICE
RATED  AS:

I/C:20099

MEDICAL  OFFICES

I:642  2

LIMIT  OF INSURANCE.....  $235,000  AT  100%  COINSURANCE
COVERAGE..............  YOUR  BUSINESS  PERSONAL  PROPERTY
OPTIONAL  COVERAGES...  REPLACEMENT  COST
INCLUDING  STOCK
DEDUCTIBLE............  PER  CP7131
WIND & HAIL  - SEE  ABOVE
COVERED  CAUSES  OF LOSS.  SPECIAL  FORM
INCLUDING  THEFT
ANNUAL   PREMIUM........................  $581.00
FLORIDA   SURCHARGE.....................  .58

L:5

PREMISES/LOCATION:   NUMBER  3
10251  W. SAMPLE  RD, SUITE  B
CORAL  SPRINGS,  FL  33065  3939

LIMITS  AND  COVERAGES   PROVIDED   THIS  PREMISES:

BLD:3
CC:4

DESCRIPTION:  BUILDING  NUMBER  1
CONSTRUCTION:  MASONRY  NON-COMBUSTIBLE
PROTECTION  CLASS:  04
DEDUCTIBLE:  WIND & HAIL:  2.0 %

TRANS:0003

CONTINUED  ON  PAGE  5

Case 9:01-cv-08771-KLR Document 1 Entered on FLSD Docket 08/24/2001 Page 91 of 199

**NAME OF COMPANY** WEST AMERICAN INSURANCE COMPANY

**NAMED INSURED** BOCA RADIOLOGY ASSOCIATES, INC. & **POLICY NO.** BKW (98) 50 48 30 84

| INTERNAL USE | |
|---|---|
| | PROPERTY DECLARATIONS SCHEDULE - (CONTINUED) |

MORTGAGE HOLDER(S):
  NONE

CSP:702
I/C:20099

OCCUPANCY:
MEDICAL OFFICES

I:642 3

LIMIT OF INSURANCE..... $30,000 AT 100% COINSURANCE
COVERAGE.............. YOUR BUSINESS PERSONAL PROPERTY
  OPTIONAL COVERAGES... REPLACEMENT COST
                       INCLUDING STOCK
DEDUCTIBLE............ PER CP7131
                       WIND & HAIL - SEE ABOVE
COVERED CAUSES OF LOSS. SPECIAL FORM
                       INCLUDING THEFT
ANNUAL PREMIUM......................... $179.00
FLORIDA SURCHARGE...................... .18

L:6

PREMISES/LOCATION:   NUMBER 4
  10251 W. SAMPLE RD, SUITE C
  CORAL SPRINGS, FL 33065 3939

LIMITS AND COVERAGES PROVIDED THIS PREMISES:

BLD:4
CC:4

DESCRIPTION: BUILDING NUMBER 1
  CONSTRUCTION: MASONRY NON-COMBUSTIBLE
  PROTECTION CLASS: 04
  DEDUCTIBLE: WIND & HAIL: 2.0 %

MORTGAGE HOLDER(S):
  NONE

CSP:702
I/C:20099

OCCUPANCY:
MEDICAL OFFICES

I:642 4

LIMIT OF INSURANCE..... $30,000 AT 100% COINSURANCE
COVERAGE.............. YOUR BUSINESS PERSONAL PROPERTY
  OPTIONAL COVERAGES... REPLACEMENT COST
                       INCLUDING STOCK
DEDUCTIBLE............ PER CP7131
                       WIND & HAIL - SEE ABOVE
COVERED CAUSES OF LOSS. SPECIAL FORM
                       INCLUDING THEFT
ANNUAL PREMIUM......................... $179.00
FLORIDA SURCHARGE...................... .18

TRANS:0003

CONTINUED ON PAGE 6

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**The Ohio Casualty Group**
136 North Third Street, Hamilton, Ohio 45025
of Insurance Companies

COMMERCIAL   PACKAGE   POLICY   CHANGE   ENDORSEMEN

| COMPANY | POLICY NUMBER |
|---|---|
| WEST  AMERICAN  INSURANCE  COMPANY | BKW  (98)  50  48  30  84 |

| NAMED INSURED & MAILING ADDRESS | AGENT'S NAME & ADDRESS     1580   09   03   20 |
|---|---|
| BOCA  RADIOLOGY   ASSOCIATES,   INC. &<br>ADDA  MEDICAL  BILLING  & CONSULTING<br>SERVICES,  INC.<br>1590  NW 10TH  AVE,  STE  301<br>BOCA  RATON  FL<br>33486  1323 | TELEPHONE:   (561)  276-5221<br>PLASTRIDGE  AGENCY  INC<br>THOMAS  E LYNCH<br>PO DRAWER  730<br>DELRAY  BEACH         FL  33447-0730 |

| POLICY TERM     04/24/97   TO   04/24/98 |
|---|
| TRANSACTION EFFECTIVE          03/13/98 |

TRANSACTION   5   (05/01/98)

PURPOSE  OF ENDORSEMENT:
  ADDING  COMERICA  BANK AS 2ND  MORTGAGEE
  SHOWN  PER  ATTACHED

POLICY  DECLARATIONS   SCHEDULES   CHANGED   BY THIS   TRANSACTION

| PAGE | TITLE |
|---|---|
| 2 | COMMERCIAL  PROPERTY  DECLARATIONS |

SEE  THE  COMMERCIAL  PROPERTY  DECLARATIONS  SCHEDULE  FOR
BUILDING  CODE  EFFECTIVENESS  GRADING  DETAIL

BUILDING  CODE  EFFECTIVENESS  GRADING  PREMIUM  ADJUSTMENT
FOR  THIS  TRANSACTION  . . . .                                    $0.00


NO  CHARGE  FOR  THIS  ENDORSEMENT

N07                        CONTINUED   ON  PAGE  2

ACCOUNT  NAME:  BOCA  RADIOLOGY  ASSOC



The Ohio Casualty Group
136 North Third Street, Hamilton, Ohio 45025
of Insurance Companies
POLICY DECLARATIONS

**NAME OF COMPANY** WEST AMERICAN INSURANCE COMPANY

**NAMED INSURED** BOCA RADIOLOGY ASSOCIATES, INC. &   **POLICY NO.** BKW (98) 50 48 30 84

| INTERNAL USE | |
|---|---|

PROPERTY DECLARATIONS SCHEDULE

UPDATED COVERAGES - EFFECTIVE FROM 03/13/98 TO 04/24/98

INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES AND FOR WHICH A LIMIT OF INSURANCE IS SHOWN. OPTIONAL COVERAGES APPLY ONLY WHEN ENTRIES ARE MADE IN THIS SCHEDULE.

L:3

PREMISES/LOCATION:   NUMBER 1
1590 N.W. 10TH AVENUE #301-304
BOCA RATON, FL 33486 1313

LIMITS AND COVERAGES PROVIDED THIS PREMISES:

BLD:1
CC:6

DESCRIPTION: BUILDING NUMBER 1
CONSTRUCTION: FIRE RESISTIVE
PROTECTION CLASS: 03
DEDUCTIBLE: WIND & HAIL: 2.0 %

MORTGAGE HOLDER(S):
NONE

CSP:702
I/C:20099

OCCUPANCY:
MEDICAL OFFICES

I:642 1

LIMIT OF INSURANCE..... $350,000 AT 100% COINSURANCE
COVERAGE.............. YOUR BUSINESS PERSONAL PROPERTY
OPTIONAL COVERAGES... REPLACEMENT COST
INCLUDING STOCK
DEDUCTIBLE............ PER CP7131
WIND & HAIL - SEE ABOVE
COVERED CAUSES OF LOSS. SPECIAL FORM
INCLUDING THEFT
ANNUAL PREMIUM........................ $573.00
FLORIDA SURCHARGE..................... .57

RANGE OF PREMIUM THAT POLICY COULD HAVE BEEN ADJUSTED
PER BUILDING CODE EFFECTIVENESS GRADING:
FROM $0.00 TO $0.00

TRANS:0005

CONTINUED ON PAGE 3



The Ohio Casualty Group
136 North Third Street, Hamilton, Ohio 45025
of Insurance Companies   POLICY   DECLARATIONS

**NAME OF COMPANY** WEST   AMERICAN   INSURANCE   COMPANY

**NAMED INSURED** BOCA   RADIOLOGY   ASSOCIATES,   INC. &   **POLICY NO.** BKW   (98)   50   48   30   84

| INTERNAL USE | |
|---|---|

PROPERTY   DECLARATIONS   SCHEDULE   -   (CONTINUED)

I:643   1

LIMIT   OF   INSURANCE.....   $120,000
COVERAGE..............   BUSINESS   INCOME   OTHER   THAN
"RENTAL   VALUE"
(AND   EXTRA   EXPENSE)
OPTIONAL   COVERAGES...   MONTHLY   LIMIT   OF   INDEMNITY   1/3
COVERED   CAUSES   OF   LOSS.   SPECIAL   FORM
INCLUDING   THEFT
ANNUAL   PREMIUM........................   $231.00
FLORIDA   SURCHARGE......................   .23

L:4

PREMISES/LOCATION:   NUMBER   2
10251   W.   SAMPLE   RD,   SUITE   A
CORAL   SPRINGS,   FL   33065   3939

LIMITS   AND   COVERAGES   PROVIDED   THIS   PREMISES:

BLD:2
CC:4

DESCRIPTION:   BUILDING   NUMBER   1
CONSTRUCTION:   MASONRY   NON-COMBUSTIBLE
PROTECTION   CLASS:   04
DEDUCTIBLE:   WIND   &   HAIL:   2.0   %

MORTGAGE   HOLDER(S):
NONE

CSP:702

OCCUPANCY:
ACCOUNTING/BOOKKEEPING   OFFICE
RATED   AS:

I/C:20099

MEDICAL   OFFICES

I:642   2

LIMIT   OF   INSURANCE.....   $235,000   AT   100%   COINSURANCE
COVERAGE..............   YOUR   BUSINESS   PERSONAL   PROPERTY
OPTIONAL   COVERAGES...   REPLACEMENT   COST
INCLUDING   STOCK
DEDUCTIBLE............   PER   CP7131
WIND   &   HAIL   -   SEE   ABOVE
COVERED   CAUSES   OF   LOSS.   SPECIAL   FORM
INCLUDING   THEFT
ANNUAL   PREMIUM........................   $581.00
FLORIDA   SURCHARGE......................   .58

RANGE   OF   PREMIUM   THAT   POLICY   COULD   HAVE   BEEN   ADJUSTED
PER   BUILDING   CODE   EFFECTIVENESS   GRADING:
FROM   $0.00   TO   $0.00

TRANS:0005

CONTINUED   ON   PAGE   4

Case 9:01-cv-08712-KLR   Document 72-4   Entered on FLSD Docket 08/24/2001   Page 95 of 199

**NAME OF COMPANY** WEST AMERICAN INSURANCE COMPANY

**NAMED INSURED** BOCA RADIOLOGY ASSOCIATES, INC.    **POLICY NO.** BKW (98) 50 48 30 84

| INTERNAL USE | |
|---|---|

PROPERTY DECLARATIONS SCHEDULE - (CONTINUED)

**L:5**

PREMISES/LOCATION: NUMBER 3
10251 W. SAMPLE RD, SUITE B
CORAL SPRINGS, FL 33065 3939

LIMITS AND COVERAGES PROVIDED THIS PREMISES:

**BLD:3**
**CC:4**

DESCRIPTION: BUILDING NUMBER 1
CONSTRUCTION: MASONRY NON-COMBUSTIBLE
PROTECTION CLASS: 04
DEDUCTIBLE: WIND & HAIL: 2.0 %

MORTGAGE HOLDER(S):
NONE

**CSP:702**
**I/C:20099**

OCCUPANCY:
MEDICAL OFFICES

**I:642 3**

LIMIT OF INSURANCE..... $30,000 AT 100% COINSURANCE
COVERAGE.............. YOUR BUSINESS PERSONAL PROPERTY
  OPTIONAL COVERAGES... REPLACEMENT COST
     INCLUDING STOCK
DEDUCTIBLE............ PER CP7131
     WIND & HAIL - SEE ABOVE
COVERED CAUSES OF LOSS. SPECIAL FORM
     INCLUDING THEFT
ANNUAL PREMIUM....................... $179.00
FLORIDA SURCHARGE.................... .18

RANGE OF PREMIUM THAT POLICY COULD HAVE BEEN ADJUSTED
PER BUILDING CODE EFFECTIVENESS GRADING:
FROM $0.00 TO $0.00

**L:6**

PREMISES/LOCATION: NUMBER 4
10251 W. SAMPLE RD, SUITE C
CORAL SPRINGS, FL 33065 3939

LIMITS AND COVERAGES PROVIDED THIS PREMISES:

**TRANS:0005**

CONTINUED ON PAGE 5

Case 9:01-cv-08173-DTKH Document 51 SD Docket 08/24/2001 Page 96 of 199

**NAME OF COMPANY** WEST   AMERICAN   INSURANCE   COMPANY

**NAMED INSURED** BOCA   RADIOLOGY   ASSOCIATES,   INC. &   **POLICY NO.** BKW   (98)   50   48   30   84

| INTERNAL USE | |
|---|---|

PROPERTY   DECLARATIONS   SCHEDULE   - (CONTINUED)

BLD:4
CC:4

DESCRIPTION:   BUILDING   NUMBER   1
CONSTRUCTION:   MASONRY   NON-COMBUSTIBLE
PROTECTION   CLASS:   04
DEDUCTIBLE:   WIND   & HAIL:   2.0   %

MORTGAGE   HOLDER(S):
NONE

CSP:702
I/C:20099

OCCUPANCY:
MEDICAL   OFFICES

I:642   4

LIMIT   OF   INSURANCE.....   $30,000   AT   100%   COINSURANCE
COVERAGE..............   YOUR   BUSINESS   PERSONAL   PROPERTY
OPTIONAL   COVERAGES...   REPLACEMENT   COST
INCLUDING   STOCK
DEDUCTIBLE............   PER   CP7131
WIND   & HAIL   - SEE   ABOVE
COVERED   CAUSES   OF   LOSS.   SPECIAL   FORM
INCLUDING   THEFT
ANNUAL   PREMIUM.........................   $179.00
FLORIDA   SURCHARGE......................   .18

RANGE   OF   PREMIUM   THAT   POLICY   COULD   HAVE   BEEN   ADJUSTED
PER   BUILDING   CODE   EFFECTIVENESS   GRADING:
FROM   $0.00   TO   $0.00

L:7

PREMISES/LOCATION:   NUMBER   5
1590   NW   10TH   AVE   #202
BOCA   RATON,   FL   33486   1313

LIMITS   AND   COVERAGES   PROVIDED   THIS   PREMISES:

BLD:5
CC:6

DESCRIPTION:   BUILDING   NUMBER   1
CONSTRUCTION:   FIRE   RESISTIVE
PROTECTION   CLASS:   03
DEDUCTIBLE:   WIND   & HAIL:   2.0   %

MRT:1

MORTGAGE   HOLDER(S):
FIRST   SOUTHERN   BANK
9955   GLADES   RD
BOCA   RATON   FL   33434

TRANS:0005

CONTINUED   ON   PAGE   6

The Ohio Casualty Group
136 North Third Street, Hamilton, Ohio 45025
of Insurance Companies

POLICY DECLARATIONS

| | |
|---|---|
| **NAME OF COMPANY** WEST AMERICAN INSURANCE COMPANY | |
| **NAMED INSURED** BOCA RADIOLOGY ASSOCIATES, INC. & | **POLICY NO.** BKW (98) 50 48 30 84 |

**INTERNAL USE**

PROPERTY DECLARATIONS SCHEDULE - (CONTINUED)

MRT:2

MORTGAGE HOLDER(S): - (CONTINUED)
   COMERICA BANK
   AS TRUSTEE OF THE JOSEPH S ROGERS
   IRS ROLLOVER ACCT
   2401 PGA BLVD STE 198
   PALM BEACH GARDENS, FL 33410

CSP:702
I/C:20099

OCCUPANCY:
MEDICAL OFFICES

I:642 5

```
LIMIT OF INSURANCE.....   $350,000 AT 100% COINSURANCE
COVERAGE...............   YOUR BUSINESS PERSONAL PROPERTY
    OPTIONAL COVERAGES...  REPLACEMENT COST
                          INCLUDING STOCK
DEDUCTIBLE............    PER CP7131
                          WIND & HAIL - SEE ABOVE
COVERED CAUSES OF LOSS.   SPECIAL FORM
                          INCLUDING THEFT
ANNUAL PREMIUM.........................      $564.00
FLORIDA SURCHARGE.....................          .56
```

RANGE OF PREMIUM THAT POLICY COULD HAVE BEEN ADJUSTED
PER BUILDING CODE EFFECTIVENESS GRADING:
  FROM    $0.00 TO    $0.00

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

PROPERTY SCHEDULE TOTALS - ANNUAL

```
PREMIUM................................   $ 2,307.00
FLORIDA SURCHARGE......................         2.30
TOTAL..................................     2,309.30
```

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TRANS:0005

END OF DECLARATIONS

```
                                    COMMERCIAL GENERAL LIABILITY
                                    CG 02 20 07 92
```

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

FLORIDA CHANGES -
CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph 2. of the CANCELLATION Common Policy Condition is replaced
by the following:

2. CANCELLATION OF POLICIES IN EFFECT:

a. FOR 90 DAYS OR LESS

If this policy has been in effect for 90 days or less, we may
cancel this policy by mailing or delivering to the first Named
Insured written notice of cancellation, accompanied by the
reasons for cancellation, at least:

(1) 10 days before the effective date of cancellation if we
cancel for nonpayment of premium; or

▲ top

(2) 20 days before the effective date of cancellation if we
cancel for any other reason, except we may cancel
immediately if there has been:

(a) A material misstatement or misrepresentation; or

(b) A failure to comply with the underwriting requirements
established by the insurer.

b. FOR MORE THAN 90 DAYS

If this policy has been in effect for more than 90 days, we may
cancel this policy only for one or more of the following
reasons:

(1) Nonpayment of premium;

(2) The policy was obtained by a material misstatement;

(3) Failure to comply with underwriting requirements within 90
days of the effective date of coverage;

(4) A substantial change in the risk covered by the policy; or

(5) The cancellation is for all insureds under such policies for
a given class of insureds.

If we cancel this policy for any of these reasons, we will mail
or deliver to the first Named Insured written notice of
cancellation, accompanied by the reasons for cancellation, at
least:

▲ top

(a) 10 days before the effective date of cancellation if we

cancel for nonpayment of premium; or

(b) 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in paragraph 2.b.

B. The following is added and supersedes any other provision to the contrary:

NONRENEWAL

1. If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

CG 02 20 07 92
        Copyright, Insurance Services Office, Inc., 1992

---

▲ top
# Add/Edit Notes
Add Personal Note

---

▲ top
# Document information
# Newer/Older versions
Newer version of this document
Older version of this document

---

▲ top

This page was created: 5/2/01 4:13:39 PM

Case 9:01-cv-08772-ASG    Document 2    Entered on FLSD Docket 08/24/2001    Page 100 of 199

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement)

WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person(s) or organization(s), subject to the following additional exclusions:

This insurance does not apply:

1. To any "occurrence" which takes place after the equipment lease expires;
2. To "bodily injury" or "property damage" arising out of the sole negligence of the person or organization shown in the Schedule.

CG 20 28 11 85          Copyright, Insurance Services Office, Inc., 1984

**COMMERCIAL GENERAL LIABILITY**
**CG 21 47 10 93**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to:

"Bodily injury" to:

   **(1)** A person arising out of any:

      **(a)** Refusal to employ that person;

      **(b)** Termination of that person's employment; or

      **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

   **(1)** Whether the insured may be liable as an employer or in any other capacity; and

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY (Section I – Coverages):

This insurance does not apply to:

"Personal injury" to:

   **(1)** A person arising out of any:

      **(a)** Refusal to employ that person;

      **(b)** Termination of that person's employment; or

      **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

   **(1)** Whether the insured may be liable as an employer or in any other capacity; and

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 22 44 10 93

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – SERVICES FURNISHED BY HEALTH CARE PROVIDERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Description of Operations:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to Paragraph **2.**, Exclusions of COVERAGE  A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages) and paragraph **2.**, Exclusions of COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY (Section I – Coverages):

With respect to any operation shown in the Schedule, this insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of:

1. The rendering or failure to render:

   a. Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction, or the related furnishing of food or beverages;

   b. Any health or therapeutic service, treatment, advice or instruction; or

   c. Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming.

2. The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or

3. The handling or treatment of dead bodies, including autopsies, organ donation or other procedures.

**CG 22 44 10 93**                 Copyright, Insurance Services Office, Inc., 1992                 **Page 1 of 1**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I – COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

    **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    **(2)** The "bodily injury" or "property damage" occurs during the policy period.

  **c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

  **a. Expected or Intended Injury**

  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

  **b. Contractual Liability**

  "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    **(1)** That the insured would have in the absence of the contract or agreement; or

    **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

      **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

**(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

**(5)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**b.** "Advertising injury" arising out of:

**(1)** Breach of contract, other than misappropriation of advertising ideas under an implied contract;

**(2)** The failure of goods, products or services to conform with advertised quality or performance;

**(3)** The wrong description of the price of goods, products or services; or

**(4)** An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

**c.** Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

### 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Coverage A.

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

**(1)** "Bodily injury" or "personal injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

**(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(2)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

**(3)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

Copyright, Insurance Services Office, Inc., 1994

(b) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.** Your fulfilling the terms of the contract or agreement.

**8.** "Insured contract" means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** An elevator maintenance agreement;

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

    (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

**9.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**10.** "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** Does not include "bodily injury" or "property damage" arising out of:

  **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

  **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

  **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**15.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**17.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**18.** "Your product" means:

  **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    **(1)** You;

    **(2)** Others trading under your name; or

    **(3)** A person or organization whose business or assets you have acquired; and

  **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  "Your product" includes:

  **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

  **b.** The providing of or failure to provide warnings or instructions.

  "Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**19.** "Your work" means:

  **a.** Work or operations performed by you or on your behalf; and

  **b.** Materials, parts or equipment furnished in connection with such work or operations.

  "Your work" includes:

  **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

  **b.** The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 1994

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MASTER PAK® FOR GENERAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## INDEX

| SUBJECT | PAGE |
|---|---|
| Blanket Additional Insured (Owners, Contractors or Lessors) | 2 |
| Medical Payments Increase | 2 |
| Fire, Explosion and Sprinkler Leakage To Premises You Rent | 2 |
| Non-Owned Watercraft | 3 |
| Supplementary Payments (Bail Bonds) | 3 |
| Advertising Injury (Televised or Videotaped) | 3 |
| Personal Injury (Abuse of Process) | 3 |
| Aggregate Limits (Per Location) | 3 |
| Aggregate Limits (Per Project) | 3 |
| Voluntary Property Damage Coverage | 3 |
| Care, Custody or Control Coverage | 4 |
| Newly Formed or Acquired Organizations (180 Days Notice) | 4 |
| Duties In The Event Of Occurrence, Offense, Claim or Suit | 4 |
| Bodily Injury (Mental Anguish) | 5 |
| Waiver Of Transfer Of Rights Of Recovery Against Others | 5 |
| Liberalization | 5 |

D. Paragraph a. of the definition of INSURED CONTRACT under SECTION V – DEFINITIONS is amended to read:

    a.   A contract for the lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damages by fire, explosion or sprinkler leakage to premises while rented to you or temporarily occupied by you with the permission of the owner is not an "insured contract";

## 4. NON-OWNED WATERCRAFT

Paragraph g(2) of SECTION I – COVERAGE A, 2. Exclusions is changed to read:

(2)  A watercraft you do not own that is:

    (a)  Less than 51 feet long; and

    (b)  Not being used to carry persons or property for a charge;

This provision 4 shall not apply, however, if the insured has any other insurance available for "bodily injury" or "property damage" which would also apply to loss covered under this provision. This exception is activated whether that other insurance applies on a primary, excess, contingent or on any other basis.

## 5. SUPPLEMENTARY PAYMENTS

In the SUPPLEMENTARY PAYMENTS – COVERAGES A AND B provision:

The limit for the cost of bail bonds in paragraph 2. is changed from $250 to $1000.

## 6. ADVERTISING INJURY

Paragraph 1. of SECTION V – DEFINITIONS is amended to read:

1.  Advertising Injury means injury arising out of one or more of the following offenses:

    a.   Oral, written, televised or videotaped publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b.   Oral, written, televised or videotaped publication of material that violates a person's right of privacy;

    c.   Misappropriation of advertising ideas or style of doing business; or

    d.   Infringement of trademark, copyright, title or slogan.

Paragraph a.(1) and a.(2) of 2. Exclusions under COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY are amended as follows:

1.  Arising out of oral, written, televised or videotaped publication of material, if done by or at the direction of the insured with knowledge of its falsity;

2.  Arising out of oral, written, televised or videotaped publication of material whose first publication took place before the beginning of the policy period;

## 7. PERSONAL INJURY

Paragraph 13 b. of SECTION V – DEFINITIONS is amended to read:

    b.   Malicious prosecution or abuse of process;

## 8. AGGREGATE LIMITS OF INSURANCE (PER LOCATION)

The General Aggregate Limit under LIMITS OF INSURANCE (Section III) applies separately to each of your "locations" owned by or rented to you or temporarily occupied by you with the permission of the owner.

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

## 9. AGGREGATE LIMITS OF INSURANCE (PER PROJECT)

The General Aggregate Limit under LIMITS OF INSURANCE (SECTION III) applies separately to each of your projects away from premises owned by or rented to you.

## 10. VOLUNTARY PROPERTY DAMAGE COVERAGE

At your request, we will pay for loss to property of others caused by your business operations. The most we will pay for this coverage is $500 each "occurrence." The loss must occur during the policy period. The occurrence must take place in the coverage territory.

Loss means unintended damage or destruction. Loss does not mean disappearance, abstraction or

2. A partner, if you are a partnership; or

3. An executive officer or insurance managers, if you are a corporation.

## 14. BODILY INJURY

SECTION V – DEFINITIONS PARAGRAPH 3. is deleted in its entirety and replaced by the following:

3. "BODILY INJURY"

a. Means Bodily Injury, sickness or disease sustained by a person, and includes mental anguish resulting from any of these; and

b. Except for mental anguish, includes death resulting from the foregoing (Item a. above) at any time.

## 15. WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS

We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against any person or organization for whom you perform work under a written contract that requires you to obtain this agreement from us.

This agreement shall not operate directly or indirectly to benefit anyone not named in the agreement.

## 16. LIBERALIZATION

If we adopt a change in our forms or rules that would broaden coverage of this policy without extra charge, the broader coverage will apply to this policy. It will apply when the change becomes effective in your state.

All other terms and conditions of your policy remain unchanged.

**CG 83 30 04 96**     Includes copyrighted material of Insurance Services Office, Inc., with its permission.     **Page 5 of 5**

Copyright, Insurance Services Office, Inc., 1995

# BUILDING AND PERSONAL
# PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION H – DEFINITIONS.

## A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.,** Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property – Separation of Coverage form:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

    Copyright, ISO Commercial Risk Services, Inc., 1994

**4.  Additional Coverages**

**a.  Debris Removal**

(1)  We will pay your expense to re-move debris of Covered Prop-erty caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writ-ing within 180 days of the date of direct physical loss or dam-age.

(2)  The most we will pay under this Additional Coverage is 25% of:

(a)  The amount we pay for the direct physical loss of or damage to Covered Prop-erty; plus

(b)  The deductible in this policy applicable to that loss or damage.

But this limitation does not apply to any additional debris removal limit provided in the Limits of In-surance section.

(3)  This Additional Coverage does not apply to costs to:

(a)  Extract "pollutants" from land or water; or

(b)  Remove, restore or replace polluted land or water.

**b.  Preservation of Property**

If it is necessary to move Covered Property from the described prem-ises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

(1)  While it is being moved or while temporarily stored at another location; and

(2)  Only if the loss or damage oc-curs within 30 days after the property is first moved.

**c.  Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liabil-ity for fire department service charges:

(1)  Assumed by contract or agree-ment prior to loss; or

(2)  Required by local ordinance.

No Deductible applies to this Addi-tional Coverage.

**d.  Pollutant Clean Up and Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, re-lease or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants." But we will pay for testing which is performed in the course of extracting the "pol-lutants" from the land or water.

The most we will pay under this Ad-ditional Coverage for each de-scribed premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss oc-curring during each separate 12 month period of this policy.

**5.  Coverage Extensions**

Except as otherwise provided, the fol-lowing Extensions apply to property lo-cated in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more or, a Value Reporting period sym-bol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a.  Newly Acquired or Constructed Property**

(1)  You may extend the insurance that applies to Building to apply to:

(a)  Your new buildings while being built on the described premises; and

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

Each of these Extensions is additional insurance. The Additional Condition, Coinsurance, does not apply to these Extensions.

## B. EXCLUSIONS AND LIMITATIONS

See applicable Causes of Loss Form as shown in the Declarations.

## C. LIMITS OF INSURANCE

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

The limits applicable to the Coverage Extensions and the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance.

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

1. Preservation of Property; or
2. Debris Removal; but if:
   a. The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or
   b. The debris removal expense exceeds the amount payable under the 25% limitation in the Debris Removal Additional Coverage;

   we will pay up to an additional $10,000 for each location in any one occurrence under the Debris Removal Additional Coverage.

## D. DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance, after any deduction required by the Coinsurance condition or the Agreed Value Optional Coverage.

When the occurrence involves loss to more than one item of Covered Property and more than one Limit of Insurance applies, the Deductible will reduce the total amount of loss payable if loss to at least one item is less than the sum of (1) the Limit of Insurance applicable to that item plus (2) the Deductible.

**Example No. 1:**

(This example assumes there is no coinsurance penalty.)

> Deductible: $250
> Limit of Insurance – Bldg. 1: $60,000
> Limit of Insurance – Bldg. 2: $80,000
> Loss to Bldg. 1: $60,100
> Loss to Bldg. 2: $90,000

The amount of loss to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Bldg. 1:

> $60,100
> – 250
> $59,850        Loss Payable – Bldg. 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Bldg. 2. Loss payable for Bldg. 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:  $59,850 + 80,000 = $139,850

**Example No. 2:**

(This example, too, assumes there is no coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example No. 1.

Loss to Bldg. 1: $70,000 (exceeds Limit of Insurance plus Deductible)

Loss to Bldg. 2: $90,000 (exceeds Limit of Insurance plus Deductible)

Loss Payable – Bldg. 1: $ 60,000 (Limit of Insurance)

Loss Payable – Bldg. 2: $ 80,000 (Limit of Insurance)

Total amount of loss payable: $140,000

## E. LOSS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1. **Abandonment**

   There can be no abandonment of any property to us.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

   **(1)** We have reached agreement with you on the amount of loss; or

   **(2)** An appraisal award has been made.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

   **a. Description of Terms**

   **(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:

   **(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

   **(b)** When this policy is issued to the owner of a building, building means the entire building. Such building is vacant when 70% or more of its square footage:

      **(i)** Is not rented; or

      **(ii)** Is not used to conduct customary operations.

   **(2)** Buildings under construction or renovation are not considered vacant.

   **b. Vacancy Provisions**

   If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

   **(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

      **(a)** Vandalism;

      **(b)** Sprinkler leakage, unless you have protected the system against freezing;

      **(c)** Building glass breakage;

      **(d)** Water damage;

      **(e)** Theft; or

      **(f)** Attempted theft.

   **(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d., e.** and **f.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at

**Example No. 2** (Adequate Insurance):

When:

| | |
|---|---|
| The value of the property is | $250,000 |
| The Coinsurance percentage for it is | 80% |
| The Limit of Insurance for it is | $200,000 |
| The Deductible is | $250 |
| The amount of loss is | $40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**

When:

| | |
|---|---|
| The value of property is: | |
|   Bldg. at Location No. 1 | $75,000 |
|   Bldg. at Location No. 2 | $100,000 |
|   Personal Property at Location No. 2 | $75,000 |
| | $250,000 |
| The Coinsurance percentage for it is | 90% |
| The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is | $180,000 |
| The Deductible is | $1,000 |
| The amount of loss is: | |
|   Bldg. at Location No. 2 | $30,000 |
|   Personal Property at Location No. 2 | $20,000 |
| | $50,000 |

Step (1): $250,000 x 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2): $180,000 ÷ $225,000 = .80

Step (3): $50,000 x .80 = $40,000.

Step (4): $40,000 − $1,000 = $39,000.

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

  **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

  **(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

  **(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

c.  You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

d.  We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

e.  We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject of **f.** below:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace, on the same premises, the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

(3) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

f.  The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**H. DEFINITIONS**

1.  **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

2.  **"Stock"** means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION G — DEFINITIONS.

## A. COVERAGE

Coverage is provided as described below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

(i) Business Income including "Rental Value."

(ii) Business Income other than "Rental Value."

(iii) "Rental Value."

If option (i) above is selected, the term Business Income will include "Rental Value." If option (iii) above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property, including personal property in the open (or in a vehicle) within 100 feet, at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

If you are a tenant, your premises is the portion of the building which you rent, lease or occupy, including:

1. All routes within the building to gain access to the described premises; and

2. Your personal property in the open (or in a vehicle) within 100 feet.

### 1. Business Income

Business Income means the:

a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

b. Continuing normal operating expenses incurred, including payroll.

### 2. Covered Causes of Loss

See applicable Causes of Loss Form as shown in the Declarations.

### 3. Additional Coverages

a. **Extra Expense.**

Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

(1) We will pay any Extra Expense to avoid or minimize the suspension of business and to continue "operations":

(a) At the described premises; or

(b) At replacement premises or at temporary locations, including:

(i) Relocation expenses; and

(ii) Costs to equip and operate the replacement or temporary locations.

(2) We will pay any Extra Expense to minimize the suspension of business if you cannot continue "operations."

(3) We will pay any Extra Expense to:

(a) Repair or replace any property; or

(b) Research, replace or restore the lost information on damaged valuable papers and records;

to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**b. Civil Authority.** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for Extra Expense will begin immediately after the time of that action and will end:

(1) 3 consecutive weeks after the time of that action; or

(2) When your Business Income coverage ends;

whichever is later.

**c. Alterations and New Buildings.** We will pay for the actual loss of Business Income you sustain due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

(1) New buildings or structures, whether complete or under construction;

(2) Alterations or additions to existing buildings or structures; and

(3) Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

(a) Used in the construction, alterations or additions; or

(b) Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations," the "period of restoration" will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**d. Extended Business Income.**

(1) Business Income Other Than "Rental Value"

If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for

the actual loss of Business Income you incur during the period that:

(a) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

(b) Ends on the earlier of:

(i) The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

(ii) 30 consecutive days after the date determined in (1)(a) above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(2) "Rental Value"

If the necessary suspension of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

(a) Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

(b) Ends on the earlier of:

(i) The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

(ii) 30 consecutive days after the date deter-

 Copyright, ISO Commercial Risk Services Inc., 1994 CP 00 30 06 95

mine...n (2)(a) above.

come does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**4. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

**a.** You may extend your Business Income Coverage to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay for loss under this Extension is $100,000 at each location.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 30 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

This Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**B. EXCLUSIONS AND LIMITATIONS**

See applicable Causes of Loss Form as shown in the Declarations.

**C. LIMITS OF INSURANCE**

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance.

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

**1.** Alterations and New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss**

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

 Copyright, ISO Commercial Risk Services Inc., 1994

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Limitation - Electronic Media And Records**

We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:

**a.** 60 consecutive days from the date of direct physical loss or damage; or

**b.** The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace, with reasonable speed and similar quality, other property at the described premises due to loss or damage caused by the same occurrence.

Electronic Media and Records are:

**(1)** Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

**(2)** Data stored on such media; or

**(3)** Programming records used for electronic data processing or electronically controlled equipment.

This limitation does not apply to Extra Expense.

**Example No. 1:**

A Covered Cause of Loss damages a computer on June 1. It takes until September 1 to replace the computer, and until October 1 to restore the data that was lost when the damage occurred. We will only pay for the Business Income loss sustained during the period June 1 – September 1. Loss during the period September 2 – October 1 is not covered.

**Example No. 2:**

A Covered Cause of Loss results in the loss of data processing programming records on August 1. The records are replaced on October 15. We will only pay for the Business Income loss sustained during the period August 1 – September 29 (60 consecutive days). Loss during the period September 30 – October 15 is not covered.

**4. Loss Determination**

**a.** The amount of Business Income loss will be determined based on:

**(1)** The Net Income of the business before the direct physical loss or damage occurred;

**(2)** The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses.

**(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

**(4)** Other relevant sources of information, including:

**(a)** Your financial records and accounting procedures;

**(b)** Bills, invoices and other vouchers; and

determined based on:

(1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

(a) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

(b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(2) All necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

c. **Resumption Of Operations**

We will reduce the amount of your:

(1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

d. If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

5. **Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

a. We have reached agreement with you on the amount of loss; or

b. An appraisal award has been made.

E. **ADDITIONAL CONDITION**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any loss if the Limit of Insurance for Business Income is less than:

a. The Coinsurance percentage shown for Business Income in the Declarations; times

b. The sum of:

(1) The Net Income (Net Profit or Loss before income taxes), and

(2) Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

1. Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

2. Divide the Limit of Insurance for the described premises by the figure determined in Step 1.; and

3. Multiply the total amount of loss by the figure determined in Step 2.

We will pay the amount determined in Step 3. or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

1. Prepaid freight – outgoing;

2. Returns and allowances;

3. Discounts;

4. Bad debts;

5. Collection expenses;

6. Cost of raw stock and factory supplies consumed (including transportation charges);

7. Cost of merchandise sold (including transportation charges);

9. Cost of other supplies consumed (including transportation costs);

9. Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

10. Power, heat and refrigeration expenses that do not continue under contract (if form **CP 15 11** is attached);

11. All ordinary payroll expenses or the amount of payroll expense excluded (if form **CP 15 10** is attached); and

12. Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example No. 1 (Underinsurance):**

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises

would have been     $400,000

The Coinsurance percentage is     50%

The Limit of Insurance is     $150,000

The amount of loss is     $80,000

Step 1: $400,000 x 50% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step 2: $150,000 ÷ $200,000 = .75

Step 3: $ 80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example No. 2 (Adequate Insurance):**

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises

would have been     $400,000

The Coinsurance percentage is     50%

The Limit of Insurance is     $200,000

The amount of loss is     $ 80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of In-

surance in this Example is adequate and penalty apply. We will pay no more than $80,000 (amount of loss).

This condition does not apply to the Extra Expense Additional Coverage.

F. **OPTIONAL COVERAGES**

If shown in the Declarations, the following Optional Coverages apply separately to each item.

1. **Maximum Period Of Indemnity**

    a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

    b. The most we will pay for loss of Business Income is the lesser of:

        (1) The amount of loss sustained during the 120 days immediately following the beginning of the "period of restoration"; or

        (2) The Limit of Insurance shown in the Declarations.

2. **Monthly Limit Of Indemnity**

    a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

    b. The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

        (1) The Limit of Insurance, multiplied by

        (2) The fraction shown in the Declarations for this Optional Coverage.

**Example:**

When: The limit of Insurance is     $120,000

The fraction shown in the Declarations for this Optional Coverage is     1/4

The most we will pay for loss in each period of 30 consecutive days is:

$120,000 x 1/4 = $ 30,000

If, in this example, the actual amount of loss is:

Days   1–30   $40,000
Days 31–60   20,000
Days 61–90    30,000
            $90,000

    Copyright, ISO Commercial Risk Services Inc., 1994     CP 00 30 06 95

We will pay:

Days 1–30 $30,000
Days 31–60  20,000
Days 61–90  _30,000_
         $80,000

The remaining $10,000 is not covered.

3. **Business Income Agreed Value**

   a. To activate this Optional Coverage:

      (1) A Business Income Report/ Work Sheet must be submitted to us and must show financial data for your "operations":

         (a) During the 12 months prior to the date of the Work Sheet; and

         (b) Estimated for the 12 months immediately following the inception of this Optional Coverage.

      (2) The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

         (a) The Coinsurance percentage shown in the Declarations; multiplied by

         (b) The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

   b. The Additional Condition, Coinsurance, is suspended until:

      (1) 12 months after the effective date of this Optional Coverage; or

      (2) The expiration date of this policy;

      whichever occurs first.

   c. We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

      (1) Within 12 months of the effective date of this Optional Coverage; or

      (2) When you request a change in your Business Income Limit of Insurance.

d. If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

   (1) The Business Income Limit of Insurance; divided by

   (2) The Agreed Value.

**Example:**

When: The Limit of Insurance
      is              $100,000
      The Agreed Value is    $200,000
      The amount of loss is  $ 80,000

Step (a): $100,000 ÷ $200,000 = .50

Step (b): .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

4. **Extended Period Of Indemnity**

   Under paragraph **A.3.d.,** Extended Business Income, the number "30" in subparagraph **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

G. **DEFINITIONS**

1. **"Finished Stock"** means stock you have manufactured.

   "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. **"Operations"** means:

   a. Your business activities occurring at the described premises; and

   b. The tenantability of the described premises, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

3. **"Period of Restoration"** means the period of time that:

   a. Begins:

      (1) 72 hours after the time of direct physical loss or damage for Business Income coverage; or

      (2) Immediately after the time of direct physical loss or damage for Extra Expense coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

---

   **b.** Ends on the earlier of

      **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      **(2)** The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

      **(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

      **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**4.** **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**5.** **"Rental Value"** means the:

   **a.** Total anticipated rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, and

   **b.** Amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be your obligations, and

   **c.** Fair rental value of any portion of the described premises which is occupied by you.

Copyright, ISO Commercial Risk Services Inc., 1994

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

**1.** We cover loss or damage commencing:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

**2.** The coverage territory is:

    **a.** The United States of America (including its territories and possessions);

    **b.** Puerto Rico; and

    **c.** Canada.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to se-cure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a loss to your Covered Property or Covered Income.

**2.** After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    **a.** Someone insured by this insurance;

    **b.** A business firm:

        **(1)** Owned or controlled by you; or

        **(2)** That owns or controls you; or

    **c.** Your tenant.

This will not restrict your insurance.

COMMERCIAL PROPERTY
POLICY NUMBER:                                            CP 01 25 06 95

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FLORIDA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The following provision applies when a Co-insurance percentage is shown in the Declarations:

Florida law states as follows:

Coinsurance contract: The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the Insured.

**C.** The following is added:

If loss or damage to Covered Property is caused by or results from Windstorm, the following exclusion applies in:

1. Broward County;
2. Dade County;
3. Martin County;
4. Monroe County;
5. Palm Beach County; and
6. All the areas east of the west bank of the Intra-Coastal Waterway in the Counties of:
   a. Indian River; and
   b. St. Lucie.

**Windstorm Exterior Paint and Waterproofing Exclusion**

We will not pay for loss or damage to:

1. Paint; or
2. Waterproofing material;

applied to the exterior of Buildings.

We will not include the value of paint or waterproofing material to determine:

   a. The amount of the Windstorm or Hail Deductible; or
   b. The value of Covered Property when applying the Coinsurance Condition.

**D.** The LOSS PAYMENT Condition dealing with the number of days within which we must pay for covered loss or damage is replaced by the following:

Provided you have complied with all the terms of this Coverage Part, we will pay for covered loss or damage:

(1) Within 20 days after we receive the sworn proof of loss and reach written agreement with you; or

(2) Within 30 days after we receive the sworn proof of loss and:

   (a) There is an entry of a final judgment; or

   (b) There is a filing of an appraisal award with us.

**E. Sinkhole Collapse**

1. Paragraph **A.10.**, SINKHOLE COLLAPSE, of the Causes of Loss – Basic Form and the Causes of Loss – Broad Form;

2. Paragraph **A.2.c.(8)** of COVERED CAUSES OF LOSS of the Mortgageholders Errors and Omissions Coverage Form; and

3. Paragraph **A.3.h.**, SINKHOLE COLLAPSE, of the Standard Property Policy

are replaced by the following:

**Sinkhole Collapse,** meaning loss or damage caused by the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or similar rock formations. This cause of loss does not include:

   a. The cost of filling sinkholes; or
   b. Sinking or collapse of land into man-made underground cavities.

**F.** Paragraph **F.1.** of DEFINITIONS of the Causes of Loss – Special Form is replaced by the following:

1. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or similar rock formations. This cause of loss does not include:

   a. The cost of filling sinkholes; or
   b. Sinking or collapse of land into man-made underground cavities.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS RISK COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT–OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY
TOBACCO SALES WAREHOUSES COVERAGE FORM

**SCHEDULE\***

| Premises No. | Bldg. No. | Windstorm or Hail Deductible Percentage (enter 1%, 2% or 5%) |
|---|---|---|
| | | |

The Windstorm or Hail Deductible, as shown in the Schedule, applies to loss or damage to Covered Property caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage. If loss or damage from a covered weather condition other than Windstorm or Hail occurs, and that loss or damage would not have occurred but for the Windstorm or Hail, such loss or damage shall be considered to be caused by Windstorm or Hail and therefore part of the Windstorm or Hail occurrence.

With respect to Covered Property at a location identified in the Schedule, no other deductible applies to Windstorm or Hail.

The Windstorm or Hail Deductible applies whenever there is an occurrence of Windstorm or Hail.

As used in this endorsement, the terms "specific insurance" and "blanket insurance" have the following meanings: Specific insurance covers each item of insurance (for example, each building or personal property in a building) under a separate Limit of Insurance. Blanket insurance covers two or more items of insurance (for example, a building and personal property in that building, or two buildings) under a single Limit of Insurance. Items of insurance and corresponding Limit(s) of Insurance are shown in the Declarations.

**WINDSTORM OR HAIL DEDUCTIBLE CLAUSE**

**A.** All Policies

1. A Deductible is calculated separately for, and applies separately to:

   **a.** Each building, if two or more buildings sustain loss or damage;

   **b.** The building and to personal property in that building, if both sustain loss or damage;

   **c.** Personal property at each building, if personal property at two or more buildings sustains loss or damage;

   **d.** Personal property in the open.

2. We will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance, after any reduction required by any of the following: Coinsurance Condition, Agreed Value Optional Coverage, Additional Condition – Need For Adequate Insurance or Additional Condition – Need for Full Reports.

**\*** Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

3. When property is covered under the Coverage Extension for Newly Acquired or Constructed Property: In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to a percentage of the value(s) of the property at time of loss. The applicable percentage for Newly Acquired or Constructed Property is the highest percentage shown in the Schedule for any described premises.

B. Calculation Of The Deductible – Specific Insurance Other Than Builders Risk

   1. Property Not Subject To Value Reporting Forms

      In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the Limit(s) of Insurance applicable to the property that has sustained loss or damage.

   2. Property Subject To Value Reporting Forms

      In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the value(s) of the property that has sustained loss or damage. The value(s) to be used are the latest value(s) shown in the most recent Report of Values on file with us.

      However:

      a. If the most recent Report of Values shows less than the full value(s) of the property on the report dates, we will determine the deductible amount as a percentage of the full value(s) as of the report dates.

      b. If the first Report of Values is not filed with us prior to loss or damage, we will determine the deductible amount as a percentage of the applicable Limit(s) of Insurance.

C. Calculation Of The Deductible – Blanket Insurance Other Than Builders Risk

   1. Property Not Subject To Value Reporting Forms

      In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the value(s) of the property that has sustained loss or damage. The value(s) to be used are those shown in the most recent Statement of Values on file with us.

2. Property Subject To Value Reporting Forms

   In determining the amount, if any, that we will pay for property that has sustained loss or damage, we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the value(s) of that property as of the time of loss or damage.

D. Calculation Of The Deductible – Builders Risk Insurance

   1. Builders Risk Other Than Reporting Form

      In determining the amount, if any, that we will pay for property that has sustained loss or damage, we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the actual cash value(s) of that property as of the time of loss or damage.

   2. Builders Risk Reporting Form

      In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the value(s) of the property that has sustained loss or damage. The value(s) to be used are the actual cash value(s) shown in the most recent Report of Values on file with us.

      However:

      a. If the most recent Report of Values shows less than the actual cash value(s) of the property on the report date, we will determine the deductible amount as a percentage of the actual cash value(s) as of the report date.

      b. If the first Report of Values is not filed with us prior to loss or damage, we will determine the deductible amount as a percentage of the actual cash value(s) of the property as of the time of loss or damage.

**EXAMPLES - APPLICATION OF DEDUCTIBLE:**

**Example #1 - Specific Insurance (B.1.)**

The amount of loss to the damaged building is $60,000.

The value of the damaged building at time of loss is $100,000. The Coinsurance percentage shown in the Declarations is 80%; the minimum Limit of Insurance needed to meet the coinsurance requirement is $80,000 (80% of $100,000).

The **actual** Limit of Insurance on the damaged building is $70,000.

The Deductible is 1%.

Copyright, ISO Commercial Risk Services, Inc., 1995

Step (1): $70,000 ÷ $80,000 = .75

Step (2): $60,000 X .875 = $52,500

Step (3): $70,000 X 1% = $700

Step (4): $52,500 − $700 = $51,800

The most we will pay is $51,800. The remainder of the loss, $8,200, is not covered due to the Coinsurance penalty for inadequate insurance (steps (1) and (2)) and the application of the Deductible (steps (3) and (4)).

### Example #2 – Specific Insurance (B.1.)

The amounts of loss to the damaged property are $60,000 (building) and $40,000 (business personal property in building).

The value of the damaged building at time of loss is $100,000. The value of the business personal property in that building is $80,000. The Coinsurance percentage shown in the Declarations is 80%; the minimum Limits of Insurance needed to meet the coinsurance requirement are $80,000 (80% of $100,000) for the building and $64,000 (80% of $80,000) for the business personal property.

The **actual** Limits of Insurance on the damaged property are $80,000 on the building and $64,000 on the business personal property (therefore no Coinsurance penalty).

The Deductible is 2%.

**Building**

Step (1): $80,000 X 2% = $1,600

Step (2): $60,000 − $1,600 = $58,400

**Business Personal Property**

Step (1): $64,000 X 2% = $1,280

Step (2): $40,000 − $1,280 = $38,720

The most we will pay is $97,120. That portion of the total loss not covered due to application of the Deductible is $2,880.

### Example #3 – Blanket Insurance (C.1.)

The sum of the values of Building #1 ($500,000), Building #2 ($500,000) and Building #3 ($1,000,000), as shown in the most recent Statement of Values on file with us, is $2,000,000.

The Coinsurance percentage shown in the Declarations is 90%; the minimum Blanket Limit of Insurance needed to meet the coinsurance requirement is $1,800,000 (90% of $2,000,000).

The **actual** Blanket Limit of Insurance covering Buildings #1, #2, and #3, shown in the Declarations, is $1,800,000 (therefore no Coinsurance penalty).

Buildings #1 and #2 have sustained damage; the amounts of loss to these buildings are $40,000 (Building #1) and $20,000 (Building #2).

The Deductible is 2%.

### Building #1

Step (1): $500,000 X 2% = $10,000

Step (2): $40,000 − $10,000 = $30,000

### Building #2

Step (1): $500,000 X 2% = $10,000

Step (2): $20,000 − $10,000 = $10,000

The most we will pay is $40,000. That portion of the total loss not covered due to application of the Deductible is $20,000.

### Example #4 – Blanket Insurance (C.1.)

The sum of the values of Building #1 ($500,000), Building #2 ($500,000), Business Personal Property at Building #1 ($250,000) and Business Personal Property at Building #2 ($250,000), as shown in the most recent Statement of Values on file with us, is $1,500,000.

The Coinsurance percentage shown in the Declarations is 90%; the minimum Blanket Limit of Insurance needed to meet the coinsurance requirement is $1,350,000 (90% of $1,500,000).

The **actual** Blanket Limit of Insurance covering Buildings #1 and #2 and Business Personal Property at Buildings #1 and #2, shown in the Declarations, is $1,350,000. Therefore there is no Coinsurance penalty.

Building #1 and Business Personal Property at Building #1 have sustained damage; the amounts of loss are $95,000 (Building) and $5,000 (Business Personal Property).

The Deductible is 5%.

### Building

Step (1): $500,000 X 5% = $25,000

Step (2): $95,000 − $25,000 = $70,000

### Business Personal Property

Step (1): $250,000 X 5% = $12,500

The loss, $5,000, does not exceed the deductible.

The most we will pay is $70,000. The remainder of the building loss, $25,000, is not covered due to application of the Deductible. There is no loss payment for the business personal property.

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** – Definitions.

## A.  COVERED CAUSES OF LOSS

When Special is shown in the Declarations, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

1.  Excluded in Section **B.,** Exclusions; or

2.  Limited in Section **C.,** Limitations;

that follow.

## B.  EXCLUSIONS

1.  We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

    **a.  Ordinance or Law**

    The enforcement of any ordinance or law:

    (1)  Regulating the construction, use or repair of any property; or

    (2)  Requiring the tearing down of any property, including the cost of removing its debris.

    This exclusion, Ordinance or Law, applies whether the loss results from:

    (1)  An ordinance or law that is enforced even if the property has not been damaged; or

    (2)  The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

    **b.  Earth Movement**

    (1)  Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But if earth movement results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

    (2)  Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

    Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

    (a)  Airborne volcanic blast or airborne shock waves;

    (b)  Ash, dust or particulate matter; or

    (c)  Lava flow.

    All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

    Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

    **c.  Governmental Action**

    Seizure or destruction of property by order of governmental authority.

    But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

    **d.  Nuclear Hazard**

    Nuclear reaction or radiation, or radioactive contamination, however caused.

    But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

    **e.  Utility Services**

    The failure of power or other utility service supplied to the described

premises, however used, if the failure occurs away from the described premises.

But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion does not apply to the Business Income coverage or to Extra Expense coverage. Instead, the Special Exclusion in paragraph **B.4.a.(1)** applies to these coverages.

**f. War And Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water that backs up or overflows from a sewer, drain or sump; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

But if Water, as described in **g. (1)** through **g. (4)** above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.** (1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if an excluded cause of loss that is listed in **2.d. (1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire

 Copyright, ISO Commercial Risk Services, Inc., 1994 CP 10 30 06 95

by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act by you, any of your partners, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, except as provided below in the Additional Coverage for Collapse. But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge,

dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms.

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, or Extra Expense Coverage Form**

We will not pay for:

(1) Any loss caused directly or indirectly by the failure of power or other utility service supplied to the described premises, however caused, if the failure occurs outside of a covered building.

But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss resulting from that Covered Cause of Loss.

(2) Any loss caused by or resulting from:

(a) Damage or destruction of "finished stock"; or

(b) The time required to re-produce "finished stock".

This exclusion does not apply to Extra Expense.

(3) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

(4) Any increase of loss caused by or resulting from:

(a) Delay in rebuilding, repair-ing or replacing the prop-erty or resuming "oper-ations," due to interference at the location of the re-building, repair or replace-ment by strikers or other persons; or

(b) Suspension, lapse or can-cellation of any license, lease or contract. But if the suspension, lapse or can-cellation is directly caused by the suspension of "op-erations," we will cover such loss that affects your Business Income during the "period of restoration."

(5) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any li-cense, lease or contract be-yond the "period of restora-tion."

(6) Any other consequential loss.

b. **Leasehold Interest Coverage Form**

(1) Paragraph **B.1.a.** Ordinance or Law, does not apply to insur-ance under this Coverage Form.

(2) We will not pay for any loss caused by:

(a) Your cancelling the lease;

(b) The suspension, lapse or cancellation of any license;

(c) Any other consequential loss.

c. **Legal Liability Coverage Form**

(1) The following Exclusions do not apply to insurance under this Coverage Form:

(a) Paragraph **B.1.a.**, Ordinance or Law;

(b) Paragraph **B.1.c.**, Govern-mental Action;

(c) Paragraph **B.1.d.**, Nuclear Hazard;

(d) Paragraph **B.1.e.**, Utility Services; and

(e) Paragraph **B.1.f.**, War and Military Action.

(2) The following additional exclu-sions apply to insurance under this Coverage Form:

(a) **Contractual Liability**

We will not defend any claim or "suit," or pay dam-ages that you are legally liable to pay, solely by rea-son of your assumption of liability in a contract or agreement. But this exclu-sion does not apply to a written lease agreement in which you have assumed li-ability for building damage resulting from an actual or attempted burglary or rob-bery, provided that:

(i) Your assumption of li-ability was executed prior to the accident; and

(ii) The building is Covered Property under this Coverage Form.

(b) **Nuclear Hazard**

We will not defend any claim or "suit," or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radi-ation, or radioactive con-tamination, h o w e v e r caused.

  Copyright, ISO Commercial Risk Services, Inc., 1994  CP 10 30 06 95

## LIMITATIONS

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

   d. Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

      However, this limitation does not apply to:

      (1) Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

      (2) Business Income coverage or Extra Expense coverage.

   e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking in-

ventory, or other instances where there is no physical evidence to show what happened to the property.

   f. Gutters and downspouts caused by or resulting from weight of snow, ice or sleet.

   g. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

2. We will not pay more than $500 in any one occurrence for loss of or damage to glass that is part of a building or structure, regardless of the number of panes, plates or similar units of glass. Subject to this $500 aggregate, we will not pay more than $100 for any one pane, plate, multiple plate insulating unit, radiant or solar heating panel, jalousie, louver or shutter.

   However, this limitation does not apply to:

   a. Loss or damage by the "specified causes of loss", except vandalism; or

   b. Business Income coverage or Extra Expense coverage.

3. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

   a. Valuable papers and records, such as books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell or other data processing, recording or storage media, and other records.

   b. Animals, and then only if they are killed or their destruction is made necessary.

   c. Fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

      (1) Glass that is part of a building or structure;

      (2) Containers of property held for sale; or

      (3) Photographic or scientific instrument lenses.

   d. Builders' machinery, tools, and equipment owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply.

Case 9:01-cv-08772-ASG   Document 2   Entered on FLSD Docket 08/24/2001   Page 138 of 199
scribed and limited in **D.1.** through **D.5.** below.

**(1)** If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

**(2)** To Business Income coverage or to Extra Expense coverage.

**4.** The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

**a.** $2,500 for furs, fur garments and garments trimmed with fur.

**b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**c.** $2,500 for patterns, dies, molds and forms.

**d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.4.,** does not apply to Business Income coverage or to Extra Expense coverage.

**5.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**a.** Results in discharge of any substance from an automatic fire protection system; or

**b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income coverage or to Extra Expense coverage.

**D. ADDITIONAL COVERAGE - COLLAPSE**

The term Covered Cause of Loss includes the Additional Coverage – Collapse as de-

**1.** We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under this Coverage Form, if the collapse is caused by one or more of the following:

**a.** The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;

**b.** Hidden decay;

**c.** Hidden insect or vermin damage;

**d.** Weight of people or personal property;

**e.** Weight of rain that collects on a roof;

**f.** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **D.1.a.** through **D.1.e.,** we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

**2.** If the direct physical loss or damage does not involve collapse of a building or any part of a building, we will pay for loss or damage to Covered Property caused by the collapse of personal property only if:

**a.** The personal property which collapses is inside a building; and

**b.** The collapse was caused by a cause of loss listed in **D.1.a.** through **D.1.f.** above.

**3.** With respect to the following property:

**a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**b.** Awnings, gutters and downspouts;

**c.** Yard fixtures;

**d.** Outdoor swimming pools;

**e.** Fences;

**f.** Piers, wharves and docks;

**g.** Beach or diving platforms or appurtenances;

Copyright, ISO Commercial Risk Services, Inc., 1994   CP 10 30 06 95

h. Retaining walls; a
i. Walks, roadways and other paved surfaces;

if the collapse is caused by a cause of loss listed in **D.1.b.** through **D.1.f.,** we will pay for loss or damage to that property only if:

a. Such loss or damage is a direct result of the collapse of a building insured under this Coverage Form; and

b. The property is Covered Property under this Coverage Form.

4. Collapse does not include settling, cracking, shrinkage, bulging or expansion.

5. This Additional Coverage – Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

## E. ADDITIONAL COVERAGE EXTENSIONS

1. **Property In Transit.** This Extension applies only to your personal property to which this form applies.

   a. You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

   b. Loss or damage must be caused by or result from one of the following causes of loss:

      (1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

      (2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the road bed.

      (3) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

c. The most we will pay for loss or damage under this Extension is $1000.

This Coverage Extension is additional insurance. The Additional Condition, Co-insurance, does not apply to this Extension.

2. **Water Damage, Other Liquids, Powder or Molten Material Damage.** If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

## F. DEFINITIONS

"Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

1. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

   a. The cost of filling sinkholes; or

   b. Sinking or collapse of land into man-made underground cavities.

2. Falling objects does not include loss or damage to:

   a. Personal property in the open; or

   b. The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

3. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

QUICK REFERENCE

# COMMERCIAL PROPERTY COVERAGE PART

### READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGES**

Named Insured & Mailing Address
Policy Period
Business Description
Description of Premises
Coverages Provided, Limits of Insurance, Covered Causes of Loss and Coinsurance
Optional Coverages
Mortgage Holders
Deductible
Forms Applicable

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

A. Coverage
B. Exclusions
C. Limit of Insurance
D. Deductible
E. Loss Conditions
F. Additional Conditions
G. Optional Coverages
H. Definitions

**BUSINESS INCOME COVERAGE FORM**

A. Coverage
B. Exclusions
C. Limits of Insurance
D. Loss Conditions
E. Additional Condition
F. Optional Coverages
G. Definitions

**CAUSES OF LOSS - BASIC FORM**

A. Covered Causes of Loss
B. Exclusions

Copyright, ISO Commercial Risk Services Inc., 1983

A. Concealment, Misrepresentation and Fraud
B. Control of Property
C. Insurance Under Two or More Coverages
D. Legal Action Against Us
E. Liberalization
F. No Benefit to Bailee
G. Other Insurance
H. Policy Period, Coverage Territory
I. Transfer of Rights of Recovery Against Others to Us

**COMMON POLICY CONDITIONS**

A. Cancellation
B. Changes
C. Examination of Your Books and Records
D. Inspections and Surveys
E. Premiums
F. Transfer of Your Rights and Duties Under This Policy

**ENDORSEMENTS (If Any)**

Copyright, ISO Commercial Risk Services Inc., 1983

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

> BUILDING AND PERSONAL PROPERTY COVERAGE FORM
> BUILDERS' RISK COVERAGE FORM
> CONDOMINIUM ASSOCIATION COVERAGE FORM
> CONDOMINIUM COMMERCIAL UNIT—OWNERS COVERAGE FORM
> STANDARD PROPERTY POLICY

## SCHEDULE

| | | | | Provisions Applicable | | |
|---|---|---|---|---|---|---|
| Prem. No. | Bldg. No. | Description of Property | Loss Payee (Name & Address) | Loss Payable | Lender's Loss Payable | Contract Of Sale |

**A.** When this endorsement is attached to the STANDARD PROPERTY POLICY **CP 00 99** the term Coverage Part in this endorsement is replaced by the term Policy.

The following is added to the LOSS PAYMENT Loss Condition, as indicated in the Declarations or by an "X" in the Schedule:

**B. LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**C. LENDER'S LOSS PAYABLE**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

   b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

      (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

      (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

      (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

      All of the terms of this Coverage Part will then apply directly to the Loss Payee.

   d. If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

      (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

      (2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

      At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

   a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**D. CONTRACT OF SALE**

1. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   a. Adjust losses with you; and

   b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the OTHER INSURANCE Condition:

   For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

     Copyright, ISO Commercial Risk Services, Inc., 1994     CP 12 18 06 95

POLICY NUMBER:_____                              COMMERCIAL PROPERTY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LARGE DEDUCTIBLE ENDORSEMENT
## ($1,000 MINIMUM)

BUILDERS' RISK COVERAGE FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
TOBACCO SALES WAREHOUSES COVERAGE FORM

**SCHEDULE**

**Deductible Amount**                                    _____

1. The scheduled Deductible Amount applies to all covered causes of loss except Earthquake.

2. The scheduled Deductible Amount applies separately to each occurrence covered by the policy.

3. We will apply the scheduled Deductible Amount to each loss after we have made all other adjustments. If there is any recovery or salvage on a loss covered by this policy, we will apply the amount of the recovery or salvage to the amount of the loss paid by us. If the amount of the recovery or salvage is more than the amount of the loss paid by us, you will receive the excess amount .

4. The scheduled Deductible Amount in this endorsement applies solely at your risk. The Deductible Amount must not be covered by another policy of insurance unless we agree in an endorsement to this policy.

CP 71 31 06 95                                                         Page 1 of 1

IL 00 17 11 85

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties under this policy will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1982, 1983

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (BROAD FORM)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANS-PORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material"

   and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" include radioactive, toxic or explosive properties;

Copyright, Insurance Services Office, Inc., 1994

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

"Nuclear material" means "source material", "Special nuclear material" or "by-product material";

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

   Copyright, Insurance Services Office, Inc., 1994

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FLORIDA CHANGES – LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    BUSINESSOWNERS POLICY
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    FARM COVERAGE PART

The following replaces the second paragraph of the Legal Action Against Us condition:

LEGAL ACTION AGAINST US

Legal action against us involving direct physical loss or damage to property must be brought within 5 years from the date the loss occurs.

IL 01 75 09 93        Copyright, Insurance Services Office, Inc., 1993
Copyright, ISO Commercial Risk Services, Inc., 1993

**ISO** **Interline Forms** **Florida** **07/01/94** **Forms**

IL 02 55 07 94

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

FLORIDA CHANGES -
CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART- FARM PROPERTY COVERAGE FORM
FARM COVERAGE PART- MOBILE AGRICULTURAL MACHINERY
AND EQUIPMENT COVERAGE FORM
FARM COVERAGE PART- LIVESTOCK COVERAGE FORM

A. Paragraph 2. of the CANCELLATION Common Policy Condition is replaced
by the following:

2. CANCELLATION FOR POLICIES IN EFFECT 90 DAYS OR LESS

a. If this policy has been in effect for 90 days or less, we may
cancel this policy by mailing or delivering to the first Named
Insured written notice of cancellation, accompanied by the
specific reasons for cancellation, at least:

(1) 10 days before the effective date of cancellation if we
cancel for nonpayment of premium; or

▲ top

(2) 20 days before the effective date of cancellation if we
cancel for any other reason, except we may cancel immediately
if there has been:

(a) A material misstatement or misrepresentation; or

(b) A failure to comply with underwriting requirements
established by the insurer.

b. We may not cancel:

(1) On the basis of properly insurance claims that are the result
of an act of God, unless we can demonstrate, by claims
frequency or otherwise, that you have failed to take action
reasonably necessary as requested by us to prevent recurrence
of damage to the insured properly; or

(2) On the basis of filing of claims for partial loss caused by
sinkhole damage, regardless of whether this policy has been
the subject of a sinkhole claim, or on the basis of the risk
associated with the occurrence of such a claim. However, we
may cancel this policy if:

(a) The total of such properly insurance claim payments for
this policy exceeds the current policy limits of coverage
for property damage; or

(b) You have failed to repair the structure in accordance
with the engineering recommendations upon which any loss
payment or policy proceeds were based.

▲ top

B. The following is added to the CANCELLATION Common Policy Condition:

   7. CANCELLATION FOR POLICIES IN EFFECT FOR MORE THAN 90 DAYS

     a. If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

       (1) Nonpayment of premium;

       (2) The policy was obtained by a material misstatement;

       (3) There has been a failure to comply with underwriting requirements within 90 days of the effective date of coverage;

Page 1 of 2

       (4) There has been a substantial change in the risk covered by the policy;

       (5) The cancellation is for all insureds under such policies for a given class of insureds;

       (6) On the basis of property insurance claims that are the result of an act of God, if we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

       (7) On the basis of filing of claims for partial loss caused by sinkhole damage, or on the basis of the risk associated with the occurrence of such a claim, if:

▲ top

          (a) The total of such property insurance claim payments for this policy exceeds the current policy limits of coverage for property damage; or

          (b) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

     b. If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

       (1) 10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

       (2) 45 days before the effective date of cancellation if:

          (a) Cancellation is for one or more of the reasons stated in 7.a.(2) through 7.a.(7) above; and

          (b) This policy does not cover a residential structure or its contents; or

       (3) 90 days before the effective date of cancellation if:

          (a) Cancellation is for one or more of the reasons stated in 7.a.(2)through 7.a.(7) above; and

          (b) This policy covers a residential structure or its contents.

▲ top

C. The following is added:

NONRENEWAL

1. If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least:

   a. 90 days prior to the expiration of the policy if this policy covers a residential structure or its contents; or

   b. 45 days prior to the expiration of the policy for all other policies.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. We may not refuse to renew this policy:

   a. On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

   b. On the basis of filing of claims for partial loss caused by sinkhole damage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may refuse to renew this policy if:

▲ top

   (1) The total of such property insurance claim payments for this policy exceeds the current policy limits of coverage for property damage; or

   (2) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

Page 2 of 2                                      IL 02 55 07 94
            Copyright, Insurance Services Office, Inc., 1993
         Copyright, ISO Commercial Risk Services, Inc., 1993

▲ top

# Add/Edit Notes
## Add Personal Note

▲ top

# Document information
# Newer/Older versions

Newer version of this document

Older version of this document

▲ top

Silver Plume Document: ISO | Inter...Forms | ~ orida | 07/01/...http://silplume.ohio-casualty.com.sep...1~ ~-

This page was created: 5/2/01 4:14:49 PM



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# REMOVAL PERMIT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS STANDARD PROPERTY COVERAGE FORM
BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART

If Covered Property is removed to a new location that is added by endorsement to the policy subsequent to its original issue, you may extend this insurance to include that Covered Property at each location during removal. Coverage at each location will apply in the proportion that the value at each location bears to the value of all Covered Property being removed. This permit applies up to 10 days after the effective date of the endorsement adding the new location; after that, this insurance does not apply at the previous location.

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, Inc., 1992

OC 70 35 06 93

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN
AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO. CL 00 – 2310 AE

SUSAN GROSSMAYER, Individually
and as Personal Representative of
THE ESTATE OF THOMAS
GROSSMAYER, Deceased and as
Parent and Natural Guardian of JUSTIN
GROSSMAYER, a minor and
SETH GROSSMAYER, a minor,

       Plaintiffs,

vs.

DONALD WYCKOFF, M.D.,
BOCA RADIOLOGY ASSOCIATES,
INC., DAVID SCHWARTZWALD, M.D.,
DAVID SCHWARTZWALD, M.D., P.A.,
JEFFREY L. STEIN, M.D., JEFFREY L.
STEIN, M.D., P.A., MARVIN L. STEIN,
M.D., MARVIN L. STEIN, M.D., P.A.,
LEE M. KATIMS, M.D., IMAGING
CONSULTANTS OF SOUTH FLORIDA
d/b/a IMAGING CONSULTANTS
OF WEST BOCA, a Florida Partnership,
LEE M. KATIMS, M.D., P.A. and TENET
HEALTH SYSTEM HOSPITAL, INC. d/b/a
WEST BOCA MEDICAL CENTER,
RICHARD D. MARTELLO, M.D., RICHARD D.
MARTELLO, M.D., P.A., RICHARD
BEERMAN, M.D. and RICHARD BEERMAN,
M.D., P.A.

       Defendants,

_____/



## FOURTH AMENDED COMPLAINT

    COMES NOW the Plaintiffs, SUSAN GROSSMAYER, Individually and as Personal

Representative of THE ESTATE OF THOMAS GROSSMAYER, Deceased and as Parent

and Natural Guardian of JUSTIN GROSSMAYER, a Minor and SETH GROSSMAYER, a

2

minor, by and through the undersigned attorneys and sues the Defendants, DONALD WYCKOFF, M.D., BOCA RADIOLOGY ASSOCIATES, INC., DAVID SCHWARTZWALD, M.D., DAVID SCHWARTZWALD, M.D., P.A., JEFFREY L. STEIN, M.D., JEFFREY L. STEIN, M.D., P.A., MARVIN L. STEIN, M.D., MARVIN L. STEIN, M.D., P.A., LEE M. KATIMS, M.D., IMAGING CONSULTANTS OF SOUTH FLORIDA d/b/a IMAGING CONSULTANTS OF WEST BOCA, a Florida Partnership,  LEE M. KATIMS, M.D., P.A. and TENET HEALTH SYSTEM HOSPITAL, INC. d/b/a WEST BOCA MEDICAL CENTER, RICHARD D. MARTELLO, M.D., RICHARD D. MARTELLO, M.D., P.A., RICHARD BEERMAN, M.D. and RICHARD BEERMAN, M.D., P.A. and allege as follows:

1.      This is an action for damages in excess of Fifteen Thousand ($15,000.00) Dollars brought pursuant to Florida Wrongful Death Act as codified in Florida Statute §768.16 through §768.27.

2.      At all times material hereto, the Plaintiff, SUSAN GROSSMAYER, is the duly appointed, qualified and acting Personal Representative of THE ESTATE OF THOMAS GROSSMAYER, Deceased.

3.      At all times material hereto, the survivors as defined by the Florida Wrongful Death Act are:  SUSAN GROSSMAYER, wife of the decedent; JUSTIN GROSSMAYER, minor son of the decedent and SETH GROSSMAYER, minor son of the decedent.

4.      At all times material hereto, the Plaintiff, SUSAN GROSSMAYER, was and is a resident of Palm Beach County, Florida.

5.      At all times material hereto, the minor Plaintiff, JUSTIN GROSSMAYER, was and is a resident of Palm Beach County, Florida.

2

6.     At all times material hereto, the minor Plaintiff, SETH GROSSMAYER, was and is a resident of Palm Beach County, Florida.

7.     At all times material hereto, the Plaintiffs, SUSAN GROSSMAYER, was and is the natural parent and guardian of JUSTIN GROSSMAYER and SETH GROSSMAYER, minors.

8.     At all times material hereto, the Defendant, DONALD WYCKOFF, M.D., hereinafter referred to as "DR. WYCKOFF", was and is a resident of Palm Beach County.   DR. WYCKOFF was duly licensed to practice medicine, specializing in Diagnostic Radiology, in the State of Florida and was practicing medicine in Palm Beach County.

9.     At all times material hereto, the Defendant, BOCA RADIOLOGY ASSOCIATES, INC., was and is a corporation organized and existing under the Laws of the State of Florida.

10.     At all times material hereto, BOCA RADIOLOGY ASSOCIATES, INC., hereinafter referred to as "BOCA RADIOLOGY", employed the Defendant, DR. WYCKOFF, and at the time of the incident complained of herein, said Defendant was acting within the course and scope of his employment with said corporation.

11.     At all times material hereto, the Defendant, DAVID SCHWARTZWALD, M.D., hereinafter referred to as "DR. SCHWARTZWALD", was and is a resident of Palm Beach County.   DR. SCHWARTZWALD was duly licensed to practice medicine, specializing in Urological Medicine, in the State of Florida and was practicing medicine in Palm Beach County.

12    At all times material hereto, the Defendant, DAVID SCHWARTZWALD, M.D., P.A., was and is a corporation organized and existing under the Laws of the State of Florida.

13.    At all times material hereto, DAVID SCHWARTZWALD, M.D., P.A., hereinafter referred to as "SCHWARTZWALD, M.D., P.A..", employed the Defendant, DR. SCHWARTZWALD and at the time of the incident complained of herein, said Defendant was acting within the course and scope of his employment with said corporation.

14.    At all times material hereto, JEFFREY L. STEIN, M.D. hereinafter referred to as "DR. JEFFREY STEIN", was and is a resident of Palm Beach County.  DR. STEIN was duly licensed to practice medicine, specializing in Internal Medicine, in the State of Florida and was practicing medicine in Palm Beach County.

15.    At all times material hereto, the Defendant, JEFFREY L. STEIN, M.D., P.A., was and is a corporation organized and existing under the Laws of the State of Florida.

16.    At all times material hereto, JEFFREY L. STEIN, M.D., P.A., employed the Defendant, DR. JEFFREY STEIN, and at the time of the incident complained of herein, said Defendant was acting within the course and scope of his employment with said corporation.

17.    At all times material hereto, MARVIN L. STEIN, M.D., was and is a resident of Palm Beach County.  MARVIN L. STEIN, M.D., hereinafter referred to as "DR. MARVIN STEIN" was duly licensed to practice medicine, specializing in Urological Medicine, in the State of Florida and was practicing medicine in Palm Beach County.

4

18.     At all times material hereto, the Defendant, MARVIN L. STEIN, M.D., P.A., was and is a corporation organized and existing under the Laws of the State of Florida.

19.     At all times material hereto, MARVIN L. STEIN, M.D., P.A., employed the Defendant, DR. MARVIN STEIN, and at the time of the incident complained of herein, said Defendant was acting within the course and scope of his employment with said corporation.

20.     At all times material hereto, the Defendant, LEE M. KATIMS, M.D., hereinafter referred to as "DR. KATIMS", was and is a resident of Palm Beach County. DR. KATIMS was duly licensed to practice medicine in the State of Florida, specializing in Diagnostic Radiology, and was practicing medicine in Palm Beach County.

21.     At all times material hereto, the Defendant, IMAGING CONSULTANTS of SOUTH FLORIDA, was a Florida Partnership and was doing business as IMAGING CONSULTANTS OF WEST BOCA.

22.     At all times material hereto, IMAGING CONSULTANTS OF SOUTH FLORIDA d/b/a IMAGING CONSULTANTS OF WEST BOCA, hereinafter referred to as "IMAGING CONSULTANTS", employed the Defendant, DR. KATIMS, and at the time of the incident complained of herein, said Defendant was acting within the course and scope of his employment with said corporation.

23.     At all times material hereto, the Defendant, LEE M. KATIMS, M.D., P.A., was and is a corporation organized and existing under the Laws of the State of Florida.

24.     At all times material hereto, LEE M. KATIMS, M.D., P.A., employed the Defendant, DR. KATIMS, and at the time of the incident complained of herein, said Defendant was acting within the course and scope of his employment with said corporation.

5

25.     At all times material hereto, TENET HEALTH SYSTEM HOSPITAL, INC., was and is organized and existing under the laws of the State of Florida and was doing business as WEST BOCA MEDICAL CENTER,

26.     At all times material hereto, TENET HEALTH SYSTEM HOSPITAL, INC., owned, operated and controlled the hospital known as WEST BOCA MEDICAL CENTER.

27.     At all times material hereto, the Defendant, RICHARD D. MARTELLO, M.D., hereinafter referred to as "DR. MARTELLO", was and is a resident of Palm Beach County.   DR. MARTELLO was duly licensed to practice medicine, specializing in Radiology, in the State of Florida and was practicing medicine in Palm Beach County.

28.     At all times material hereto, the Defendant, RICHARD D. MARTELLO, M.D., P.A. was and is a corporation organized and existing under the Laws of the State of Florida.

29.     At all times material hereto, RICHARD D. MARTELLO, M.D., P.A., hereinafter referred to as "MARTELLO, M.D., P.A.", employed the Defendant, DR. MARTELLO, and at the time of the incident complained of herein, said Defendant was acting within the course and scope of his employment with said corporation.

30.     At all times material hereto, the Defendant, RICHARD BEERMAN, M.D., hereinafter referred to as "DR. BEERMAN", was and is a resident of Palm Beach County.   DR. BEERMAN was duly licensed to practice medicine, specializing in Radiology, in the State of Florida and was practicing medicine in Palm Beach County.

31.     At all times material hereto, the Defendant, RICHARD BEERMAN, M.D., P.A. was and is a corporation organized and existing under the Laws of the State of Florida.

6

32.     At all times material hereto, RICHARD BEERMAN, M.D., P.A., hereinafter referred to as "BEERMAN, M.D., P.A.", employed the Defendant, DR. BEERMAN, and at the time of the incident complained of herein, said Defendant was acting within the course and scope of his employment with said corporation.

33.     At all times material hereto, the Defendants, DR. KATIMS, DR. BEERMAN and DR. MARTELLO were employees, agents and/or apparent agents of Defendant, WEST BOCA MEDICAL CENTER, and while rendering care and treatment to the Plaintiff, THOMAS GROSSMAYER, were acting within the course and scope of their employment.

34.     At all times material hereto, WEST BOCA MEDICAL CENTER, possessed a non-delegable duty by statute to provide radiology services to patients, including but not limited to THOMAS GROSSMAYER.

35.     At all times material hereto, the Plaintiffs have complied with Florida Statute §766.106 as a prerequisite to filing this lawsuit.

36.     On or about May 15, 1996, Plaintiff, THOMAS GROSSMAYER, presented to the emergency room at WEST BOCA MEDICAL CENTER.  He was evaluated by DR. SCHWARTZWALD and an intravenous pyelograms were obtained.   The IVP's were interpreted by the Defendant, DR. MARTELLO.

37     On or about July 11, 1996, Plaintiff, THOMAS GROSSMAYER, again presented to WEST BOCA MEDICAL CENTER under the care of DR. JEFFREY STEIN for an intravenous pyelogram.   This IVP was interpreted by the Defendant, DR. BEERMAN.

7

38.     On or about July 16, 1996, Plaintiff, THOMAS GROSSMAYER, was admitted to the Kidney Stone Center of South Florida under the care of DR. SCHWARTZWALD.

39.     On or about April 24, 1997, Plaintiff, THOMAS GROSSMAYER, was examined by DR. JEFFREY STEIN.  An intravenous pyelogram (IVP) was ordered by the Defendant, Dr. JEFFREY STEIN and completed at BOCA RADIOLOGY which revealed an abnormality in the right ilium.

40     On or about May 8, 1997, the intravenous pyelogram (IVP) obtained from BOCA RADIOLOGY, and ordered by DR. JEFFREY STEIN, was read by radiologist, DR. WYCKOFF, which was misinterpreted as a sclerotic area in the right ilium, which DR. WYCKOFF misdiagnosed as a "benign bone island".

41     On or about July 18, 1997, Plaintiff, THOMAS GROSSMAYER, was first seen by DR. MARVIN STEIN.  DR. MARVIN STEIN reviewed the May 8, 1997 IVP performed at BOCA RADIOLOGY on Thomas Grossmayer's first visit to MARVIN STEIN'S office.

42.     On or about April 2, 1998, Plaintiff, THOMAS GROSSMAYER, was referred to WEST BOCA MEDICAL CENTER by DR. MARVIN STEIN for an intravenous pyelogram.  That study was misinterpreted by the Defendant, DR. KATIMS.

43.     On or about January 25, 1999, Plaintiff, THOMAS GROSSMAYER, presented to Dr. Meyer E. Cohen with complaints of right hip pain radiating into the lateral thigh.  He returned to Dr. Cohen on February 8, 1999.

44.     On or about March 24, 1999, Plaintiff, THOMAS GROSSMAYER, returned to Dr. Cohen with continued complaints of pain.  On examination, a mass was palpated in the right lower quadrant.

8

45.     On or about March 24, 1999, Plaintiff, THOMAS GROSSMAYER, had a CT scan of the abdomen which revealed a large mass in the right mid/lower abdomen.

46.     On or about April 16, 1999, Plaintiff, THOMAS GROSSMAYER, presented to Boca Raton Community Hospital for a CT guided biopsy.

47.     On or about May 19, 1999, Plaintiff, THOMAS GROSSMAYER, was admitted to Jackson Memorial Hospital under the care of Dr. Michael Hellinger and Dr. Thomas Temple for resection of the tumor.   The pathology report revealed a Chondrosarcoma.

48.     On or about May 29, 1999, Plaintiff, THOMAS GROSSMAYER, was transferred to Pinecrest Rehabilitation until June 4, 1999.

49.     Plaintiff, THOMAS GROSSMAYER'S , tumor has recurred and metastasized and he has been diagnosed as having a terminal cancer.

50.     As a result of the Defendants' negligence, THOMAS GROSSMAYER died on April 16, 2000.

## COUNT I
## NEGLIGENCE OF DR. WYCKOFF

Plaintiffs reallege and reaver Paragraphs 1 through 50 as if fully set forth herein, and would further state:

51.     At all times material hereto, the Defendant, DR. WYCKOFF, agreed and undertook to examine, diagnose, treat and attend the Plaintiff, THOMAS GROSSMAYER.

52.     At all times material hereto, the Defendant, DR. WYCKOFF, had a duty to exercise that degree of care and skill in examining, diagnosing and treating the Plaintiff, THOMAS GROSSMAYER, commensurate with the prevailing professional standard of medical care.

9

53.    At all times material hereto, the Defendant, DR. WYCKOFF, was careless, negligent and breached said duty as follows:

a)    Failure to properly care and treat the Plaintiff, THOMAS GROSSMAYER; and/or

b)    Failure to recognize the significant radiographic abnormalities of the Intravenous pyelogram of May 8, 1997; and/or

c)    Failure to request additional diagnostic studies based on the results of the intravenous pyelogram of May 8, 1997 including, MRI, CT Scan and/or a bone scan; and/or

d)    Failure to compare or recommend comparison of prior diagnostic tests, including prior x-rays or IVP's, to the study of May 8, 1997; and/or

e)    Failure to directly communicate the IVP results of May 8, 1997 to the ordering physician, DR. JEFFREY STEIN.

54.    At all times material hereto, the aforesaid acts or omissions on the part of the Defendant, DR. WYCKOFF, fell below the standard of care required of him by his training, experience and the prevailing professional standard of care.

55.    As a direct, proximate and foreseeable result of the negligence of the Defendant, DR. WYCKOFF, the Plaintiff, THOMAS GROSSMAYER, died.

56,    Further, as the direct and proximate result of the negligence of the Defendant, DR. WYCKOFF, as aforestated:

a.    SUSAN GROSSMAYER, personal representative of the Estate of THOMAS GROSSMAYER, is entitled to recover for the estate of the deceased, loss of support and services of the deceased from the date of injury to the date of

10

death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

b.      SUSAN GROSSMAYER, the decedent's wife has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship and protection.

c.      JUSTIN GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

d.      SETH GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

WHEREFORE, Plaintiff demands judgment for damages against the Defendant, DR. WYCKOFF, together with costs, and demand trial by jury of all issues triable as of right by jury.

**COUNT II**
**NEGLIGENT HIRING, RETENTION**
**AND SUPERVISION OF BOCA RADIOLOGY**

Plaintiffs reallege and reaver Paragraphs 1 through 50 and Paragraphs 51 through 53 as if fully set forth herein, and would further state:

57.      At all times material hereto, the Defendant, DR. WYCKOFF, was negligently hired and retained by the Defendant, BOCA RADIOLOGY.

11

58.    At all times material hereto, the Defendant, BOCA RADIOLOGY, is responsible for the negligent hiring, retention and supervision of its employees, agents or apparent agents acting within the course and scope of their employment or agency.

59.    At all times material hereto, the negligent acts or omissions and breach of duty as set forth herein by and through its agents, apparent agents, representatives, and/or employees fell below the prevailing professional standard of care.

60.    As a direct, proximate and foreseeable result of the negligence of the Defendant, BOCA RADIOLOGY, the Plaintiff, THOMAS GROSSMAYER, died.

61.    Further, as the direct and proximate result of the negligence of the Defendant, BOCA RADIOLOGY, as aforestated:

a.    SUSAN GROSSMAYER, personal representative of the Estate of THOMAS GROSSMAYER, is entitled to recover for the estate of the deceased, loss of support and services of the deceased from the date of injury to the date of death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

b.    SUSAN GROSSMAYER, the decedent's wife has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship and protection.

c.    JUSTIN GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

12

d.     SETH GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

WHEREFORE, Plaintiff demands judgment for damages against the Defendant, BOCA RADIOLOGY, together with costs, and demand trial by jury of all issues triable as of right by jury.

## COUNT III
## NEGLIGENCE OF BOCA RADIOLOGY

Plaintiffs reallege and reaver Paragraphs 1 through 50 as if fully set forth herein, and would further state:

62.     At all times material hereto, the Defendant, BOCA RADIOLOGY, by and through its employees, agents, apparent agents, and/or representatives, had a duty to provide for the safety of its customers through appropriate policies and procedures implemented and performed by its staff.

63.     At the time of the incident complained of hereof, the Defendant, BOCA RADIOLOGY, had or should have had an established protocol and/or policy, procedure and regulations to be followed by the staff, employees or agents for the purpose of providing for the safety of customers commensurate with the professional standard of care within the industry.

64.     The Defendant, BOCA RADIOLOGY, breached their duty to the Plaintiff, THOMAS GROSSMAYER, by the following

a.   Failing to properly supervise employees, agents and/or technicians to assure that all policies were implemented and followed, and/or

13

b.   Failing to have implemented policies and procedures for purposes of quality assurance and quality control regarding the interpretation of diagnostic films; and/or

c.   Failing to have other radiologists perform random reviews of radiological Interpretations to evaluate the accuracy and appropriateness of radiological studies and their interpretation.

65.   At all times material hereto, the aforesaid acts or omissions on the part of the Defendant, BOCA RADIOLOGY, by virtue of its duty, fell below the standard of care required for the industry.

66.   As a direct, proximate and foreseeable result of the negligence of the Defendant, BOCA RADIOLOGY, the Plaintiff, THOMAS GROSSMAYER, died.

67.   Further, as the direct and proximate result of the negligence of the Defendant, BOCA RADIOLOGY, as aforestated:

a.   SUSAN GROSSMAYER, personal representative of the Estate of THOMAS GROSSMAYER, is entitled to recover for the estate of the deceased, loss of support and services of the deceased from the date of injury to the date of death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

b.   SUSAN GROSSMAYER, the decedent's wife has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship and protection.

c.   JUSTIN GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has

14

suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

d.      SETH GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

WHEREFORE, Plaintiff demands judgment for damages against the Defendant, BOCA RADIOLOGY, together with costs, and demand trial by jury of all issues triable as of right by jury.

## COUNT IV
## NEGLIGENCE OF DEFENDANT,
## DR. SCHWARTZWALD

Plaintiffs reallege and reaver Paragraphs 1 through 50 as if fully set forth herein, and would further state:

68.      At all times material hereto, the Defendant, DR. SCHWARTZWALD, agreed and undertook to examine, diagnose, treat and attend the Plaintiff, THOMAS GROSSMAYER.

69.      At all times material hereto, the Defendant, DR. SCHWARTZWALD, had a duty to exercise that degree of care and skill in examining, diagnosing and treating the Plaintiff, THOMAS GROSSMAYER, commensurate with the prevailing professional standard of medical care.

70.      At all times material hereto, the Defendant, DR. SCHWARTZWALD, was careless, negligent and breached said duty as follows:

a)      Failure to properly care and treat the Plaintiff, THOMAS GROSSMAYER; and/or

15

b)      Failure to recognize a change in the radiographic films, specifically the intravenous pyelograms of May 15, 1996; July 11, 1996 and May 8, 1997, based on the diagnostic impression revealed by the radiologists; and/or

c)      Failure to recognize a change in the condition of the patient based upon the change in the intravenous pyelograms reviewed by the defendant; and/or

d)      Failure to make an appropriate referral to a specialist, based on the change in the patient's condition and/or the changes evidenced in the Plaintiff's IVP's; and/or

e)      Failure to advise the Plaintiff of the IVP findings of May 8, 1997.

71.      At all times material hereto, the aforesaid acts or omissions on the part of the Defendant, DR. SCHWARTZWALD, fell below the standard of care required of him by his training, experience and the prevailing professional standard of care.

72.      As a direct, proximate and foreseeable result of the negligence of the Defendant, DR. SCHWARTZWALD, the Plaintiff, THOMAS GROSSMAYER, died.

73.      Further, as the direct and proximate result of the negligence of the Defendant, DR. SCHWARTZWALD, as aforestated:

a.      SUSAN GROSSMAYER, personal representative of the Estate of THOMAS GROSSMAYER, is entitled to recover for the estate of the deceased, loss of support and services of the deceased from the date of injury to the date of death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

b.      SUSAN GROSSMAYER, the decedent's wife has been and will continue to be deprived of the support and services of the decedent and has

16

suffered and will continue to suffer mental pain, suffering, loss of companionship and protection.

  c.  JUSTIN GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

  d.  SETH GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

  WHEREFORE, Plaintiff demands judgment for damages against the Defendant, DR. SCHWARTZWALD, together with costs, and demand trial by jury of all issues triable as of right by jury.

## COUNT V
## VICARIOUS LIABILITY OF
## DAVID SCHWARTZWALD, M.D., P.A.

  Plaintiffs reallege and reaver Paragraphs 1 through 50 and Paragraphs 68 through 70, as if fully set forth herein, and would further state:

  74.  At all times material hereto, the Defendant, DR. SCHWARTZWALD, was acting within the course and scope of his employment with Defendant, DAVID SCHWARTZWALD, M.D., P.A.

  75.  At all times material hereto, the Defendant, DAVID SCHWARTZWALD, M.D., P.A., is responsible and vicariously liable for the negligent acts or omissions of its employees, agents or apparent agents acting within the course and scope of their employment or agency.

17

76.     At all times material hereto, the negligent acts or omissions and breach of duty as set forth herein by and through its agents, apparent agents, representatives, and/or employees fell below the prevailing professional standard of care.

77.     As a direct, proximate and foreseeable result of the negligence of the Defendant, DAVID SCHWARTZWALD, M.D., P.A., the Plaintiff, THOMAS GROSSMAYER, died.

78.     Further, as the direct and proximate result of the negligence of the Defendant, DAVID SCHWARTZWALD, M.D., P.A., as aforestated:

a.     SUSAN GROSSMAYER, personal representative of the Estate of THOMAS GROSSMAYER, is entitled to recover for the estate of the deceased, loss of support and services of the deceased from the date of injury to the date of death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

b.     SUSAN GROSSMAYER, the decedent's wife has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship and protection.

c.     JUSTIN GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

d.     SETH GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has

18

suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

WHEREFORE, Plaintiff demands judgment for damages against the Defendant, DAVID SCHWARTZWALD, M.D., P.A., together with costs, and demand trial by jury of all issues triable as of right by jury.

## COUNT VI
## NEGLIGENCE OF DR. JEFFREY STEIN

Plaintiffs reallege and reaver Paragraphs 1 through 50 as if fully set forth herein, and would further state:

79.   At all times material hereto, the Defendant, DR. JEFFREY STEIN, agreed and undertook to examine, diagnose, treat and attend the Plaintiff, THOMAS GROSSMAYER.

80.   At all times material hereto, the Defendant, DR. JEFFREY STEIN, had a duty to exercise that degree of care and skill in examining, diagnosing and treating the Plaintiff, THOMAS GROSSMAYER, commensurate with the prevailing professional standard of medical care.

81.   At all times material hereto, the Defendant, DR. JEFFREY STEIN, was careless, negligent and breached said duty as follows:

a)   Failure to properly care and treat the Plaintiff, THOMAS GROSSMAYER; and/or

b)   Failure to properly review diagnostic studies and/or reports provided to him by the radiologists; and/or

c)   Failure to follow-up on radiographic studies ordered by the defendant; and/or

d)   Failure to treat abnormal signs and symptoms; and/or

19

e)    Failure to refer to an appropriate specialist; and/or

f)    Failure to order appropriate follow-up diagnostic tests, including MRI, CT Scan and/or Bone Scan; and/or

g)    Failure to advise the Plaintiff of the IVP findings of  May 8, 1997, which DR. JEFFREY STEIN, had in his possession.

82.    At all times material hereto, the aforesaid acts or omissions on the part of the Defendant, DR. JEFFREY STEIN, fell below the standard of care required of him by his training, experience and the prevailing professional standard of care.

83.    As a direct, proximate and foreseeable result of the negligence of the Defendant, DR. STEIN, the Plaintiff, THOMAS GROSSMAYER, died.

84.    Further, as the direct and proximate result of the negligence of the Defendant, DR. STEIN, as aforestated:

a.    SUSAN GROSSMAYER, personal representative of the Estate of THOMAS GROSSMAYER, is entitled to recover for the estate of the deceased, loss of support and services of the deceased from the date of injury to the date of death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

b.    SUSAN GROSSMAYER, the decedent's wife has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship and protection.

c.    JUSTIN GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has

20

suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

d.     SETH GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

WHEREFORE, Plaintiff demands judgment for damages against the Defendant, DR. JEFFREY STEIN, together with costs, and demand trial by jury of all issues triable as of right by jury.

## COUNT VII
## VICARIOUS LIABILITY OF
## JEFFREY L. STEIN, M.D., P.A.

Plaintiffs reallege and reaver Paragraphs 1 through 50 and Paragraphs 79 through 81, as if fully set forth herein, and would further state:

85.     At all times material hereto, the Defendant, DR. JEFFREY STEIN, was acting within the course and scope of his employment with Defendant, JEFFREY L. STEIN, M.D., P.A.

86.     At all times material hereto, the Defendant, JEFFREY L. STEIN, M.D., P.A., is responsible and vicariously liable for the negligent acts or omissions of its employees, agents or apparent agents acting within the course and scope of their employment or agency.

87.     At all times material hereto, the negligent acts or omissions and breach of duty as set forth herein by and through its agents, apparent agents, representatives, and/or employees fell below the prevailing professional standard of care.

21

88.   As a direct, proximate and foreseeable result of the negligence of the Defendant, JEFFREY L. STEIN, M.D., P.A., the Plaintiff, THOMAS GROSSMAYER, died.

89   Further, as the direct and proximate result of the negligence of the Defendant, JEFFREY L. STEIN, M.D., P.A., as aforestated:

a.   SUSAN GROSSMAYER, personal representative of the Estate of THOMAS GROSSMAYER, is entitled to recover for the estate of the deceased, loss of support and services of the deceased from the date of injury to the date of death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

b.   SUSAN GROSSMAYER, the decedent's wife has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship and protection.

c.   JUSTIN GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

d.   SETH GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

WHEREFORE, Plaintiff demands judgment for damages against the Defendant, JEFFREY L. STEIN, M.D., P.A., together with costs, and demand trial by jury of all issues triable as of right by jury.

22

### COUNT VIII
### NEGLIGENCE OF DEFENDANT,
### DR. MARVIN STEIN

Plaintiffs reallege and reaver Paragraphs 1 through 50 as if fully set forth herein, and would further state:

90.    At all times material hereto, the Defendant, DR. MARVIN STEIN, agreed and undertook to examine, diagnose, treat and attend the Plaintiff, THOMAS GROSSMAYER.

91.    At all times material hereto, the Defendant, DR. MARVIN STEIN, had a duty to exercise that degree of care and skill in examining, diagnosing and treating the Plaintiff, THOMAS GROSSMAYER, commensurate with the prevailing professional standard of medical care.

92.    At all times material hereto, the Defendant, DR. MARVIN STEIN, was careless, negligent and breached said duty as follows:

a)    Failure to properly care and treat the Plaintiff, THOMAS GROSSMAYER; and/or

b)    Failure to recognize a change in the intravenous pyelograms of May 8, 1997 and April 2, 1998; and/or

c)    Failure to recognize a change in the condition of the patient based upon the change in the intravenous pyelograms reviewed by the defendant; and/or

d)    Failure to make an appropriate referral to a specialist, based on the change in the plaintiff's IVP films; and/or

e)    Failure to advise the Plaintiff of the IVP findings of the May 8, 1997 and April 2, 1998 films.

23

93.    At all times material hereto, the aforesaid acts or omissions on the part of the Defendant, DR. MARVIN STEIN, fell below the standard of care required of him by his training, experience and the prevailing professional standard of care.

94.    As a direct, proximate and foreseeable result of the negligence of the Defendant, DR. MARVIN STEIN, the Plaintiff, THOMAS GROSSMAYER, died.

95.    Further, as the direct and proximate result of the negligence of the Defendant, DR. MARVIN STEIN, as aforestated:

a.    SUSAN GROSSMAYER, personal representative of the Estate of THOMAS GROSSMAYER, is entitled to recover for the estate of the deceased, loss of support and services of the deceased from the date of injury to the date of death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

b.    SUSAN GROSSMAYER, the decedent's wife has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship and protection.

c.    JUSTIN GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

d.    SETH GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

24

WHEREFORE, Plaintiff demands judgment for damages against the Defendant, DR. MARVIN STEIN, together with costs, and demand trial by jury of all issues triable as of right by jury.

**COUNT IX**
**VICARIOUS LIABILITY OF**
**MARVIN L. STEIN, M.D., P.A.**

Plaintiffs reallege and reaver Paragraphs 1 through 50 and Paragraphs 90 through 93, as if fully set forth herein, and would further state:

96.     At all times material hereto, the Defendant, DR. MARVIN STEIN, was acting within the course and scope of his employment with Defendant, MARVIN L. STEIN, M.D., P.A.

97.     At all times material hereto, the Defendant, MARVIN L. STEIN, M.D., P.A., is responsible and vicariously liable for the negligent acts or omissions of its employees, agents or apparent agents acting within the course and scope of their employment or agency.

98.     At all times material hereto, the negligent acts or omissions and breach of duty as set forth herein by and through its agents, apparent agents, representatives, and/or employees fell below the prevailing professional standard of care.

99.     As a direct, proximate and foreseeable result of the negligence of the Defendant, MARVIN L. STEIN, M.D., P.A., the Plaintiff, THOMAS GROSSMAYER, died.

100.     Further, as the direct and proximate result of the negligence of the Defendant, MARVIN L. STEIN, M,D,, P.A., as aforestated:

a.     SUSAN GROSSMAYER, personal representative of the Estate of THOMAS GROSSMAYER, is entitled to recover for the estate of the deceased, loss of support and services of the deceased from the date of injury to the date of

25

death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

b.      SUSAN GROSSMAYER, the decedent's wife has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship and protection.

c.      JUSTIN GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

d.      SETH GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

WHEREFORE, Plaintiff demands judgment for damages against the Defendant, MARVIN L. STEIN, M.D., P.A., together with costs, and demand trial by jury of all issues triable as of right by jury.

## COUNT X
## NEGLIGENCE OF DR. KATIMS

Plaintiffs reallege and reaver Paragraphs 1 through 50, as if fully set forth herein, and would further state:

101.   At all times material hereto, the Defendant, DR. KATIMS, agreed and undertook to examine, diagnose, treat and attend the Plaintiff, THOMAS GROSSMAYER.

26

102.   At all times material hereto, the Defendant, DR. KATIMS, had a duty to exercise that degree of care and skill in examining, diagnosing and treating the Plaintiff, THOMAS GROSSMAYER, commensurate with the prevailing professional standard of medical care.

103.   At all times material hereto, the Defendant, DR. KATIMS, was careless, negligent and breached said duty as follows:

a)   Failure to properly care and treat the Plaintiff, THOMAS GROSSMAYER; and/or

b)   Failure to properly interrupt the diagnostic study of April 2, 1998; and/or

c)   Failure to compare previous IVP's of the Plaintiff which were in the custody of the West Boca Medical Center, to the IVP DR. KATIMS' interpreted on April 2, 1998; and/or

d)   Failure to perform or recommend follow-up diagnostic studies including MRI, CT Scan and/or Bone Scan; and/or

e)   Failure to directly communicate the IVP results of April 2, 1998 to ordering physicians, DR. MARVIN STEIN.

104.   At all times material hereto, the aforesaid acts or omissions on the part of the Defendant, DR. KATIMS, fell below the standard of care required of him by his training, experience and the prevailing professional standard of care.

105.   As a direct, proximate and foreseeable result of the negligence of the Defendant, DR. KATIMS, the Plaintiff, THOMAS GROSSMAYER, died.

106.   Further, as the direct and proximate result of the negligence of the Defendant, DR. KATIMS, as aforestated:

27

a. SUSAN GROSSMAYER, personal representative of the Estate of THOMAS GROSSMAYER, is entitled to recover for the estate of the deceased, loss of support and services of the deceased from the date of injury to the date of death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

b. SUSAN GROSSMAYER, the decedent's wife has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship and protection.

c. JUSTIN GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

d. SETH GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

WHEREFORE, Plaintiff demands judgment for damages against the Defendant, DR. KATIMS, together with costs, and demand trial by jury of all issues triable as of right by jury.

28

## COUNT XI
## VICARIOUS LIABILITY OF
## IMAGING CONSULTANTS

Plaintiffs reallege and reaver Paragraphs 1 through 50 and Paragraphs 101 through 104, as if fully set forth herein, and would further state:

107.    At all times material hereto, the Defendant, DR. KATIMS, was acting within the course and scope of his employment with Defendant, IMAGING CONSULTANTS.

108.    At all times material hereto, the Defendant, IMAGING CONSULTANTS, Is responsible and vicariously liable for the negligent acts or omissions of its employees, agents or apparent agents acting within the course and scope of their employment or agency.

109.    At all times material hereto, the negligent acts or omissions and breach of duty as set forth herein by and through its agents, apparent agents, representatives, and/or employees fell below the prevailing professional standard of care.

110.    As a direct, proximate and foreseeable result of the negligence of the Defendant, IMAGING CONSULTANTS, the Plaintiff, THOMAS GROSSMAYER, died.

111.    Further, as the direct and proximate result of the negligence of the Defendant, IMAGING CONSULTANTS, as aforestated:

a.    SUSAN GROSSMAYER, personal representative of the Estate of THOMAS GROSSMAYER, is entitled to recover for the estate of the deceased, loss of support and services of the deceased from the date of injury to the date of death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

29

b.     SUSAN GROSSMAYER, the decedent's wife has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship and protection.

c.     JUSTIN GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

d.     SETH GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

WHEREFORE, Plaintiff demands judgment for damages against the Defendant, IMAGING CONSULTANTS, together with costs, and demand trial by jury of all issues triable as of right by jury.

## COUNT XII
## VICARIOUS LIABILITY OF
## LEE M. KATIMS, M.D., P.A.

Plaintiffs reallege and reaver Paragraphs 1 through 50 and Paragraphs 101 through 104, as if fully set forth herein, and would further state:

112.   At all times material hereto, the Defendant, DR. KATIMS, was acting within the course and scope of his employment with Defendant, LEE M. KATIMS, M.D., P.A.

113.    At all times material hereto, the Defendant, LEE M. KATIMS, M.D., P.A., is responsible and vicariously liable for the negligent acts or omissions of its employees, agents or apparent agents acting within the course and scope of their employment or agency.

114.    At all times material hereto, the negligent acts or omissions and breach of duty as set forth herein by and through its agents, apparent agents, representatives, and/or employees fell below the prevailing professional standard of care.

115.    As a direct, proximate and foreseeable result of the negligence of the Defendant, LEE M. KATIMS, M.D., P.A., the Plaintiff, THOMAS GROSSMAYER, died.

116.    Further, as the direct and proximate result of the negligence of the Defendant, LEE M. KATIMS, M.D., P.A., as aforestated:

a.      SUSAN GROSSMAYER, personal representative of the Estate of THOMAS GROSSMAYER, is entitled to recover for the estate of the deceased, loss of support and services of the deceased from the date of injury to the date of death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

b.      SUSAN GROSSMAYER, the decedent's wife has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship and protection.

c.      JUSTIN GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

31

d.      SETH GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

WHEREFORE, Plaintiff demands judgment for damages against the Defendant, LEE M. KATIMS, M.D., P.A., together with costs, and demand trial by jury of all issues triable as of right by jury.

### COUNT XIII
### NEGLIGENCE OF DR. MARTELLO

Plaintiffs reallege and reaver Paragraphs 1 through 50 as if fully set forth herein, and would further state:

117    At all times material hereto, the Defendant, DR. MARTELLO, agreed and undertook to examine, diagnose, treat and attend the Plaintiff, THOMAS GROSSMAYER.

118.    At all times material hereto, the Defendant, DR. MARTELLO, had a duty to exercise that degree of care and skill in examining, diagnosing and treating the Plaintiff, THOMAS GROSSMAYER, commensurate with the prevailing professional standard of medical care.

119.    At all times material hereto, the Defendant, DR. MARTELLO, was careless, negligent and breached said duty as follows:

a)      Failure to properly care and treat the Plaintiff, THOMAS GROSSMAYER; and/or

b)      Failure to properly interpret the 5/15/96 and 5/16/96 diagnostic studies; and/or

32

c)     Failure to follow-up or recommend additional diagnostic studies specifically a CT Scan, MRI or bone scan; and/or

d)     Failure to refer to the appropriate specialist based upon abnormal findings on the diagnostic films; and/or

e)     Failure to communicate the results of the diagnostic tests to the ordering physician or the Plaintiff.

120.    At all times material hereto, the aforesaid acts or omissions on the part of the Defendant, DR. MARTELLO, fell below the standard of care required of him by his training, experience and the prevailing professional standard of care.

121.    As a direct, proximate and foreseeable result of the negligence of the Defendant, DR. MARTELLO, the Plaintiff, THOMAS GROSSMAYER, died.

122.    Further, as the direct and proximate result of the negligence of the Defendant, DR.MARTELLO, as aforestated:

a.     SUSAN GROSSMAYER, personal representative of the Estate of THOMAS GROSSMAYER, is entitled to recover for the estate of the deceased, loss of support and services of the deceased from the date of injury to the date of death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

b.     SUSAN GROSSMAYER, the decedent's wife has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship and protection.

c.      JUSTIN GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

d.      SETH GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

WHEREFORE, Plaintiff demands judgment for damages against the Defendant, DR. MARTELLO, together with costs, and demand trial by jury of all issues triable as of right by jury.

## COUNT XIV
## VICARIOUS LIABILITY OF MARTELLO, M.D., PA.

Plaintiffs reallege and reaver Paragraphs 1 through 50 and Paragraphs 117 through 120, as if fully set forth herein, and would further state:

123.    At all times material hereto, the Defendant, DR. MARTELLO, was acting within the course and scope of his employment with Defendant, RICHARD D. MARTELLO, M.D., P.A.

124.    At all times material hereto, the Defendant, MARTELLO, M.D., P.A., is responsible and vicariously liable for the negligent acts or omissions of its employees, agents or apparent agents acting within the course and scope of their employment or agency.

34

125.   At all times material hereto, the negligent acts or omissions and breach of duty as set forth herein by and through its agents, apparent agents, representatives, and/or employees fell below the prevailing professional standard of care.

126.   As a direct, proximate and foreseeable result of the negligence of the Defendant, MARTELLO, M.D., P.A., the Plaintiff, THOMAS GROSSMAYER, died.

127.   Further, as the direct and proximate result of the negligence of the Defendant, MARTELLO, M.D., P.A. as aforestated:

a.   SUSAN GROSSMAYER, personal representative of the Estate of THOMAS GROSSMAYER, is entitled to recover for the estate of the deceased, loss of support and services of the deceased from the date of injury to the date of death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

b.   SUSAN GROSSMAYER, the decedent's wife has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship and protection.

c.   JUSTIN GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

d.   SETH GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

WHEREFORE, Plaintiff demands judgment for damages against the Defendant, MARTELLO, M.D., P.A., together with costs, and demand trial by jury of all issues triable as of right by jury.

## COUNT XIV
## NEGLIGENCE OF RICHARD BEERMAN, M.D.

Plaintiffs reallege and reaver Paragraphs 1 through 50 as if fully set forth herein, and would further state:

128.   At all times material hereto, the Defendant, DR. BEERMAN, agreed and undertook to examine, diagnose, treat and attend the Plaintiff, THOMAS GROSSMAYER.

129.   At all times material hereto, the Defendant, DR. BEERMAN, had a duty to exercise that degree of care and skill in examining, diagnosing and treating the Plaintiff, THOMAS GROSSMAYER, commensurate with the prevailing professional standard of medical care.

130.   At all times material hereto, the Defendant, DR. BEERMAN, was careless, negligent and breached said duty as follows:

a)      Failure to properly care and treat the Plaintiff, THOMAS GROSSMAYER; and/or

b)      Failure to properly interpret the 7/11/96 diagnostic study; and/or

c)      Failure to compare prior diagnostic studies with the 7/11/96 of IVP; and/or

d)      Failure to follow-up or recommend additional diagnostic studies specifically a CT Scan, MRI or bone scan; and/or

e)      Failure to refer to the appropriate specialist based upon abnormal findings on the diagnostic films; and/or

36

f)     Failure to communicate the results of the diagnostic study to the ordering physician or the plaintiff.

131.   At all times material hereto, the aforesaid acts or omissions on the part of the Defendant, DR. BEERMAN, fell below the standard of care required of him by his training, experience and the prevailing professional standard of care.

132.   As a direct, proximate and foreseeable result of the negligence of the Defendant, DR. BEERMAN, the Plaintiff, THOMAS GROSSMAYER, died.

133.   Further, as the direct and proximate result of the negligence of the Defendant, DR. BEERMAN, as aforestated:

a.     SUSAN GROSSMAYER, personal representative of the Estate of THOMAS GROSSMAYER, is entitled to recover for the estate of the deceased, loss of support and services of the deceased from the date of injury to the date of death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

b.     SUSAN GROSSMAYER, the decedent's wife has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship and protection.

c.     JUSTIN GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

d.     SETH GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has

suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

WHEREFORE, Plaintiff demands judgment for damages against the Defendant, DR. BEERMAN, together with costs, and demand trial by jury of all issues triable as of right by jury.

## COUNT XV
## VICARIOUS LIABILITY OF BEERMAN, M.D., PA.

Plaintiffs reallege and reaver Paragraphs 1 through 50 and Paragraphs 128 through 131, as if fully set forth herein, and would further state:

134.   At all times material hereto, the Defendant, DR. BEERMAN, was acting within the course and scope of his employment with Defendant, RICHARD BEERMAN, M.D., P.A.

135.   At all times material hereto, the Defendant, BEERMAN, M.D., P.A., is responsible and vicariously liable for the negligent acts or omissions of its employees, agents or apparent agents acting within the course and scope of their employment or agency.

136.   At all times material hereto, the negligent acts or omissions and breach of duty as set forth herein by and through its agents, apparent agents, representatives, and/or employees fell below the prevailing professional standard of care.

137.   As a direct, proximate and foreseeable result of the negligence of the Defendant, BEERMAN, M.D., P.A., the Plaintiff, THOMAS GROSSMAYER, died.

138.   Further, as the direct and proximate result of the negligence of the Defendant, BEERMAN, M.D., P.A., as aforestated:

a.   SUSAN GROSSMAYER, personal representative of the Estate of THOMAS GROSSMAYER, is entitled to recover for the estate of the deceased,

38

loss of earnings of the deceased from the date of injury to the date of death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

b.      SUSAN GROSSMAYER, the decedent's wife has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer extreme mental pain, suffering, grief, loss of companionship and society.

c.      JUSTIN GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer extreme mental pain, suffering, grief, loss of companionship and society.

d.      SETH GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer extreme mental pain, suffering, grief, loss of companionship and society.

WHEREFORE, Plaintiff demands judgment for damages against the Defendant, BEERMAN, M.D., P.A., together with costs, and demand trial by jury of all issues triable as of right by jury.

### COUNT XVI
### NEGLIGENCE OF DEFENDANT,
### WEST BOCA MEDICAL CENTER

Plaintiffs reallege and reaver Paragraphs 1 through 50 as if fully set forth herein, and would further state:

139.  At all times material hereto, the Defendant, WEST BOCA MEDICAL CENTER, by and through its employees, agents, apparent agents, and/or

representatives, had a non-delegable duty by Statute to provide for the health, safety and welfare of its patients and to provide medical care and treatment commensurate with the prevailing professional standard of care, including radiological services.

140.    The Defendant, WEST BOCA MEDICAL CENTER, by and through its employees, agents and/or apparent agents breached the standard of care as follows:

a)      Failure to provide prior radiographic studies to its radiologist for comparison of the Plaintiff; and/or

b)      Failure to have a policy and/or procedure for comparison of prior films for the department of radiology; and/or

c)      Failure to properly interrupt the diagnostic studies; and/or

d)      Failure to compare previous IVP's of the Plaintiff where were in the custody of the West Boca Medical Center; and/or

e)      Failure to perform or recommend follow-up diagnostic studies; and/or

f)      Failure to directly communicate the IVP results to ordering physicians and/or to the Plaintiff.

141.    At all times material hereto, the aforesaid acts or omissions on the part of the Defendant, WEST BOCA MEDICAL CENTER, by virtue of its non-delegable duty, fell below the standard of care required for training, experience and the prevailing professional standards of care.

142.    As a direct, proximate and foreseeable result of the negligence of the Defendant, WEST BOCA MEDICAL CENTER, the Plaintiff, THOMAS GROSSMAYER, died.

143.   Further, as the direct and proximate result of the negligence of the Defendant, WEST BOCA MEDICAL CENTER, as aforestated:

a.   SUSAN GROSSMAYER, personal representative of the Estate of THOMAS GROSSMAYER, is entitled to recover for the estate of the deceased, loss of support and services of the deceased from the date of injury to the date of death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

b.   SUSAN GROSSMAYER, the decedent's wife has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship and protection.

c.   JUSTIN GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

d.   SETH GROSSMAYER, the decedent's minor son has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain, suffering, loss of companionship, instruction and guidance.

144.   At all times material hereto, the aforesaid acts or omissions on the part of the Defendant, WEST BOCA MEDICAL CENTER, fell below the standard of care required of him by his training, experience and the prevailing professional standard of care.

41

WHEREFORE, Plaintiff demands judgment for damages against the Defendant, WEST BOCA MEDICAL CENTER, together with costs, and demand trial by jury of all issues triable as of right by jury.

**COUNT XVII**
**CERTIFICATION OF ATTORNEY**
**UNDER FLORIDA STATUTE § 766.104 (I)**

Plaintiffs reallege and reaver each and every allegation as if fully set forth herein, and would further state:

145.   The undersigned attorney does hereby certify that a reasonable investigation as permitted by the circumstances has been conducted.  Said investigation has given rise to the good faith belief that grounds exist for an action against each of the named defendants.

WHEREFORE, Plaintiffs demand judgment for damages against the Defendants, together with costs, and demand trial by jury of all issues triable as of right by jury.

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail this _____5ᵗʰ_____ day of April, 2001 to:  MONTY R. WARREN, ESQ., Gay, Ramsey & Warren, P.A., Attorneys for Schwartzwald, M.D. and M.D., P.A., 1601 Forum Place, Suite 701, West Palm Beach, FL 33401; STEVEN G. SCHWARTZ, ESQ., Mattlin & McClosky, Attorneys for Defendant, Boca Radiology Associates, 2300 Glades Road, Sutie 400, East Tower, Boca Raton, FL 33431; PETER A. COOKE, ESQ., Adams, Coogler, Watson, Merkel, Barry & Kellner, P.A., Attorneys for Defendants, Dr. Jeffrey Stein and Dr. Stein, M.D., P.A.,  P.O. Box 2069, 1555 Palm Beach Lakes Boulevard, Suite 1600, West Palm Beach, FL 33402-2069, WALTER H. DJOKIC, ESQ., McIntosh, Sawran, Peltz & Cartaya, P.A., Attorneys for Defendant-Tenet Health System Hospital, Inc., d/b/a West Boca Medical Center, Northbridge

Centre, Third Floor Pavilion, 515 North Flagler Drive, West Palm Beach, FL 33401-4318, THOMAS C. HEATH, ESQ., Billing, Cochran, Heath, Llyes & Mauro, P.A., Attorneys for Defendants, Dr. Martello, Martello, M.D., P.A., Dr. Beerman and Beerman, M.D., P.A., 888 S.E. Third Avenue, Suite 301, Fort Lauderdale, FL 33316; BARBARA W. SONNEBORN, ESQ., Sonneborn, Rutter, Cooney, Klingensmith & Eyler, P.A., Attorneys for Dr. Marvin Stein and P.A., Post Office Box 024486, West Palm Beach, FL 33402-4486, KEITH J. PUYA, ESQ., Stephens, Lynn, Klein & McNicholas, P.A., Attorneys for Defendant Lee M. Katims, M.D., and Lee M. Katims, M.D., P.A., 515 North Flagler Drive, Northbridge Centre, Suite 1600, West Palm Beach, FL 33401 and to DENNIS M. O'HARA, ESQ., Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A., Attorneys for Donald Wyckoff, M.D., 1 East Broward Boulevard, South Trust Tower, Suite 500, Fort Lauderdale, FL 33302.

KRUPNICK, CAMPBELL, MALONE, ROSELLI,
BUSER, SLAMA, HANCOCK, McNELIS
LIBERMAN & McKEE, P.A.
Attorneys for Plaintiffs
700 Southeast Third Avenue
Courthouse Law Plaza, Suite 100
Fort Lauderdale, Florida 33316
(954) 763-8181

BY: _____
     SCOTT S. LIBERMAN, ESQUIRE
     Florida Bar No.: 850780

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUN _____ APPLYING IFP _____ JUDGE _____ MAG JUDGE _____

JS 44 Reverse (Rev. 12/96)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

Authority For Civil Cover Sheet

## ATTACHMENT TO CIVIL COVER SHEET

**STEVEN G. SCHWARTZ, ESQ.**
Mattlin & McClosky
2300 Glades Road, Suite 400
East Tower
Boca Rotan, FL 33431

Attorney for Boca Radiology

**DENNIS M. O'HARA, ESQ.**
Wicker, Smith, Tutan, O'Hara, McCoy
 Graham & Ford, P.A.
1 East Broward Boulevard
South Trust Tower, Suite 500
Fort Lauderdale, FL 33302

Attorney for Donald Wyckoff, M.D.

**SCOTT S. LIBERMAN, ESQ.**
Krupnick, Campbell, Malone, Roselli
 Buser, Slama, Hancock, McNelis,
 Liberman & McKee, P.A.
700 Southeast Third Avenue
Courthouse Law Plaza, Suite 100
Fort Lauderdale, FL 33316

Attorney for Susan Grossmayer,
Estate of Thomas Grossmayer,
Justin Grossmayer, Seth Grossmayer

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

WEST AMERICAN INSURANCE COMPANY

**DEFENDANTS** Donald Wyckoff;
Boca Radiology Associates, Inc.;
Susan Grossmayer; Seth Grossmayer;
The Estate of Thomas Grossmayer;
Justin Grossmayer. Palm Beach Couty, FL

(b) County of Residence of First Listed **Butler County, OH**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Neilson & Associates
1332 West Colonial Drive
P. O. Box 547638
Orlando, FL 32854-7638

Attorneys (If Known)

see attachment

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
- ☒ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury— Med. Malpractice
- ☐ 365 Personal Injury— Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
  Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor Mgmt Reprting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. 2201 - Declatory Judgment Action

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND Declaration of Rights & Duties

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

DATE 6/28/01

SIGNATURE OF ATTORNEY OF RECORD